**IN THE CIRCUIT COURT OF THE TWELFTH JUDICIAL CIRCUIT IN AND FOR SARASOTA COUNTY, FLORIDA**

PHIL HABERMAN,                              CASE NO. 06 DR-7754 (SC)

       Plaintiff,                        **NOTICE OF REMOVAL OF**
                                            **ACTION UNDER 28 U.S.C § 1441(b)**
v.                                          **DIVERSITY BY DEFENDANT AND**
                                            **CONSOLIDATION OF CASE 2D19-0407**
KRISTEN RHOAD,

       Defendant.

---

**TO THE CLERK OF THE ABOVE-ENTITLED COURT:**

    **PLEASE TAKE NOTICE** that pursuant to 28 U.S.C. §§ 1332, 1441 and 1446, Defendant KRISTEN RHOAD hereby removes this civil action from the Circuit Court of the Twelfth Judicial Circuit Sarasota Florida, where it is currently as Case No. 06DR-7754-SC to the United States District Court for the District of Nevada.

    1.    United States District Court for the District of Nevada has original jurisdiction over this action under 28 U.S.C. §1332(a), on the grounds that complete diversity exists between all parties, subject matter and the amount in controversy exceeds the sum of $75,000, exclusive of interests and costs.

    2.    Defendant is and has always been a resident of the State of Nevada, while Plaintiff resides in the State of Florida.

    3.    Defendant contends Plaintiff filed in the wrong jurisdiction; Florida State Court does not have jurisdiction over the subject matter involving removal of internet content, lacks jurisdiction over Defendant as a non-resident, and violated Defendant's Constitutional Rights.

Notice of Removal              1

EXHIBIT 1

giving proper jurisdiction to United States District Court for the District of Nevada.

4. On May 9, 2019, Defendant was noticed of Plaintiff's Ex-Parte Amended Request to Have Specific Content Removed to Comply with Court Order and Request for Issuance of order for Contempt of Court. Exhibit "A". Defendant was never properly served.

## BACKGROUND

5. On or about April 30, 2006, an action commenced by Plaintiff in the Circuit Court of the Twelfth Judicial Court, Sarasota Florida, entitled PHIL HABERMAN ("Haberman") vs. KRISTEN RHOAD, Case number 06DR-7254-SC.

6. Defendant was never a resident of Florida and Defendant has always contended that Florida does not have jurisdiction over Defendant either personal or over the subject matter.

7. Evidence will show Plaintiff falsified his police reports to gain jurisdiction stating Defendant was a resident of North Port, Sarasota, Florida. Falsification of a police report is a criminal act and voids any complaint.

8. Defendant filed numerous pleadings, motions and finally filed her Pro Se Appellate Brief on January 30, 2019, in the Second Appellate Court of Florida Case 2D19-0407 for lack of jurisdiction over the subject matter to remove internet content, lack of personal jurisdiction over Defendant as a non-resident, and violation of Defendant's Constitutional Rights. The Appellate Court refuses to rule in a timely manner, denying due process to Defendant.

9.      The Florida Appellate Court does not have jurisdiction to rule on the matter since Defendant was and has never resided in Florida.

10.     Further confusing the matter, Haberman repeatedly filed charges in the civil case as criminal contempt, which resulted in the falsification and omission of material facts, and lack of candor of the State of Florida wherein Defendant was arrested in Nevada violating 18 U.S.C. 1001 and 18 U.S.C. 1018.

11.     On or about May 9, 2019, Defendant became aware of Plaintiff's *Ex-Parte* Amended Request to Have Specific Content Removed to Comply with Court Order and Request for Issuance of Order for Contempt of Court (Exhibit "A").  No Summons or Complaint were filed, and no affidavit of service were filed.

12.     Plaintiff erroneously seeks redress and clarification of Florida State criminal Judge Roberts' decision of non-violation of contempt in the March 13, 2019 decision in a Florida civil court. A Florida civil court cannot overrule a Florida criminal court decision, and the "request" is a false attempt to relitigate the original case.

13.     Plaintiff's Amended Request seeks removal of "all blogs, postings, articles, etc. which reference the Petitioner and that were posted, or caused to be posted by the respondent." Plaintiff's request for removal of 14 web-based websites fall under Federal jurisdiction since the diversity of each website Plaintiff seeks to remove are owned by other third-parties and domiciled in numerous states, constituting Constitutional Right violations.

14.     As a direct and proximate cause of Plaintiff's false allegations rendering a Florida criminal actions related to 06DR-7754-SC, 2015CR006022 and 18CF017848NC, Defendant was

falsely charged, falsely arrested and falsely incarcerated due to Plaintiff's false police reports.

15. On November 5, 2019, Plaintiff repeatedly filed false allegations violating Defendant's Constitutional Rights.

16. As of December 16, 2019, the Florida civil court has been proceeding with the case while the appeal is pending with the Appellate Court on the jurisdiction of the injunction and lack of jurisdiction over the subject matter and personal jurisdiction of the Defendant. On January 7, 2020, Defendant filed a Motion to Disqualify pursuant to Rule 2.330 Fla. R. Jud. Admin.

17. Defendant believes she has been repeatedly denied due process, her Constitutional Rights have been violated, she was falsely arrested for a crime that is not a crime, and will be repeatedly denied a proper trial.

18. Defendant believes the Florida Courts are biased towards Defendant because if she prevails on the merits of the appeal, which she most likely will, then Defendant will have grounds to bring charges against the State of Florida, the Department of Justice, and all parties involved, individually and in their official capacities for the wrongful charges and arrest.

## GROUNDS FOR REMOVAL

As set more fully below, this Court has subject matter jurisdiction under 28 U.S.C. §1332, which confers original jurisdiction of "all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is

between . . . citizens of different States and which citizens or subjects of a foreign state are additional parties[.]"

## I.      The Amount-In-Controversy Requirement is Satisfied.

"In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840 (9th Cir. 2002) (quoting *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 347 (1977)) The Ninth Circuit employs the "either viewpoint" test to determine the value of the object of the litigation. *Corral v. Select Portfolio Servicing, Inc.*, 878 F.3d 770, 775 (9th Cir. 2017) "Under the 'either viewpoint' rule, the test for determining the amount in controversy is the pecuniary result to either party which the judgment would directly produce." *In re Ford Motor Co./Citibank*, 264 F.3d 952, 959 (9th Cir. 2001).

Defendant seeks an amount in excess of $75,000 for damages. Accordingly, the amount in controversy in this action well exceeds $75,000, exclusive of interest and costs.

Because the amount in controversy exceeds $75,000, removal on the basis of diversity should be allowed pursuant to 28 U.S.C. § 1441(b).

## II.     Complete Diversity of Citizenship Exists Between Plaintiff and Defendant.

Plaintiff is a domiciled resident of the State of Florida. *DEFENDANT HAS NEVER RESIDED IN FLORIDA AND HAS AT ALL TIMES BEEN A RESIDENT OF THE STATE OF NEVADA.* In determining whether diversity of citizenship exists, only the named

defendants are considered. See *Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 690-691 (9th Cir. 1998); see also *Olive v. Gen. Nutrition Ctrs., Inc.*, No. 2:12-cv04297-ODW, 2012 WL 2006389, at *1 (C.D. Cal. June 5, 2012); *Marsikyan v. Porsche Cars N. Am., Inc.*, No. CV 11-09411 SJO, 2012 WL 280585, at *2 (C.D. Cal. Jan. 30, 2012).

**Plaintiff has and continues to erroneously sue Defendant in a jurisdiction foreign to the Defendant, and is therefore barred.** Pursuant to 14th Amendment Section 1, "All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside." Therefore, the United States District Court for the District of Nevada has jurisdiction over Defendant and the subject matter.

Defendant filed an appeal of the injunction Second Appellate Court, Florida Case No. 2D-19-0407, wherein jurisdiction is questioned. The Appellate Court has not ruled upon this matter.

**III. Defendant's Constitutional Rights are Violated.**

Plaintiff repeatedly files contempt charges for the removal of internet stories that Defendant is not the author of. Plaintiff falsified and believes he has an order granting him the removal, however, evidence shows there is no such order, which Plaintiff caused Defendant to be falsely arrested in June 2018. The stories constitute professional news reporter websites, which exposed Haberman's false military career, fraudulent actions with non-profits, and other acts, which Defendant had nothing to do with.

Defendant also contends United States District Court for the District of Nevada has

jurisdiction as the arresting agencies did not have an extradition warrant to arrest Defendant in Nevada. The United States Marshals and the Nevada Highway Patrol used the Florida State Capias warrant, enforceable in the State of Florida to falsely arrest Defendant in her home state, and therefore the governmental agencies of Nevada provide further jurisdictional and professional administrative violations.

Because Defendant's Constitutional Rights are violated and Defendant has never been a resident of Florida, the Florida courts cannot proceed and the proper venue is United States District Court for the District of Nevada.

## IV. The Other Prerequisites for Removal Are Satisfied.

This Notice of Removal is timely filed. The relevant statute provides that "[e]ach defendant shall have 30 days after receipt . . . of the initial pleading . . . to file the notice of removal." 28 U.S.C. § 1446(b)(2)(B). Plaintiff never filed a Complaint with the state court, but rather filed a Request. Defendant has not been served with a Summons or Complaint, as of the date of the filing of this Notice of Removal. This action is properly removed to the United States District Court for the District of Nevada, which is "the district and division embracing the place where [the] action is pending." 28 U.S.C. § 1441(a); see also 28 U.S.C. § 84(c)(2).

Title 28 U.S.C. § 1446(a), requires a copy of all process, pleadings, and orders served upon the removing defendant in the state court action to be included with this Notice of Removal. Defendant was not served with any of the papers, as there were no Summons or Complaint filed.

Notice of Removal                    7

Equitable tolling of the one-year limitation of 28 U.S.C. §1446(b) is relevant as the original complaint was an attempt in bad faith to evade federal jurisdiction. *Tedford v. Warner Lambert Co.*, 327 F.3d 423 (5th Cir. 2003). Defendant contends evidence will show Plaintiff filed to evade federal jurisdiction.

Pursuant to 28 U.S.C. § 1446(d), a Notice to Adverse Party of Removal to Federal Court, attached hereto as Exhibit "B", together with this Notice of Removal will be served upon Plaintiff.

By filing this Notice of Removal, Defendant does not waive her right to seek to compel arbitration, or to object to jurisdiction over the person, or venue, and specifically reserves the right to assert any defenses and/or objections to which it may be qualified to assert. If any question arises as to the propriety of the removal of this action, Defendant respectfully requests the opportunity to submit briefing and oral argument and to conduct discovery in support of its position that subject matter jurisdiction exists.

WHEREFORE, Defendant KRISTEN RHOAD, prays that this action be removed and consolidated to the United States District Court for the District of NEVADA.

DATED: January 9, 2020

By: */s/ Kristen Dougherty*

**IN THE CIRCUIT COURT OF THE TWELFTH JUDICIAL CIRCUIT IN AND FOR
SARASOTA COUNTY, FLORIDA**

PHIL HABERMAN,                          CASE NO.  06 DR-7754 (SC)

        Plaintiff,            **AMENDED NOTICE OF REMOVAL OF**

v.                                      **ACTION UNDER 28 U.S.C § 1332, 1441 and 1446,
                                        DIVERSITY BY DEFENDANT AND**

KRISTEN RHOAD,                          **CONSOLIDATION OF CASE 2D19-0407**

        Defendant.

_____/

**TO THE CLERK OF THE ABOVE-ENTITLED COURT:**

    **PLEASE TAKE NOTICE** that pursuant to 28 U.S.C. §§ 1332, 1441 and 1446, Defendant KRISTEN RHOAD hereby removes this civil action from the Circuit Court of the Twelfth Judicial Circuit, Sarasota Florida, where it is currently as Case No. 06DR-7754-SC to the United States District Court for the Middle District of Florida, and will seek a change of venue to the United States District Court, Southern Nevada as proper jurisdiction and venue.

    1.    United States District Court for the District of Southern Nevada has original jurisdiction over this action under 28 U.S.C. §1332(a) on the grounds that complete diversity exists between all parties, subject matter and the amount in controversy exceeds the sum of $75,000, exclusive of interests and costs.

    2.    Defendant is and has always been a resident of the State of Nevada, while Plaintiff resides in the State of Florida.

    3.    Defendant contends Plaintiff filed in the wrong jurisdiction; Florida State Court

Amended Notice of Removal       1

EXHIBIT 2

does not have jurisdiction over the subject matter involving Constitutional Right violations, removal of internet content, lacks jurisdiction over Defendant as a non-resident, and violated Defendant's Constitutional Rights, giving proper jurisdiction to United States District Court for the District of Nevada.

4.      On May 9, 2019, Defendant was noticed of Plaintiff's *Ex-Parte* Amended Request to Have Specific Content Removed to Comply with Court Order and Request for Issuance of order for Contempt of Court.

## BACKGROUND

5.      On or about April 30, 2006, an action commenced by Plaintiff in the Circuit Court of the Twelfth Judicial Court, Sarasota Florida, entitled PHIL HABERMAN ("Haberman") vs. KRISTEN RHOAD, Case number 06DR-7754-SC.

6.      Defendant was never a resident of Florida and Defendant has always contended that Florida does not have jurisdiction over Defendant either personal or over the subject matter.

7.      Evidence will show Plaintiff falsified his police reports to gain jurisdiction stating Defendant was a resident of North Port, Sarasota, Florida. Falsification of a police report is a criminal act and voids any complaint.

8.      Defendant filed numerous pleadings, motions and finally filed her Pro Se Appellate Brief on January 30, 2019, in the Second Appellate Court of Florida Case 2D19-0407 for lack of jurisdiction over the subject matter to remove internet content, lack of personal jurisdiction over Defendant as a non-resident, and violation of Defendant's Constitutional

Rights. The Appellate Court refuses to rule in a timely manner, denying due process to Defendant.

9.      The Florida Courts do not have jurisdiction to rule on the matter since Defendant was and has never resided in Florida.

10.     Further confusing the matter, Haberman repeatedly filed charges in the civil case as criminal contempt, which resulted in the falsification and omission of material facts, and lack of candor of the State of Florida wherein Defendant was arrested in Nevada violating 18 U.S.C. 1001 and 18 U.S.C. 1018.

11.     On or about May 9, 2019, Defendant became aware of Plaintiff's *Ex-Parte Amended Request to Have Specific Content Removed to Comply with Court Order and Request for Issuance of Order for Contempt of Court* (Exhibit "A"). No Summons or Complaint were filed, and no affidavit of service were filed.

12.     Plaintiff erroneously seeks redress and clarification of Florida State criminal Judge Roberts' decision of non-violation of contempt in the March 13, 2019 decision in a Florida civil court. A Florida civil court cannot overrule a Florida criminal court decision, and the "request" is a false attempt to relitigate the original case.

13.     Plaintiff's Amended Request seeks removal of "all blogs, postings, articles, etc. which reference the Petitioner and that were posted, or caused to be posted by the respondent." Plaintiff's request for removal of 14 web-based websites fall under Federal jurisdiction since the diversity of each website Plaintiff seeks to remove are owned by other third-parties and domiciled in numerous states, constituting Constitutional Right violations.

14.     As a direct and proximate cause of Plaintiff's false allegations rendering a Florida criminal actions related to 06DR-7754-SC, 2015CR006022 and 18CF017848NC, Defendant was falsely charged, falsely arrested and falsely incarcerated due to Plaintiff's malicious, false police reports.

15.     On November 5, 2019, Plaintiff repeatedly filed false allegations violating Defendant's Constitutional Rights.

16.     As of December 16, 2019, the Florida civil court has been proceeding with the case while the appeal is pending with the Appellate Court on the jurisdiction of the injunction and lack of jurisdiction over the subject matter and personal jurisdiction of the Defendant. As a direct result, Haberman obtained a misdemeanor warrant for Defendant's arrest on a non-existing order.

17.     On January 7, 2020, Defendant filed a Motion to Disqualify pursuant to Rule 2.330 Fla. R. Jud. Admin. Judge Walker denied his own Motion to Disqualify on February 11, 2020.

18.     Defendant believes she has been repeatedly denied due process, her Constitutional Rights have been violated, she was falsely arrested for a crime that is not a crime, and will be repeatedly denied a proper trial.

19.     Defendant believes the Florida Courts are biased towards Defendant because if she prevails on the merits of the appeal, which she most likely will, then Defendant will have grounds to bring charges against the State of Florida, the Department of Justice, and all parties involved, individually and in their official capacities for the wrongful charges and

arrest.

## GROUNDS FOR REMOVAL

As set more fully below, this Court has subject matter jurisdiction under 28 U.S.C. §1332, which confers original jurisdiction of "all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between... citizens of different States and which citizens or subjects of a foreign state are additional parties[.]"

## I.     The Amount-In-Controversy Requirement is Satisfied.

"In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840 (9th Cir. 2002) (quoting *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 347 (1977)). The Ninth Circuit employs the "either viewpoint" test to determine the value of the object of the litigation. *Corral v. Select Portfolio Servicing, Inc.*, 878 F.3d 770, 775 (9th Cir. 2017). "Under the 'either viewpoint' rule, the test for determining the amount in controversy is the pecuniary result to either party which the judgment would directly produce." *In re Ford Motor Co./Citibank*, 264 F.3d 952, 959 (9th Cir. 2001).

Defendant seeks an amount in excess of $75,000 for damages. Accordingly, the amount in controversy in this action well exceeds $75,000, exclusive of interest and costs.

Because the amount in controversy exceeds $75,000, removal on the basis of

diversity should be allowed pursuant to 28 U.S.C. § 1441(b).

## II.      Complete Diversity of Citizenship Exists Between Plaintiff and Defendant.

Plaintiff is a domiciled resident of the State of Florida. *DEFENDANT HAS NEVER RESIDED IN FLORIDA AND HAS AT ALL TIMES BEEN A RESIDENT OF THE STATE OF NEVADA.* In determining whether diversity of citizenship exists, only the named defendants are considered. See *Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 690-691 (9th Cir. 1998); see also *Olive v. Gen. Nutrition Ctrs., Inc.*, No. 2:12-cv04297-ODW, 2012 WL 2006389, at *1 (C.D. Cal. June 5, 2012); *Marsikyan v. Porsche Cars N. Am., Inc.*, No. CV 11-09411 SJO, 2012 WL 280585, at *2 (C.D. Cal. Jan. 30, 2012).

**Plaintiff has and continues to erroneously sue Defendant in a jurisdiction foreign to the Defendant, and is therefore barred.** Pursuant to 14th Amendment Section 1, "All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside." Therefore, the United States District Court for the District of Nevada has jurisdiction over Defendant and the subject matter.

Defendant filed an appeal of the injunction Second Appellate Court, Florida Case No. 2D-19-0407, wherein jurisdiction is questioned. The Appellate Court has not ruled upon this matter.

## III.     Defendant's Constitutional Rights are Violated.

Plaintiff repeatedly files contempt charges for the removal of internet stories that

Defendant is not the author of. Plaintiff falsified and believes he has an order granting him the removal, however, evidence shows there is no such order, which Plaintiff caused Defendant to be falsely arrested in June 2018. The stories constitute professional news reporter websites, which exposed Haberman's false military career, fraudulent actions with non-profits, and other acts, which Defendant had nothing to do with.

Defendant also contends United States District Court for the District of Nevada has jurisdiction as the arresting agencies did not have an extradition warrant to arrest Defendant in Nevada. The United States Marshals and the Nevada Highway Patrol used the Florida State Capias warrant, enforceable in the State of Florida to falsely arrest Defendant in her home state, and therefore the governmental agencies of Nevada provide further jurisdictional and professional administrative violations.

Because Defendant's Constitutional Rights are violated and Defendant has never been a resident of Florida, the Florida courts cannot proceed and the proper venue is United States District Court for the District of Nevada.

## IV.    The Other Prerequisites for Removal Are Satisfied.

This Notice of Removal is timely filed. Plaintiff never filed a Complaint with the state court, but rather filed a Request.  Defendant has not been served with a Summons or Complaint, as of the date of the filing of this Notice of Removal. This action is properly removed to the United States District Court for the Middle District of Florida and then to change venue to the United States District Dourt of Southern Nevada – where Defendant resides, which is "the district and division embracing the place where [the] action is

pending." 28 U.S.C. § 1441(a); see also 28 U.S.C. § 84(c)(2).

Title 28 U.S.C. § 1446(a), requires a copy of all process, pleadings, and orders served upon the removing defendant in the state court action to be included with this Notice of Removal. Defendant was not served with any of the papers, as there were no Summons or Complaint filed.

Equitable tolling of the one-year limitation of 28 U.S.C. §1446(b) is relevant as the original complaint was an attempt in bad faith to evade federal jurisdiction. *Tedford v. Warner-Lambert Co.*, 327 F.3d 423 (5th Cir. 2003). Defendant contends evidence will show Plaintiff filed to evade federal jurisdiction.

Pursuant to 28 U.S.C. § 1446(d), a Notice to Adverse Party of Removal to Federal Court, attached hereto as Exhibit "B", together with this Notice of Removal will be served upon Plaintiff.

By filing this Notice of Removal, Defendant does not waive her right to seek to compel arbitration, or to object to jurisdiction over the person, or venue, and specifically reserves the right to assert any defenses and/or objections to which it may be qualified to assert. If any question arises as to the propriety of the removal of this action, Defendant respectfully requests the opportunity to submit briefing and oral argument and to conduct discovery in support of its position that subject matter jurisdiction exists.

/ / /

/ / /

Amended Notice of Removal                    8

WHEREFORE, Defendant KRISTEN RHOAD, prays that this action be removed and consolidated to the United States District Court for the Middle District of Florida and will file a change venue to United States District Court for Southern NEVADA.

DATED: February 16, 2020

By: */s/ Kristen Dougherty*

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing has been sent to all parties of record in accordance with the Florida Rules of Civil Procedure by and through the Florida e-file system on this 16th day of February, 2020.

Phil Jason Haberman
3736 SW 57th Ct.
Ocala, Florida 34474

Judge Steven Walker
Twelfth Circuit Court
Sarasota, Florida

*/s/ Kristen Dougherty*

IN THE CIRCUIT COURT OF THE _____ TWELFTH _____ JUDICIAL CIRCUIT,
IN AND FOR _____ SARASOTA _____ COUNTY, FLORIDA

Phil Haberman

Petitioner,

and

Kristen Rhoad,

Respondent.

Case No. 2006CA2775HSC
Division: _____ H _____

FILED IN OPEN COURT THIS 2 DAY OF
_____ SEPT _____, 20 06
KAREN E. RUSHING, CLERK OF COURT
BY _____ DEPUTY CLERK

### FINAL JUDGMENT OF INJUNCTION
### FOR PROTECTION AGAINST DOMESTIC VIOLENCE
### WITHOUT MINOR CHILD(REN) (AFTER NOTICE)

The Petition for Injunction for Protection Against Domestic Violence under section 741.30, Florida Statutes, and other papers filed in this Court have been reviewed. The Court has jurisdiction of the parties and the subject matter.

**It is intended that this protection order meet the requirements of 18 U.S.C. § 2265 and therefore intended that it be accorded full faith and credit by the court of another state or Indian tribe and enforced as if it were the order of the enforcing state or of the Indian tribe.**

### HEARING

This cause came before the Court for a hearing to determine whether an Injunction for Protection Against Domestic Violence in this case should be (✓) issued ( ) modified ( ) extended.

The hearing was attended by ( ✓ Petitioner      ( ✓ Respondent
                                    ( ) Petitioner's Counsel      ( ) Respondent's Counsel

### FINDINGS

On {date} 8-28-06, a notice of this hearing was served on Respondent together with a copy of Petitioner's petition to this Court and the temporary injunction, if issued. Service was within the time required by Florida law, and Respondent was afforded an opportunity to be heard.

After hearing the testimony of each party present and of any witnesses, or upon consent of Respondent, the Court finds, based on the specific facts of this case, that Petitioner is a victim of domestic violence or has reasonable cause to believe that he/she is in imminent danger of becoming a victim of domestic violence by Respondent.

Case: 2006 DR 002775 SC
OFF: FRLJ8NIJC

## INJUNCTION AND TERMS

This injunction shall be in full force and effect until ( ✓ ) further order of the Court ( )_____. This injunction is valid and enforceable in all counties of the State of Florida. The terms of this injunction may not be changed by either party alone or by both parties together. Only the Court may modify the terms of this injunction. Either party may ask the Court to change or end this injunction at any time.

Any violation of this injunction, whether or not at the invitation of Petitioner or anyone else, may subject Respondent to civil or indirect criminal contempt proceedings, including the imposition of a fine or imprisonment. Certain willful violations of the terms of this injunction, such as: refusing to vacate the dwelling that the parties share; going to or being within 500 feet of Petitioner's residence, going to Petitioner's place of employment, school, or other place prohibited in this injunction; telephoning, contacting or communicating with Petitioner if prohibited by this injunction; knowingly or intentionally coming within 100 feet of Petitioner's motor vehicle, whether or not it is occupied; defacing or destroying Petitioner's personal property; refusing to surrender firearms or ammunition if ordered to do so by the court; or committing an act of domestic violence against Petitioner constitutes a misdemeanor of the first degree punishable by up to one year in jail, as provided by sections 775.082 and 775.083, Florida Statutes. In addition, it is a federal criminal felony offense, punishable by up to life imprisonment, depending on the nature of the violation, to cross state lines or enter Indian country for the purpose of engaging in conduct that is prohibited in this injunction. 18 U.S.C. § 2262.

## ORDERED and ADJUDGED:

1. **Violence Prohibited.** Respondent shall not commit, or cause any other person to commit, any acts of domestic violence against Petitioner. Domestic violence includes: assault, aggravated assault, battery, aggravated battery, sexual assault, sexual battery, stalking, aggravated stalking, kidnaping, false imprisonment, or any other criminal offense resulting in physical injury or death to Petitioner or any of Petitioner's family or household members. Respondent shall not commit any other violation of the injunction through an intentional unlawful threat, word or act to do violence to the Petitioner.

2. **No Contact.** **Respondent shall have no contact with the Petitioner unless otherwise provided in this section.**
   a. Unless otherwise provided herein, Respondent shall have no contact with Petitioner. Respondent shall not directly or indirectly contact Petitioner in person, by mail, e-mail, fax, telephone, through another person, or in any other manner. Further, Respondent shall not contact or have any third party contact anyone connected with Petitioner's employment or school to inquire about Petitioner or to send any messages to Petitioner. Unless otherwise provided herein, Respondent shall not go to, in, or within 500 feet of: Petitioner's current residence *{list address}* ___Confidential_____

or any residence to which Petitioner may move; Petitioner's current or any subsequent place of employment *{list address of current employment}* _____

_____ or place where Petitioner attends

school *{list address of school}* _____;

or the following other places (if requested by Petitioner) where Petitioner or Petitioner's minor child(ren) go often: _____

_____

Respondent may not knowingly come within 100 feet of Petitioner's automobile at any time.

b. Other provisions regarding contact: *respondent shall remove, or cause to be removed, all blogs, e-mails or other web-based communications to petitioner or third parties that refer to petitioner, and which are posted, or caused to be posted by respondent.*

3. **Firearms. Unless paragraph a. is initialed below, Respondent shall not have in his or her care, custody, possession or control any firearm or ammunition. It is a violation of section 790.233, Florida Statutes, and a first degree misdemeanor, for the respondent to have in his or her care, custody, possession or control any firearm or ammunition.**

[Initial **if** applies; write N/A **if not** applicable]

____ a. Respondent is a state or local officer as defined in section 943.10(14), Florida Statutes, who holds an active certification, who receives or possesses a firearm or ammunition for use in performing official duties on behalf of the officer's employing agency and is not prohibited by the court from having in his or her care, custody, possession or control a firearm or ammunition. The officer's employing agency may prohibit the officer from having in his or her care, custody, possession or control a firearm or ammunition.

____ b. Respondent shall surrender any firearms and ammunition in the Respondent's possession to the _____SARASOTA_____ County Sheriff's Department.

____ c. Other directives relating to firearms and ammunition: _____

_____

_____

**NOTE:  RESPONDENT IS ADVISED THAT IT IS A FEDERAL CRIMINAL FELONY OFFENSE TO SHIP OR TRANSPORT IN INTERSTATE OR FOREIGN COMMERCE, OR POSSESS IN OR AFFECTING COMMERCE, ANY FIREARM OR AMMUNITION; OR TO RECEIVE ANY FIREARM OR AMMUNITION WHICH HAS BEEN SHIPPED OR TRANSPORTED IN INTERSTATE OR FOREIGN COMMERCE WHILE SUBJECT TO SUCH AN INJUNCTION. 18 U.S.C. § 922(g)(8).**

Florida Supreme Court Approved Family Law Form 12.980(d)(2), Final Judgment of Injunction for Protection Against Domestic Violence without Minor Child(ren) (After Notice) (03/04)

3

4.    **Evaluation/Counseling.**
[Initial **all** that apply; write N/A **if does not** apply]

    a.  The Court finds that Respondent has:

      _MB_   i.  willfully violated the ex parte injunction;

      ____   ii.  been convicted of, had adjudication withheld on, or pled nolo contendere to a crime involving violence or a threat of violence;  and/or

      ____   iii.  in this state or any other state, had at any time a prior injunction for protection entered against the respondent after a hearing with notice.

*Note:  If respondent meets any of the above enumerated criteria, the Court must order the Respondent to attend a batterers' intervention program unless it makes written factual findings stating why such a program would not be appropriate.  See § 741.30(6)(e), Florida Statutes.*

    b.  Within (X)10 days (  )_____ days, (but no more than 10 days) of the date of this injunction, Respondent shall enroll in and thereafter without delay complete the following, and Respondent shall provide proof of such enrollment to the Clerk of Circuit Court within (X)30 days (  )_____ days, (but no more than 30 days) of the date of this injunction:

      ____   i.  A certified batterers' intervention program from a list of programs to be provided by the Court or any entity designated by the Court.  Respondent shall also successfully complete any substance abuse or mental health evaluation that the assessing program counselor deems necessary as a predicate to completion of the batterers' intervention program.

      ____   ii.  A substance abuse evaluation at: _____ _____ or a similarly qualified facility and any substance abuse treatment recommended by that evaluation.

      _MB_   iii.  A mental health evaluation by a licensed mental health professional at: ~~or any other similarly qualified facility~~ and any mental health treatment recommended by that evaluation.

      ____   iv.  Other: _____

      ____   c.  Although Respondent meets the statutory mandate of attendance at a batterers' intervention program, the Court makes the following written findings as to why the condition of batterers' intervention program would be inappropriate: _____ _____ _____ _____

      ____   d.  Petitioner is referred to a certified domestic violence center and is provided with a list of certified domestic violence centers in this circuit, which Petitioner may contact.

5.    **Mailing Address.**  Respondent shall notify the Clerk of the Court of any change in his or her mailing address within 10 days of the change.  All further papers (excluding pleadings requiring personal service) shall be served by mail to Respondent's last known address.  Such service by mail shall be complete upon mailing.  Rule 12.080, Fla.Fam.L.R.P., section 741.30, Florida Statutes.

6.  **Other provisions necessary to protect Petitioner from domestic violence:** _____

_____

_____

_____

_____

_____

_____

_____

### TEMPORARY EXCLUSIVE USE AND POSSESSION OF HOME

[Initial **if** applies; write **N/A if not** applicable]

7.  ____ **Possession of the Home.** (   ) Petitioner (   ) Respondent shall have temporary exclusive use and possession of the dwelling located at: _____
_____ .

8.  ____ **Transfer of Possession of the Home.** A law enforcement officer with jurisdiction over the home  shall accompany (   ) Petitioner (   ) Respondent to the home, and shall place (   ) Petitioner (   ) Respondent in possession of the home.

9.  ____ **Personal Items.** (   ) Petitioner (   ) Respondent, **in the presence of a law enforcement officer,** may return to the premises described above (   ) on _____, at _____a.m./p.m., or (   ) at a time arranged with the law enforcement department with jurisdiction over the home, accompanied by a law enforcement officer only,  for the purpose of obtaining his or her clothing and items of personal health and hygiene and tools of the trade.  A law enforcement officer with jurisdiction over the premises shall go with (   ) Petitioner (   ) Respondent to the home and stand by to insure that he/she vacates the premises with only his/her personal clothing, toiletries, tools of the trade, and any items listed in paragraph 10 below.  The law enforcement agency shall not be responsible for storing or transporting any property.  **IF THE RESPONDENT IS NOT AWARDED POSSESSION OF THE HOME AND GOES TO THE HOME WITHOUT A LAW ENFORCEMENT OFFICER, IT IS A VIOLATION OF THIS INJUNCTION.**

10. ____ The following other personal possessions  may also be removed from the premises at this time: _____

_____

_____

11. Other: _____

_____

_____

_____

Florida Supreme Court Approved Family Law Form 12.980(d)(2), Final Judgment of Injunction for Protection Against Domestic Violence without Minor Child(ren) (After Notice) (03/04)



## TEMPORARY SUPPORT

12.     **Temporary Alimony.**
[Initial **all** that apply; write N/A **if does not** apply]

_____ a.  The court finds that there is a need for temporary alimony and that (   ) Petitioner (   )
Respondent (hereinafter Obligor) has the present ability to pay alimony and shall pay
temporary alimony to (   ) Petitioner (   ) Respondent (hereinafter Obligee) in the amount
of $_____ per
month, payable (   ) in accordance with Obligor's employer's payroll cycle, and in any
event, at least once a month (   ) other *{explain}* _____
_____
beginning *{date}* _____.  This alimony shall continue until modified by court order,
until a final judgment of dissolution of marriage is entered, until Obligee dies, until this
injunction expires, or until *{date}* _____,
whichever occurs first.

_____ b. (   ) Petitioner (   ) Respondent shall be required to maintain health insurance coverage
for the other party.  Any uncovered medical costs for the party awarded alimony shall be
assessed as follows: _____
_____.

_____ c.  Other provisions relating to alimony: _____
_____
_____

13.     **Method of Payment.**
[Initial **one** only]

_____ a.  Obligor shall pay any temporary alimony ordered through income deduction, and such
support shall be paid to the Central Government Depository in _____County.
Obligor is individually responsible for paying this support obligation in the event that all or
any portion of said support is not deducted from Obligor's income.  Obligor shall also pay
the applicable Central Government Depository service charge.  Until alimony payments are
deducted from Obligor's paycheck pursuant to the Income Deduction Order, Obligor is
responsible for making timely payments directly to the Central Government Depository.

_____ b.  Temporary alimony shall be paid through the Central Government Depository in the
office of the *{name of county}*_____ County  Clerk of Circuit Court.
Obligor shall also pay the applicable Central Government Depository service charge.

_____ c.  Other provisions relating to method of payment: _____
_____
_____
_____

## OTHER SPECIAL PROVISIONS

*(This section to be used for inclusion of local provisions approved by the chief judge as provided
in Florida Family Law Rule 12.610.)*

Florida Supreme Court Approved Family Law Form 12.980(d)(2), Final Judgment of Injunction for Protection Against Domestic Violence
without Minor Child(ren) (After Notice) (03/04)



**DIRECTIONS TO LAW ENFORCEMENT OFFICER IN ENFORCING THIS INJUNCTION**
*(Provisions in this injunction that do not include a line for the judge to either initial or write N/A are considered mandatory provisions and should be interpreted to be part of this injunction.)*

1.  **This injunction is valid in all counties of the State of Florida.** Violation of this injunction should be reported to the appropriate law enforcement agency. Law enforcement officers of the jurisdiction in which a violation of this injunction occurs shall enforce the provisions of this injunction and are authorized to arrest without warrant pursuant to section 901.15, Florida Statutes, for any violation of its provisions, except those regarding child support and/or alimony, which constitutes a criminal act under section 741.31, Florida Statutes. **When inconsistent with this order, any subsequent court order issued under Chapter 61, Florida Statutes, shall take precedence over this order on all matters relating to property division, alimony, child custody, or child support.**

2.  THIS INJUNCTION IS ENFORCEABLE IN ALL COUNTIES OF FLORIDA, AND LAW ENFORCEMENT OFFICERS MAY EFFECT ARRESTS PURSUANT TO SECTION 901.15(6), FLORIDA STATUTES. The arresting agent shall notify the State Attorney's Office immediately after arrest.

3.  **Reporting alleged violations.** If Respondent violates the terms of this injunction and there has not been an arrest, Petitioner may contact the Clerk of the Circuit Court of the county in which the violation occurred and complete an affidavit in support of the violation, or Petitioner may contact the State Attorney's office for assistance in filing an action for indirect civil contempt or indirect criminal contempt. Upon receiving such a report, the State Attorney is hereby appointed to prosecute such violations by indirect criminal contempt proceedings, or the State Attorney may decide to file a criminal charge, if warranted by the evidence.

4.  Respondent, upon service of this injunction, shall be deemed to have knowledge of and to be bound by all matters occurring at the hearing and on the face of this injunction.

5.  The temporary injunction, if any, entered in this case is extended until such time as service of this injunction is effected upon Respondent.

ORDERED on _____.

_____
CIRCUIT JUDGE

Florida Supreme Court Approved Family Law Form 12.980(d)(2), Final Judgment of Injunction for Protection Against Domestic Violence without Minor Child(ren) (After Notice) (03/04)

COPIES TO:

Sheriff of _____SARASOTA_____ County

Petitioner (or his or her attorney): _____ by U. S. Mail

      ✓   by hand delivery in open court (Petitioner must acknowledge receipt in writing on the face of the original order - see below.)

Respondent (or his or her attorney): _____ forwarded to sheriff for service

      ✓   by hand delivery in open court (Respondent must acknowledge receipt in writing on the face of the original order - see below.)

_____ by certified mail (may only be used when Respondent is present at the hearing and Respondent fails or refuses to acknowledge the receipt of a certified copy of this injunction.)

_____ State Attorney's Office
_____ Batterer's intervention program (if ordered)
_____ Central Governmental Depository (if ordered)
_____ Department of Revenue
_____ Other: _____

      I CERTIFY the foregoing is a true copy of the original as it appears on file in the office of the Clerk of the Circuit Court of _____SARASOTA_____ County, Florida, and that I have furnished copies of this order as indicated above. **KAREN E. RUSHING, CLERK**

                           CLERK OF THE CIRCUIT COURT

(SEAL)

           By: _____
                 Deputy Clerk

## ACKNOWLEDGMENT

      I, {Name of Petitioner}_____, acknowledge receipt of a certified copy of this Injunction for Protection.

                           Petitioner

## ACKNOWLEDGMENT

      I, {Name of Respondent}_____, acknowledge receipt of a certified copy of this Injunction for Protection.

                           Respondent

Florida Supreme Court Approved Family Law Form 12.980(d)(2), Final Judgment of Injunction for Protection Against Domestic Violence without Minor Child(ren) (After Notice) (03/04)



KRISTEN RHOAD
1432 Ashford Castle Drive
Chula Vista, CA 91915
Respondent

## IN THE CIRCUIT COURT OF THE TWELFTH JUDICIAL CIRCUIT
## IN AND FOR SARASOTA COUNTY, FLORIDA

IN RE:
PHIL HABERMAN
    Petitioner.

vs.                 CASE NO. 2006 DR 7754 SC

~~KRISTEN RHOAD~~
    Respondent.

                      /

### RESPONSE TO ORDER TO SHOW CAUSE RE:
### CIVIL CONTEMPT AND ORDER TO APPEAR

    Respondent, KRISTEN RHOAD, in Proper Person, responds to the allegations contained

in the Order to Show Re: Civil Contempt and Order to Appear dated January 16, 2007, as

follows:

    1.    Respondent was served the ORDER TO SHOW CAUSE RE; CIVIL

CONTEMPT AND ORDER TO APPEAR on January 22, 2007, at approximately 9:00 p.m.

PST~ two days prior to the January 25, 2007 hearing date. The Order To Show Cause was

defective in service, not timely served and should be continued pursuant to Florida Civil

Procedure Rule 1.090.

    2.    Respondent is and has been at all times a California resident and respectfully

requests a continuance of this matter to allow Respondent time to retain legal counsel.

Dated:       January 23, 2007

                              KRISTEN RHOAD
                              1432 Ashford Castle Drive
                              Chula Vista, CA 91915
                              Respondent

IN THE CIRCUIT COURT FOR THE TWELFTH JUDICIAL CIRCUIT
IN AND FOR SARASOTA COUNTY, FLORIDA

PHIL HABERMAN,

    Petitioner,

vs.                           CASE NO. 2006-DR-7754-SC

KRISTEN RHOAD,

    Respondent.

_____/

### RESPONDENT'S MOTION
### FOR RELIEF FROM JUDGMENT

Pursuant to RCP 1.540, the respondent, KRISTEN RHOAD, comes the
Court for the entry of an order relieving the respondent from and
vacating and setting aside the Final Judgment of Injunction for
Protection entered on September 7, 2006.

In support of the instant motion, the Court is shown as follows:

1.    The judgment is void due to lack of personal and subject
matter jurisdiction.

2.    The judgment is violative of the first and fourteenth
amendment's protection of free speech and due process. Shappell
v. Guardianship of Naybar, 876 So.2d 690 (Fla. 2d DCA 2004). It
likewise violates the Florida Constitution.

3.    The judgment is void due to the petitioner's pre and post
August 28, 2006 misconduct.

4.    The judgment is contrary to the facts and the law. There is
no basis for an involuntary mental evaluation.

5.    The respondent did not have an adequate opportunity to be
heard before the entry of the judgment. Hence, the judgment is



void. <u>Great Am. Ins. Co. vs. Bevis,</u> 652 So.2d 302) (Fla. 2d DCA 1999)

6.   Any contempt citations and warrants issued and outstanding arising from this proceeding should be vacated and cancelled.

7.   By filing the instant motion, the respondent is making a special appearance and does not waive her right to contest jurisdiction.

STANLEY E. MARABLE
**677 North Washington Blvd.
Sarasota, FL 34236
941/365-2506
Florida Bar no. 166345
Attorney for Respondent**

## CERTIFICATE OF SERVICE

I CERTIFY a true copy hereof has been sent by U.S. mail to Mr.

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ day

of September, 2007.

STANLEY E. MARABLE

PHIL HABERMAN
PLAINTIFF

IN THE COUNTY CLERK IN AND FOR
SARASOTA COUNTY FLORIDA

VS

CASE NO: 2006DR7754SC

KRISTEN RHOAD
DEFENDANT



### PLAINTIFFS REQUEST TO HAVE SPECIFIC CONTENT REMOVED TO COMPLY WITH COURT ORDER

On 7 September 2006, a permanent injunction was issued against Defendant for stalking and harassing Plaintiff by internet. Defendant failed to comply with the directives ordered by the court, and a warrant was issued for her arrest on 25 Jan 2007. In attempting to have the Defendant's slanderous statements removed, Plaintiff was told that unless the court order instructed specific web based slander sites to remove said content, the content would remain intact. Plaintiff is requesting that the order be modified, or a separate order issued, to specifically include the following web based slander sites to remove content that is in violation of the order.

1. LiveJournal.com, which is where Defendant's current slander blog is located
2. Lovefraud.com
3. POW Network.org
4. FightBigamy.com
5. ProfessionalSoldiers.com
6. Greensickle.com
7. DallasObserver.com, which is the first contact Defendant made
8. ReviewJoural.com

Defendant is now using Plaintiffs professional DJ name in slander blogs in an attempt to ruin Plaintiff's reputation as a well known DJ. Defendant has ceased to call Plaintiff by his formal name, thus bypassing the Court order to not mention Plaintiff by name. Defendant is now using Plaintiffs professional name in an effort to bypass the order, and linking all blogs to Plaitiffs professional webpage.

34 Violations were filed with the State Attorney's office on Defendant for violations. Each was referred back to Civil Division. There have been hundreds of violations to date, and Defendant is still openly able to stalk and harass Plaintiff and Plaintiffs friends. Plaintiff is also asking The Court to allow the warrant issued against Defendant to be listed as Extraditable. Defendant has openly stated to law enforcement, and on blog, that she will never stop stalking and harassing Plaintiff, and has openly solicited for others to





assist her in her stalking. Defendant has also openly bragged in blogs that she has people spying on Plaintiff for her, and that she knows everything Plantiff is doing. Defendant contacted Plaintiffs Commanding Officer, thus violating said order directly by contacting Plaintiffs employer. Defendant is also contacting animal rescue organizations with which Plaintiff works with. (See Enclosures)  Defendant additionally has posted Plaintiffs private cellular number on her blog, which puts Plaintiff's safety at serious risk.

If a hearing is required, Plaintiff requests that Defendant be compelled to return to Florida even if escort is required from Defendant's home state of Arizona.

Phil Haberman
Pro Se

IN THE CIRCUIT COURT OF THE TWELFTH JUDICIAL CIRCUIT
IN AND FOR SARASOTA, COUNTY, FLORIDA
**(Family Division)**

Phil Haberman

Petitioner,

. and

Kristen Rhoad

Respondent.

_____/

Case No. 2006 DR 7754 SC

## ORDER DISSOLVING OR AMENDING INJUNCTION

**THIS CAUSE** came before the court upon the motion of ☒ Petitioner ☐ Respondent to ~~dissolve or~~ modify permanent injunction. Present before the court was ☐ Petitioner ☐ Respondent. Upon the evidence presented **IT IS ORDERED**:

1. ☐ The motion is **DENIED**.

2. ☒ The motion is **GRANTED** as follows:

☐ The injunction is dissolved upon the request of Petitioner, after being advised of the consequences. The injunction is no longer in force or effect.

☐ The injunction is modified or amended to allow the parties to communicate by ☐ mail; ☐ phone; ☐ e-mail; ☐ FAX; ☐ in person, but only at secure locations with at least one third person present who has been approved by petitioner.

☐ The restrictions on distance are vacated but Respondent shall have no violent or non-consensual physical contact with Petitioner.

**OTHER:**

4. ☐ If injunction is NOT dissolved, the injunction remains in full force and effect except as modified herein.

**DONE AND ORDERED THIS** 29 **day of January, 2008.**

ROBERT B. BENNETT, CIRCUIT JUDGE

cc:
Petitioner: Hand
Respondent: Hand
Counsel

FILED IN OPEN COURT THIS ___ 29 ___ DAY OF
___ Jan ___, 20 08.
KAREN E. RUSHING, CLERK OF COURT
BY _____ DEPUTY CLERK

Case: 2006 DR 637754 SC

IN THE CIRCUIT COURT OF THE TWELFTH JUDICIAL CIRCUIT
IN AND FOR SARASOTA, COUNTY, FLORIDA
(Family Division)

PHIL HABERMAN,
    Petitioner,

and                         Case No.  2006 DR 7754 SC

KRISTEN RHOAD,
    Respondent.
_____/

## ORDER ON AFFIDAVIT OF VIOLATION OF INJUNCTION

THIS CAUSE came before the court upon the State Attorney Intake

Determination Report for Violation of Injunction and the court finds:

_____    A hearing will set on the Violation of Injunction.

_____    No further action will be taken by the court.

DONE AND ORDERED THIS 17th day of November, 2008.

                                  _____

cc:  file                     ROBERT B. BENNETT, CIRCUIT JUDGE

FILED FOR RECORD
VENICE BRANCH

2008 NOV 18 AM 9: 07

KAREN E. RUSHING
CLERK OF CIRCUIT COURT
SARASOTA COUNTY, FL

 EXHIBIT



Case: 2006 DR 007754 SC

## STATE ATTORNEY INTAKE DETERMINATION REPORT FOR
## VIOLATION OF INJUNCTION

Defendant/Respondent: _Kristen Rhoad_

Victim/PetitionerL: _Phil Haberman_

Clerk Case No. _2006 DR 7754 SC_    SAO Case No.: _____

Law Enforcement Agency: _____    Agency Case No.: _____

Date of Incident: _____    Date of Affidavit: _____

Assistant State Attorney: _____    Date of P.F.I.: _____

Arrest Date: _____    Capias Referral Date: _____

Date Rec'd from Clerk: _____    20 day Law Enforcement Deadline: _____

30 day SAO deadline: _____    Date IDR Sent to Clerk: _____

48 hr. Initial Report: ____ Follow-Up Report: ____ Final Report: ___ w/in 30 days

### ACTION TAKEN BY STATE ATTORNEY

1. _____ The facts alleged in the affidavit may constitute a criminal violation of F.S. 741.31 (Criminal Violation of Domestic Violence Injunction); or the substantive criminal offense(s) of _____ . Therefore, the State Attorney's Office requests the circuit not to utilize the contempt powers of the court based upon the elements of this crime at this time due to double jeopardy concerns because:

     _____ An information has been filed (copy attached)

     _____ The case remains under investigation by ___ State Attorney; ___ Law Enforcement

     _____ Other action pending, to wit: _____

2. _X_ No criminal information will be filed by the State Attorney's Office. Therefore, the circuit court should determine whether or not it should issue an Order to Show Cause for either civil or indirect criminal contempt of court based upon this affidavit of violation of the court's order for protection.

### COMMENTS

See attached memorandum of decline, if applicable. _The State cannot move this charge beyond a reasonable doubt due to the facts_

Submitted by Assistant State Attorney: _____

Date: _11/6/08_





Filing # 88577169 E-Filed 04/26/2019 10:34:22 AM

PHIL HABERMAN
PLAINTIFF

IN THE COUNTY CLERK IN AND FOR
SARASOTA COUNTY FLORIDA

VS

CASE NO:  2006DR7754SC    **RECEIVED**

KRISTEN RHOAD
DEFENDANT

APR 3 0 2019

BY:_____

## AMMENDED PLAINTIFFS REQUEST TO HAVE SPECIFIC CONTENT REMOVED TO COMPLY WITH COURT ORDER AND REQUEST FOR ISSUANCE OF ORDER OF CONTEMPT OF COURT

On 7 September 2006, a permanent injunction was issued against Defendant for stalking and harassing Plaintiff by internet. Defendant failed to comply with the directives ordered by the court, and a warrant was issued for her arrest on 25 Jan 2007. On 6 June 2018, Defendant was arrested and charged with Felony Aggravated Stalking from a 2015 warrant. On 27 Nov 2018, a second charge of Felony Aggravated Stalking was added. Defendant plead No Contest to both counts and was placed on probation. Within three weeks of release from jail post sentencing, Defendant had violated the orders of probation, and was again arrested. During the violation hearing, Judge Roberts was unclear regarding the language in the order, and the spirit of the order preventing further stalking, posting about Plaintiff, and the efficacy of the order in place. Plaintiff is requesting clarification to outline the order, and the spirit of the order, and an indication that the order was indeed set forth in a forward timeframe regarding the actions of the plaintiff, and not just an instruction to remove what had already been posted, or caused to be posted, by the Defendant.

In the past 13 years since the order has been granted, Defendant has launched multiple, aggressive, and regular attacks against Plaintiff online using her own and alternated aliases, thus destroying the reputation of the Plaintiff, costing the Plaintiff employment, and commencing a consistent campaign of harassment against Plaintiff, his relatives, his friends, his non-profit's supporters, his wife and her family. Some of the online attacks have culminated with threats of death to the Plaintiff. In addition, the Defendant has yet to meet the requirements set forth by the court to remove all blogs, postings, articles, etc. which reference the Petitioner, and that were posted, or caused to be posted, by the respondent in the original order. Plaintiff is requesting a finding of contempt of court based on the clear lack of abiding to the set parameters of the order set forth and into effect by Judge Bennett. In fact, the Defendant intensified her attacks and the numbers of articles she posted, or caused to be posted, about the Plaintiff.

*RECEIVED FROM JUDGE*

EX PARTE COMMUNICATION

TO: CLERK OF COURT
FROM: OFFICE OF JUDGE BONNER
DATE:____4-30-19____
THIS DOCUMENT WAS/WAS NOT
REVIEWED BY THE JUDGE. PLEASE
PLACE IN APPROPRIATE COURT FILE
REFERRED TO:____SD____

Plaintiff is requesting that the order be modified, clarified, or a separate order issued, to specifically include the following web-based slander sites to remove content that is in violation of the order.

1. ThisAintHell.com
2. Lovefraud.com
3. POW Network.org
4. FightBigamy.com
5. ProfessionalSoldiers.org
6. Greensickle.com
7. DallasObserver.com, which is the first contact Defendant made
8. ReviewJournal.com
9. VeriSeal.org
10. MilitaryPhonies.com
11. OneDrive.com where Defendant maintains a cloud of materials about Plaintiff
12. Reuters.com
13. RipoffReport.com
14. Any additional sites not mentioned or currently known where material Defendant has posted or caused to be posted shall be located when found or identified.

Defendant is now using Plaintiffs initials as an effort to circumvent the order set forth by Judge Bennett. Defendant has ceased to call Plaintiff by his formal name, thus bypassing the Court order to not mention Plaintiff by name. The Defendant is also attacking and stalking a 501c3 the Plaintiff is a partner of and has contacted hundreds of followers sending them slander messages regarding the Plaintiff and his alleged misdeeds towards her and others. This has adversely affected the organizations ability to raise donations, and the organization has refunded thousands of dollars in donation after donors were contacted by the Defendant randomly, and without solicitation. Since the organization is an entity owned by the Plaintiff, it is thus considered to be an employer, or place of work. This contact is a violation of the order set forth in 2006. This motion seeks specific clarification of the inclusion of any organization or business that the Plaintiff owns from the time of the original issuance of the order in 2006.

Multiple violations were filed with the North Port PD and State Attorney's office on Defendant for violations which resulted in two felony charges for Aggravated Stalking. There have been hundreds of violations to date of both civil and criminal statue, and Defendant is still openly able to stalk and harass Plaintiff and his friends, his work place, and his wife and her family. Defendant has stated to law enforcement and others she will never stop stalking and harassing Plaintiff and has openly solicited for others to assist her in her stalking. Since her release from jail less than 30 days ago in March 2019, a friend of the Defendant contacted the Plaintiff directly with a veiled threat the "Orange will look good on you." This is in reference to Defendant stating that she will be sending people to jail for what they have done to her, and that the tables are turning. Defendant has also openly bragged in blogs that she has people spying on Plaintiff for her, and that she knows everything Plaintiff is doing. Defendant contacted Plaintiffs partner in his

organization as well, thus violating said order directly by contacting Plaintiffs employer. Defendant has also posted Plaintiffs private cellular number and address on numerous blogs, which puts Plaintiff's safety at serious risk. Twice the Plaintiff's residence has been hit by gunfire, and one of the Plaintiff's vehicles was set on fire shortly after Defendant made a statement on her social media page stating "Just wait until you see what happens next." The Defendant has even written slanderous blog articles about Plaintiff's wife and her family, and had others post Plaintiff's wife's photo online, which puts her safety at risk.  Plaintiff is requesting that his wife and her family be added to the order of protection based on past instances and occurrences of aggressive direct and third party contact with them from Defendant.

Plaintiff is requesting an emergency hearing at the first available date, since Defendant is continuing to post online and cyber stalk Plaintiff. Less than 24 hours prior to this motion being filed on 24 April 2018, Defendant was posting and cyber stalking Plaintiff through social media outlets, and Plaintiff only became aware of it by notification from third parties who saw the actions take place. Plaintiff is also requesting sanctions be placed against Defendant.

s/Phil Haberman

Phil Haberman
Pro Se

Filing # 89253277 E-Filed 05/09/2019 01:59:27 PM

### IN THE CIRCUIT COURT OF THE TWELFTH JUDICIAL CIRCUIT
### IN AND FOR SARASOTA COUNTY, FLORIDA
### FAMILY DIVISION

**PHIL HABERMAN,**                                                    **CASE NO. 06 DR-7754 (SC)**

        **Petitioner,**

**v.**

**KRISTEN RHOAD,**

        **Respondent.**
_____/

### MOTION TO DISSOLVE/MODIFICATION OF INJUNCTION
### FOR PROTECTION AGAINST DOMESTIC VIOLENCE

COMES NOW, Kristen Rhoad, *Pro Se* Respondent ("Rhoad" or "Respondent"), and hereby files this Motion for Dissolve/Modification of Injunction for Protection Against Domestic Violence.

Respondent has a protected CONFIDENTIAL address, and does not reside in Florida.

Petitioner resides in North Port Florida.

### I.
### BACKGROUND

On August 23, 2006, Petitioner, Phil Haberman ("Haberman" or "Petitioner") filed for a Temporary Injunction For Protection Against Domestic Violence.

Respondent has never resided, visited or vacationed in the State of Florida and was served the Petition San Diego, California.

Haberman's Petition states the petition was *previously denied 11* times by the Circuit Judges.

Haberman claimed various false statements about Respondent stating Respondent committed other acts or threats of domestic violence; Respondent owns, has weapons; Respondent has a drug problem; and Respondent has a history of mental health issues, and violence. All allegations are false.

The parties were married in Las Vegas on January 4, 2004. The parties never resided together due to Petitioner leaving immediately to Fort Bragg, North Carolina for enlistment effective January 13, 2004.

During the parties' marriage, Respondent created a blog *The Rhoadwarrior*, wherein she described personal incidents of domestic violence committed by Petitioner, as well as other frauds by Petitioner to other persons and the public.

On or about February 28, 2004, Petitioner returned to Las Vegas, Nevada on a brief leave. Respondent filed a police report in Henderson Nevada, claiming Haberman drugged, raped, sodomized her and then attempted to insert an IV solution into her arm. Haberman did not have a medical license. Haberman claimed Respondent was dehydrated and falsely stated to the EMTs and police that he was a medic in Florida and New York. After Respondent filed the reports while at the hospital, Haberman attempted to have Respondent "Baker Acted" in his pursuit to gain Rhoad's property, bank accounts including a worker's compensation award of $4,000, remove Rhoad from his life and have her long term admitted to a mental facility.

Rhoad survived the assault and was not admitted to any mental health facilities much to Petitioner's dismay.

The parties' marriage was Annulled on December 2, 2005, in Las Vegas, Nevada.

On or about August 23, 2006, Respondent was served a Notice to Appear merely days before the August 28, 2006, hearing while she resided in San Diego, California. Respondent requested a continuance via telephone and was instructed to appear at the hearing.

On August 28, 2006, the Court held a hearing before Judge Robert Bennett, wherein the Court refused to listen to Respondent's claim of lack of personal jurisdiction because Respondent was not a resident of Florida; denied Respondent to present any evidence; and refused Respondent a continuance to allow Respondent to retain counsel. Haberman presented "shotgun" evidence of unverified audio tapes and emails that Respondent wrote to Petitioner during their marriage in an attempt to locate Petitioner so she could serve Petitioner with divorce documents.

During the hearing, Haberman presented testimony that he wanted Respondent's *Rhoadwarrior* blog removed as well as various internet stories removed that Respondent did not write.

There was no evidence or testimony of any domestic violence committed by Respondent as described under Florida Statute 741.30.

On September 7, 2006, Haberman was granted a Final Injunction with other provisions regarding contact.

On or about September 12, 2006, Respondent filed a Motion to Dissolve. The Motion was denied without a hearing on September 15, 2006.

According to the docket, on January 29, 2007, the Court issued a Failure to Appear and Failue to Comply Order for Respondent's arrest. Respondent was never made aware of the hearing or the subsequent order for her arrest.

Thereafter, Petitioner and the State Attorney filed various documents which Respondent was unaware of and did not receive.

On September 7, 2007, the docket reflects a Motion for Relief was filed. No subsequent documents or hearings were scheduled.

On December 10, 2007, Petitioner filed a Request to Have Specific Content Removed to Comply with Court Order.

Respondent attempted to retain counsel to appear at the January 29, 2008 hearing, however, the attorney was disbarred and failed to properly represent Respondent as complained in the Florida State Bar's complaint against Marable TFB NO. 2009-10,064 (12B).

On January 29, 2008, the docket reflects the *Rhoadwarrior* content was removed. Respondent did not receive a copy of the Amended Order, and Respondent is still unaware of what violations were alleged on November 18, 2008.

The record reflects that a hearing was held without Respondent, and that "Respondent's Counsel" was handed the Order Amending the Injunction. There is no record of a Notice of Appearance of Counsel for Respondent.

On or about October 26, 2013, Petitioner alleged violations of the injunction. On April 15, 2015, a Florida State capias warrant was issued, wherein on June 6, 2018, Respondent was arrested in her home state of Nevada for alleged violations of the injunction(s).

Respondent contends she has been the victim of the ongoing physical and online stalking by the Petitioner. Rhoad contends she sought civil and criminal charges against Haberman, only to find she was not able serve legal documentation upon Petitioner due to his avoidance of service.

## II.
## INJUNCTION IS UNCONSTITUTIONAL

This Motion tests the constitutionality of an eerily quiet yet sweeping injunction. That injunction makes it illegal for Rhoad to say virtually anything online regarding military fraud, Haberman, or contact anyone or communicate with anyone that involves Haberman, an alliance including social media sites, government agencies, and military websites, and animal rescue connections because Haberman may get "upset".

Petitioner's domestic violence injunction is an unconstitutional misuse of Florida's cyberstalking statute, which was directed at problems far different from what occurred here.

The injunction is also overly broad in another way: it exceeds statutory authorization and general rules of equity. In 2012, the legislature enacted § 748.0485, Fla. Stat, which authorized private individuals for the first time to seek civil injunctions against stalking, including cyberstalking.

Subsection (6)(a) explains that the intended injunctions would be those that "restrain the Respondent from committing any act of stalking." The order in this case is vague and unyielding stating

> "Respondent shall remove or cause to be removed all blogs,
> e-mail or other web-based communications to Petitioner or
> third-parties that refer to Petitioner, and which are posted,
> or caused to be posted by Respondent."

The alleged conduct does not satisfy the statutory definition of "cyberstalking" under § 784.048, Fla. Stat. (2014). This focuses on the statutory and constitutional infirmities in the lower court's injunction. The injunction is a classic prior restraint which this very court and other appellate courts in Florida and around the country routinely have held violates the fundamental right to free speech protected by both the First Amendment and the Florida Constitution's Declaration of Rights.

Moreover, the scope of conduct the injunction covers is overbroad and vague because it prohibits constitutionally protected speech through subjective prior restraint what speech Rhoad is allowed to make, even if such statements are about Haberman. Consequently, the injunction in this case improperly restricts Rhoad's free speech rights and must be reversed lest it open the door to further encroachments on the free speech rights of other Florida citizens.

### III.
### THE 2006 PETITION FOR DOMESTIC VIOLENCE WAS PREVIOUSLY DENIED 11 TIMES

Haberman's 2006 Petition for Domestic Violence, *was denied 11 times* by this Court and was refiled in the Venice Courthouse. Petitioner failed to follow procedure to obtain a domestic violence injunction once the injunction was denied.

Once a petition is denied, the trial court must make specific findings of why they are denied and/or allow for a hearing on the denied petition. Petitioner was required to bring the matter before the District Court of Appeals. *Chizh v. Chiz*, citing *Sanchez v. State*, 785 So2d 672 (Fla, 4th DCA 2001).

Instead, Haberman continued to bother the court, resubmit and amend his petition *eleven (11)* times before resubmitting to another venue in Venice in an attempt to comport with the domestic violence statutes.

Petitioner failed to provide evidence in his domestic violence petition that Respondent is a family or household member as the term is defined in Chapter 741, Florida Statutes. The parties' marriage was annulled in 2005 and the parties had never lived together.

Petitioner has used the petition form for other than what which is approved by the Court and form lacks the statutory required components.

Petition falsely stated Respondent has committed other acts or threats of domestic abuse; own, has, or is known to have weapons; had a drug problem; has a history of mental health problems. Petitioner committed perjury directly before the court to have his 12th petition application granted.

Motion to Dissolve/Modify Injunction                    4

Haberman's petition alleged that Rhoad's *Rhoadwarrior* blog was domestic violence, not cyberstalking. He alleged fear of violence from people who posted online, not Rhoad, and requested an ex parte injunction prohibiting Rhoad from communicating with him or posting anything about him on any websites, as well as ordering Rhoad to remove any material posted regarding Haberman from her blog and any other website.

The trial court granted the injunction based on the blog posting. But even if the blog posting served no legitimate purpose and would cause substantial emotional distress to a reasonable person, this would only constitute one incident of stalking. Therefore, because competent, substantial evidence does not support two incidents of stalking. In *Leach v. Kersey*,[1] the Court reversed the final judgment of injunction for protection against stalking.

Respondent further contends that the 2006 initiating Injunction is invalid:

1.    The parties' Annulment of December 2005 voids any relationship of the parties and that the parties' never resided together;

2.    The 2006 Injunction order was vague and overbroad;

3.    The 2006 allegations contained in the Petition do not comply with Fla. Stat. §741.30;

4.    No domestic violence incidents occurred pursuant to 741.28 within six (6) months of petition for injunction. The statute allowing injunctions against stalking, including cyberstalking, must be read in conjunction with the statute governing issuance of injunctions for repeat violence, which requires at least two incidences of stalking to obtain an injunction;[2]

5.    The Court ordered Respondent to submit to mental health exam which violated Respondent's constitutional rights.   Respondent contends the trial court lacked authority to order psychological evaluation. Trial court was without authority, in granting petition for injunction for protection against domestic to order Rhoad to undergo a psychological evaluation, even though it had authority to refer her to a psychologist requiring Rhoad to undergo a psychological evaluation would impose a substantial financial and emotional burden and would have a chilling effect on Rhoad.[3]

## IV.

## PETITIONER HAS USED THE PETITION FORM FOR OTHER THAN WHAT WHICH IS APPROVED BY THE COURT AND FORM LACKS THE STATUTORY REQUIRED COMPONENTS

---

[1] 162 So.3d 1104 (2015)
[2] West's F.S.A. §§ 784.046(1)(b), 784.0485
[3] West's F.S.A. § 741.30(6)(a).

On January 9, 2007, Petitioner filed a Request for an Emergency Hearing, alleging "over 100 violations, direct and indirect violations, and Federal violations". The Emergency hearing request did not allege any domestic violations pursuant to 741.28 or 741.30.

The true intent of Petitioner's Emergency request was specifically filed to:

1. request a hearing to issue an injunction against "*Creative Loafing*" to prevent them from publishing any story, article, or information claiming the story served no legitimate purpose and violated the 2006 Injunction;

2. issue finding of contempt against Rhoad for her alleged "disregard of the orders";

3. to include a modification of the order to encompass an injunction against the other websites that Rhoad was allegedly "collaborating with in posting false and slanderous information about the Petitioner on the internet";

4. requesting the court to determine if Rhoad could be prosecuted under the State's felony requirements for aggravated cyberstalking stalking, alleging "Rhoad violated the order numerous times with a pattern of behavior after an injunction".

Petitioner's request was to stop the newspaper article from being published within the next week. Petitioner's request failed to specifically state the contemptuous violations, and failed to provide any evidence that Respondent was responsible for the news article or its publication.

The Court erred in granting the Emergency Request.

## V.
## 2008 AMENDED INJUNCTION SEEKS SOCIAL MEDIA TO BE REMOVED THAT IS NOT RESPONDENT'S

Petitioner's *ex parte* Amended Request dated December 10, 2007 is unverified, fails to provide any confirmation of service to Respondent; was filed approximately 1½ years after the originating 2006 order; riddled with various false and perjured statements alleging Respondent is responsible for the content on the following websites; failed to provide evidence that Respondent was the author of these websites; and basically demanded websites to be removed that were not Respondent's.

Petitioner alleges various websites have posted "slanderous and defamatory statements" requesting the Court to modify the 2006 Injunction Order to remove the websites. The Amended Petition sought removal of alleged web based "slander sites". These websites are:

1. LiveJournal.com;
2. Lovefraud.com;
3. POW Network.org;
4. FightBigamy.com;

5.      Professional Soldiers.com;
6.      Greensickle.com;
7.      DallasObserver.com;
8.      ReviewJournal.com.

Petitioner's *ex parte* Amended Injunction requested the *entire* website content be removed, not the just the content and stories that were written about Petitioner. Requesting these sites be removed are Constitutional violations towards the owners of the websites.

Petitioner actively participated and interviewed with Lovefraud, Dallas Observer, POW Network, Greensickle, Professional Soldiers and The Review Journal. These newspaper web-based sites are reputable news and military reporting websites, which Petitioner commented on that he did not like the stories factually written about him and his military career.

The court abused its discretion granting the *ex parte* Amended Injunction for the removal of news reporter web-based sites, and Petitioner cannot hold Respondent responsible for the websites. Petitioner would have to legally sue each website for defamation and slander, which he cannot prove.

## VI.
## THE INJUNCTION UNCONSTITUTIONALLY FORBIDS PROTECTED SPEECH ABOUT A PERSON THAT DOES NOT FALL WITHIN ONE OF THE NARROW CATEGORIES OF RESTRICTABLE SPEECH

A.      Injunctions May Not Forbid Protected Speech About a Person Said to a Willing Listener.

The U.S. Supreme Court has consistently forbidden restrictions on speech that is said to a willing audience and that falls outside a few narrow, traditionally recognized categories (such as libel or true threats). For example, in *Organization for a Better Austin v. Keefe*, an activist group distributed pamphlets about real estate agent Keefe to people in his neighborhood.[4] The pamphlets criticized Keefe's real estate practices and urged readers to pressure him to change those practices. The pamphlets also included Keefe's personal telephone number so that people could call him directly with their criticisms.[5]

A state court enjoined the distribution of the pamphlets, but the U.S. Supreme Court vacated the order on First Amendment grounds. The Court stressed that the plaintiff was not "attempting to stop the flow of information into his own household, but to the public"; the called this an "important distinction."[6]And the plaintiffs interests in privacy and avoiding offensive criticism could not justify the injunction (Id. at pp. 419-20.) "[S]o long as the means are peaceful," the Court held, "the [pamphlets] need not meet standards of acceptability."[7]

---

[4] ((1971) 402 U.S. 415, 419.)
[5] (Id. at 417.)
[6] (Id. at p. 420.)
[7] (Id. at p. 419.)

Motion to Dissolve/Modify Injunction              7

Likewise, in *NAACP v. Claiborne Hardware Co.*, the Court held that speakers were entitled to publicly criticize even private citizens, and even when such criticism risked stimulating attacks on those citizens. ((1982) 458 U.S. 886.) In *Claiborne Hardware*, the petitioners declared a boycott against white businesses, and enforced this boycott by stationing observers outside white-owned stores and then announcing - on leaflets and orally in local black churches - the names of those black residents who were seen shopping at the stores. (Ibid.) The residents were branded as traitors to the black cause, called demeaning names, and socially ostracized for merely trading with whites." (Id. at p. 904 (citation omitted).)

Even though the speech was intended to be coercive, and was doubtless seen as such by many of its subjects, the Court held that the First Amendment protected such public naming and shaming: "Petitioners admittedly sought to persuade others to join the boycott through social pressure and the 'threat' of social ostracism. Speech does not lose its protected character, however, simply because it may embarrass others or coerce them into action." (Id. at pp. 909-10.) The Court therefore set aside an injunction against such speech, as well as damages liability for the speech. (Id. at pp. 893, 924 n. 67, 934.)

Like the injunctions in *Keefe* and *Claiborne Hardware*, the injunction against Rhoad is unconstitutionally overbroad because it tries to stop the flow of information to the public at large. Just as the NAACP's public labeling of those who defected from the boycott as traitors was protected speech, so was Rhoad's public accusation that Haberman was a military fraud and he committed other frauds against the public. That Rhoad's speech may have been critical or designed to change Haberman's behavior cannot justify the injunction, as both *Keefe* and *Claiborne Hardware* make clear. Indeed, the injunction against Rhoad is even broader than the *Keefe* injunction because it prevents her from posting to the Internet, which has an even wider audience than leaflets.

Restrictions on unwanted speech to a person can be constitutional because speech said specifically to an unwilling listener is less valuable than other speech. This speech is unlikely to persuade or enlighten anyone, precisely because the sole listener does not want to hear it. "[N]o one has the right to press even 'good' ideas on an unwilling recipient." (*Rowan v. U.S. Post Office Dep't* (1970) 397 U.S. 728, 738 [upholding restrictions on direct mailings to people who had asked not to be contacted]; Eugene Volokh, *One-to-One Speech vs. One-to-Many Speech*, Criminal Harassment Laws, and "Cyberstalking" (2013) 107 Nw. U. L.Rev. 731, 740-51 [arguing that unwanted speech to a person is less protected than speech about a person]; Aaron H. Caplan, *Free Speech and Civil Harassment Orders* (2013) 64 Hastings L.J. 781, 782 [likewise].)

But this rationale for restricting speech to an unwilling listener cannot be extended to restrictions on speech to the public, even when it may include willing listeners; *Keefe* makes that clear, and the Supreme Court has since reaffirmed this. For instance, in up-holding a narrow restriction on certain kinds of residential picketing, the U.S. Supreme Court in *Frisby v. Schultz* stressed that the targeted speech was narrowly directed at the household, not the public" - but more generally directed means of communication" cannot be similarly banned. ((1988) 487 U.S. 474, 484, 486 (citing *Keefe*, supra, 402 U.S. at 420).)

Indeed, the Supreme Court has made clear that even outrageous and highly emotionally distressing speech about a person is fully protected by the First Amendment, at least so long as it is

connected to matters of public concern (as the military and public fraud debate certainly is). In *Snyder v. Phelps*, the U.S. Supreme Court protected the speech of protesters who displayed signs that said "Thank God for Dead Soldiers" at the funeral of a deceased marine. ((2011) 562 U.S. 443, 456.) The Court recognized that, though the speech caused the marine's father "anguish" and "incalculable grief," the First Amendment precluded the father's tort action against the protesters for intentional infliction of emotional distress: "[I]n public debate [we] must tolerate insulting, and even outrageous, speech in order to provide adequate 'breathing space' to the freedoms protected by the First Amendment." (Id. at p. 458 [citations omitted].) Likewise, Rhoad's speech about Haberman is at least as constitutionally protected.

In *Van Liew v. Stansfield*, the Massachusetts high court struck down a civil harassment order that ordered a critic of a planning board member not to mention the member's "name in any email, blog, [T]witter or any document." ((2016) 474 Mass. 31, 33-34.) The court held that even a narrower "harassment prevention order - based in part on the critic's "calling [member Colleen Stansfield] corrupt and a liar" - was unconstitutional, and could form the basis of a malicious prosecution lawsuit by the critic against the politician. (Ibid.)

In *Evans v. Evans*, the Fourth District struck down a preliminary injunction prohibiting an ex-wife and her mother from, among other things, posting "false and defamatory statement" and "confidential personal information" about her ex-husband online. ((2008) 162 Cal.App.4th 1157, 1161.) Though the ex-husband argued the speech was harassing and intruded on his privacy, the court held that the injunction was unconstitutionally overbroad. (Ibid.)

B.   Petitioner's Domestic Violence Injunction May Not Be Directed To Prevent Defamatory Speech.

While the trial court might have been well-intentioned, the impact of its order runs contrary to the goals and purposes of the domestic-violence statute and violates Respondent's Constitutional rights. The Court abused it's discretion to grant the injunction stating:

> "Respondent shall remove or cause to be removed all blogs, e-mail or other web-based communications to Petitioner or third-parties that refer to Petitioner, and which are posted, or caused to be posted by Respondent."

Petitioner's 2006 domestic violence injunction was specifically targeting the removal of Respondent's *Rhoadwarrior* blog. The injunction was incorrectly granted and ordered for removal of the blog which placed restrictions on Respondent's speech.

Petitioner filed the domestic violence injunction as revenge for Respondent exposing Petitioner's fraudulent military career and to have internet websites removed that mentioned the content in the *Rhoadwarrior* blog.

Petitioner's domestic violence injunction may not be directed to prevent defamatory speech.[8] Florida's Section 784.048 itself recognizes the First Amendment rights of individuals by concluding that

---

[8] An injunction may not be directed to prevent defamatory speech. *Id.* at 487; *Chevaldina,* 133 So.3d at 1090. " '[P]rior restraints on speech and publication are the most serious and the least tolerable infringement on First Amendment

a "course of conduct" for purposes of the statute does not include protected speech[9]. This includes speech that may be offensive or vituperative. *See Watts v. U.S.,* 394 U.S. 705, 708, 89 S.Ct. 1399, 22 L.Ed.2d 664 (1969).

A temporary or final injunction directed to speech is a classic example of prior restraint on speech triggering First Amendment concerns.[10] [11]

Even if Respondent commented on various websites about Petitioner's own posted online actions, Respondent's Constitutional Rights were violated and gagged.[12] The injunction against Rhoad is invalid because Rhoad's words were not found to be defamatory, or covered by any of the other First Amendment categories of restrictable speech.

Respondent's *Rhoadwarrior* blog was forcefully removed by this Court's 2006 Order. The blog made statements about Petitioner's false military endeavors as well as Petitioner's fraudulent marriage to Respondent. Respondent's blog further served a legitimate purpose as it exposed Haberman's false attempts to re-enter the military though eight (8) States, his false documents created, and his various other public frauds including proposing marriage to five (5) women during his marriage to Rhoad.

Trial court's placing a premade stamp on the final injunction order, stating that Respondent shall not post on social media regarding alleged stalking victim, who was subject of hundreds of social media sites, prevented communications about Petitioner to other persons, and such prohibition by prior restraint violated the First Amendment.

The 2006 domestic violence injunction was overbroad holding Respondent responsible for all internet content which Respondent did not write. A government restriction is vague if it "either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application."[13]

Speech on matters of public concern is at the heart of the First Amendment's protection; expression on public issues has always rested on the highest rung of the hierarchy of First Amendment values.[14]

In this case, the amount of protection afforded to Respondent's speech turns on whether it is of public or private significance. Speech deals with matters of public concern when it can be fairly considered as relating to any matter of political, social, or other concern to the community, or when it is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public. [15] While personal attacks on Petitioner ordinarily would not be considered to be "of public

---

rights.' " *Concerned Citizens for Judicial Fairness, Inc. v. Yacucci,* 162 So.3d 68, 73 (Fla. 4ᵗʰ DCA 2014) (quoting *Neb. Press Ass'n v. Stuart,* 427 U.S. 539, 559, 96 S.Ct. 2791, 49 L.Ed.2d 683 (1976)).
[9] § 784.048(1)(b), Fla. Stat. (2014)
[10] U.S.C.A. Const.Amend. 1
[11] Scott v. Blum, 191 So.3d 502 (2016)
[12] Neptune v. Lanoue, 178 So.3d 520 (2015)
[13] *Connally v. General Construction Co.,* 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926).
[14] U.S.C.A. Const.Amend. 1
[15] *Snyder, 562* U.S. at 453, 131 S.Ct. 1207

concern," Respondent's online posting was commenting about the alleged fraudulent military actions of Petitioner's own online aggrandizing internet posts, and other public frauds.

Petitioner's 2008 Amended Injunction requested Respondent be extradited and compelled to "return" to Florida. Respondent has never resided, visited or vacationed in Florida which constitutes personal jurisdiction due process violations. Pursuant to Fla Stat. Petitioner should have filed the injunction in the State which Respondent resided. Because Petitioner failed to file in the proper venue, the personal jurisdiction over Respondent on the injunction is void.

C.    Petitioner's Perjury

Haberman's domestic violence petition failed to allege incidents of repeat violence, sexual violence, or dating violence and failed include the specific facts and circumstances that form the basis upon which relief was sought. Basically, Petitioner falsified the allegations contained in the petition.

To obtain the initiating Domestic Violence Injunction, Haberman submitted and altered his petition 12 times, after being *denied 11 times*. Haberman claimed various false statements about Respondent stating Respondent committed other acts or threats of domestic violence; Respondent owns, has weapons; Respondent has a drug problem; and Respondent has a history of mental health issues, and violence which were all false.

The amended request demonstrated Petitioner's intention to have Respondent violate the order and make Respondent responsible for all online content she was not the author of. Holding Respondent responsible for these websites is not only unconstitutional, but illegal.

## IV.
## CONCLUSION

Petitioner failed to provide evidence in his domestic violence petition that Respondent is a family or household member as the term is defined in Chapter 741, Florida Statutes. The parties' marriage was annulled over a year prior to the petition; no act of violence occurred six (6) months prior to the application; and Respondent was never a resident of Florida.

Petitioner's domestic violence petition was previously denied 11 times.

Petitioner used the domestic violence petition form for other than what which is approved by the Court and form lacks the statutory required components. The petition sought the removal of various online news stories which were not authored by Respondent.

The domestic violence injunction in this case bars Rhoad from talking about Haberman, her political adversary, in the context of a heated debate on a public matter. It limits her ability to publicly explain her disagreement with him. It limits her ability to argue that he ought not be trusted and to propose questions as to his military career claims and his other online posted frauds. Indeed, it even limits her ability to condemn the injunction itself and her role in asking for modifications and dismissal of this injunction.

Speech can be restricted when it is threatening, defamatory, or fits within any other narrow category of unprotected speech. Speech to an unwilling listener can also be restricted. But this domestic violence injunction goes far beyond that, restricting a wide range of speech about a person. That is inconsistent with U.S. Supreme Court precedent, Florida precedent, and many considered decisions from other courts.

Based on the foregoing, the domestic violence injunction should therefore be vacated and dismissed.

Dated this 11 day of December, 2018.

_____
Kristen Rhoad, Respondent *Pro Se*

IN THE CIRCUIT COURT OF THE TWELFTH JUDICIAL CIRCUIT

IN AND FOR SARASOTA, COUNTY FLORIDA

PHIL HABERMAN,

      Petitioner.

                                 CASE NO: 2006 DR 007754 SC

KRISTEN RHOAD,

      Respondent.

_____/

## ORDER DENYING RESPONDENT'S MOTION TO DISSOLVE/MODIFICATION OF INJUNCTION FOR PROTECTION AGAINST DOMESTIC VIOLENCE

      This matter came before the Court on Respondent's Motion to Dissolve/Modification of Injunction for Protection Against Domestic Violence, filed May 9, 2019. The Court has reviewed the motion and the evidence on file and is otherwise duly advised in the premises; the Court hereby finds as follows:

This motion raises issues that should have been raised on direct appeal. The motion does not request dissolution of the order based on any change of circumstance. The Respondent may amend her motion to state a prima facie case for relief/entitlement for an evidentiary hearing. The Court will not review or take action on any further pleading or motion filed by the Respondent in this case without a proper certificate of service. . Therefore, it is hereby ordered that the Respondent's Motion to Dissolve/Modification of Injunction for Protection Against Domestic Violence, is Denied.

      **DONE AND ORDERED** in Chambers in Venice, Sarasota County, Florida this _13_ day of _____May_____, 2019.

                                                   _____

                                        Honorable Kimberly C. Bonner

cc: Phil Haberman

      Geoffrey Proffitt, Esq.

      Kristen Rhoad

Filing # 84146296 E-Filed 01/30/2019 02:50:27 PM

RECORDED IN OFFICIAL RECORDS
INSTRUMENT # 2019011834   1   PG(S)
1/30/2019 4:37 PM
KAREN E RUSHING
CLERK OF THE CIRCUIT COURT
SARASOTA COUNTY, FLORIDA
CIVIL COURTS          Receipt # 2331376

**IN THE CIRCUIT COURT OF THE TWELFTH JUDICIAL CIRCUIT
IN AND FOR SARASOTA COUNTY, FLORIDA
FAMILY DIVISION**

PHIL HABERMAN,                                    CASE NO. 06 DR-7754 (SC)

       **Petitioner,**

v.

**KRISTEN RHOAD,**

       **Respondent.**

_____/

## NOTICE OF APPEAL

NOTICE IS GIVEN that KRISTEN M. RHOAD, Respondent/Appellant, appeals to the Second District Court of Appeal the Order of this Court rendered on January 25, 2019. The nature of the order is a final order on Respondent's Motion To Dissolve/Modification of Injunction for Protection Against Domestic Violence.

Dated this 30th of January 2019.          */s/ Kristen Rhoad*_____
                                          Kristen Rhoad, Respondent *Pro Se*

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing Respondent's Notice of Appeal has been sent to all parties of record in accordance with the Florida Rules of Civil Procedure by and through the Florida e-file system and U.S. Mail on this the 31st day of January, 2019.

Phil Jason Haberman
3355 Shawnee Terrace
Sarasota, FL

                */s/ Kristen Dougherty*

Filing # 89253277 E-Filed 05/09/2019 01:59:27 PM

**IN THE CIRCUIT COURT OF THE TWELFTH JUDICIAL CIRCUIT**
**IN AND FOR SARASOTA COUNTY, FLORIDA**

PHIL HABERMAN, CASE NO. 06 DR-7754 (SC)

Petitioner,

v.

KRISTEN RHOAD,

Respondent.
_________________________________/

**RESPONDENT'S MOTION TO DISMISS PETITIONER'S EX PARTE REQUEST TO HAVE SPECIFIC CONTENT REMOVED TO COMPLY WITH COURT ORDER AND PETITIONER'S REQUEST FOR ISSUANCE OF ORDER FOR CONTEMPT OF COURT**

**RESPONDENT'S REQUEST FOR TELEPHONIC APPEARANCE and FEES AND COSTS TO DEFEND**

COMES NOW, Kristen Rhoad, Respondent *Pro Se*, and hereby files her Motion to Dismiss Petitioner's Ex Parte Requests for the following reasons:

1. Petitioner's Ex Parte Requests are untimely and failed to be filed within ten (10) days after the date the final order on March 13, 2019, and therefore must be denied.
2. Pursuant to Florida Rules of Civil Procedure, the moving party failed to certify to the court in writing that it has made a reasonable effort to notify the party to be affected by the petition/request. Petitioner failed to comply with serving the Requests and therefore must be denied.
3. Petitioner's Ex Parte Requests are barred as venue is improper. This case has been appealed to the Second District Appellate Court Case No. 2D19-0407, wherein Respondent's Brief addressed the lack of personal jurisdiction over Respondent. On December 13, 2018, Respondent filed a Motion to Dissolve the Injunction (See Exhibit A) wherein Judge Kimberly Bonner denied the Motion without a hearing bring action for direct Appeal.

4.      Petitioner's Ex Parte Requests for Contempt are barred as venue is improper. Respondent filed for appeal of Case Nos. 20152015-CF-006022, 2018-CF-017848 which are also on appeal in the Second District Appellate Court Case No. 2D18-4917.

5.      Petitioner's Ex Parte Requests ask this Court to have jurisdiction over social media content that does not belong to Respondent in an attempt to hold Respondent responsible for web-based content Respondent did not write. This court does not have jurisdiction to order Respondent to remove social media and internet content that Respondent has not authored and does not own.

6.      Petitioner's Requests in whole or in part, are barred by the doctrine of unclean hands.

7.      Petitioner's Ex Parte Requests wish to change the outcome with respect to the final order on Respondent's March 13, 2019 VOP hearing.  A "request for clarification" does not seek to persuade the trial court that a prior judgment should be changed, modified, or invalidated.

8.      Petitioner's Ex Parte Requests seeks to violate Respondent's First Amendment Constitutional Rights, and The Florida Constitution.

9.      Petitioner's Ex Parte Requests fail to provide any evidence to support his Ex Parte Request.

10.     Respondent respectfully requests fees and costs associated with the defense and response to this motion in the amount of $250.

WHEREFORE, for the reasons stated above, Respondent respectfully prays Petitioner's Requests be DENIED.

Dated this 9th day of May, 2019.          *s/s Kristen Rhoad*
                                          Kristen Rhoad, *Pro Se* Respondent

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing RESPONDENT'S MOTION TO DISMISS PETITIONER'S EX PARTE REQUEST TO HAVE SPECIFIC CONTENT REMOVED TO COMPLY WITH COURT ORDER AND PETITIONER'S REQUEST FOR ISSUANCE OF ORDER FOR CONTEMPT OF COURT and RESPONDENT'S REQUEST FOR TELEPHONIC APPEARANCE has been sent to all parties of record in accordance with the Florida Rules of Civil Procedure by and through the Florida e-file system and U.S. Mail on this the 9th day of May, 2019.

Phil Jason Haberman
3355 Shawnee Terrace
Sarasota, FL 34286

*/s/ Kristen Dougherty*

Filing # 93086683 E-Filed 07/24/2019 02:35:01 PM

PHIL HABERMAN
PETITIONER

IN THE COUNTY CLERK IN AND FOR
SARASOTA COUNTY FLORIDA

VS

CASE NO: 2006DR7754SC

KRISTEN RHOAD
RESPONDENT

## PETITIONER'S REQUEST FOR EXPEDITED HEARING

Petitioner in the above matter is requesting an expedited hearing for his previously filed motion that has yet to be addressed. Respondent is continuing to harass and stalk Petitioner, and the matter needs to be addressed by the court on the matters contained within the previously filed motion.

Petitioner is requesting a hearing at the earliest available date, with all parties involved required to be in proper and personal attendance

Phil Haberman
Petitioner
Pro Se

X IN THE CIRCUIT COURT OF THE TWELFTH JUDICIAL CIRCUIT IN AND FOR SARASOTA COUNTY, FLORIDA
IN THE COUNTY COURT IN AND FOR SARASOTA COUNTY, FLORIDA

CASE NUMBER:  **2006 DR 007754 SC**

**PHIL HABERMAN**
     *PETITIONER*

vs

**KRISTEN RHOAD**
     *RESPONDENT*

## COURT APPEARANCE RECORD

**JUDGE:**          STEPHEN WALKER                    Evidence Record #
**DEPUTY CLERK:**   J Ortiz
**PLTF. ATTY:**     PRO SE                            Plaintiff #
**DEF.ATTY:**       PRO SE – BY PHONE                 Defendant #
                    NOTARY – STATE OF CLARK COUNTY
                    NEVADA – WALT PAPAGNA
**CT.RPTR:**        DIGITAL RECORDING

RULE INVOKED:    ☐ YES   ☑ NO
JURY SWORN:      ☐ YES   ☑ NO

PLAINTIFF'S WITNESSES SWORN:              DEFENDANT'S WITNESSES SWORN:
Name Testified                            Name Testified

  1).                                     1). KRISTEN RHOAD
  2).                                     2).
  3).                                     3).
  4).                                     4).
  5).                                     5).

PLAINTIFF'S MOTIONS:                      DEFENDANT'S MOTIONS:
Date/Motion/Ruling                        Date/Motion/Ruling

  1). **PLAINTIFF'S MOTION TO MODIFY THE INJUNCTION AND**     1).
  **A FINDING OF CONTEMPT OF COURT**
  RULING: COURT ORDERS THE PETITIONER 10 DAYS TO
  FILE A RESPONSE REGARDING IF THIS COURT HAS
  JURISDICTION TO GO FORWARD WITH THIS MOTION
  WHILE THIS CASE IS IN APPEAL.
  THIS HEARING TO BE RESET BY THE COURT.
  THE PARTIES DO NOT HAVE ANY OBJECTIONS TO THIS
  COURT SPEAKING TO JUDGE ROBERTS IN REGARDS TO
  THE VIOLATION HEARING THAT WAS HEARD ON
  03/13/2019.
  APPELLANT/PETITIONER: KRISTEN M RHOAD
  VS APPELLE/RESPONDENT: PHIL HABERMAN
  CASE NO.: 2D19-0407
  RELATED CASES: 2018CF017848NC AND 2015CF006022NC

JURY POLLED: YES   ☐ NO ☑

**KAREN E. RUSHING**
**CLERK OF THE CIRCUIT COURT**

BY: ___J Ortiz_____          DATE:  August 15, 2019
        Deputy Clerk

                    Page 1 of 1

**Filed  08/15/2019 04:17 PM - Karen E. Rushing, Clerk of the Circuit Court, Sarasota County, FL**