Filing # 94723857 E-Filed 08/25/2019 12:41:58 AM

### IN THE CIRCUIT COURT OF THE TWELFTH JUDICIAL CIRCUIT
### IN AND FOR SARASOTA COUNTY, FLORIDA
### FAMILY DIVISION

PHIL HABERMAN,                                    CASE NO. 06 DR-7754 (SC)

      Petitioner,

v.

KRISTEN RHOAD,

      Respondent.

_____/

### RESPONDENT'S MOTION FOR JUDGMENT ON THE PLEADINGS WITH INCORPORATED MEMORANDUM OF LAW

Respondent KRISTEN RHOAD pursuant to Rule 1.140(c), hereby moves for judgment on the pleadings as follows:

1.    A motion for judgment on the pleadings pursuant to Rule 1.140(c) is governed by the same legal test as a motion to dismiss for failure to state a cause of action. See Domres v. Perrigan, 760 So. 2d 1028 (Fla. 5th DCA 2000).

2.    A judgment on the pleadings may be granted only if a party is entitled to judgment as a matter of law based on the content of the pleadings. The trial court's consideration is limited to only the pleadings. The trial court must consider all well pled material allegations and fair inferences to be true. Domres v. Perrigan, 760 So.2d 1028, 1029 (Fla. 5th DCA 2000); Rule 1.140(h)(2).

3.    Petitioner Haberman's 2019 Amended Request [filed as a Motion] fails to include exhibits and the allegations are contrary to the evidence. Rule 1.130(b). If there is an inconsistency between the general allegations of material facts in the complaint and the specific facts

Defendant's Motion for Judgment on Pleadings    1

revealed by an attached exhibit, they have the effect of neutralizing each allegation against the other, thus rendering the pleading objectionable. Hillcrest Pacific Corporation v. Yamamura, 727 So.2d 1053, 1056 (Fla. 4th DCA 2009).

4.   A judgment on the pleadings may be entered against the plaintiff if the complaint and exhibits thereto show that the moving party is entitled to judgment as a matter of law. Shay v. First Federal of Miami, Inc., 429 So.2d 64, 65 (Fla. 3d DCA 1983).  Petitioner fails to present *any* evidence or exhibits.

5.   The pleadings are now closed as to Respondent.

6.   Petitioner Haberman's 2019 Amended Request for have Specific Content Be Removed To Comply with [2006] Court Order and Issuance of Order for Contempt Charges (herein "2019 Amended Request") fails to comply with virtually every basic rule of pleading required by the Florida Rules of Civil Procedure as plead.  Petitioner's inadvertence/ignorance of the rules constitutes neglect.[1]

7.   On August 15, 2019, this Court Ordered Petitioner Haberman to respond within 10 days regarding "the jurisdiction of this Court to Respondent's December 13, 2018 Motion to Dissolve the Injunction #70". [Clerk's misfiling/refiled docket #105 exhibit as a separate pleading on May 9, 2019 to the Motion to Dismiss *Ex Parte* Request].  The Motion to Dissolve was previously ruled by Judge Bonner on May 13, 2019, because Petitioner Haberman failed to respond within five (5) months, which is also the subject of jurisdiction in the 2D19-0407 Appeal.

---

[1] Geer v. Jacobsen, citing Spencer v. Barrow, 752 So.2d 135, 138 (Fla. 2nd DCA 2000)

Petitioner Haberman has a habit of confusing the Court with the pleadings in this case adding *ex parte* issues to the mix. Allowing Petitioner Haberman to respond to the jurisdiction of the 2018 Motion to Dissolve after ruling by Bonner is prejudicial to Respondent and contrary to law.

7. Petitioner Haberman's 2019 Amended Request fails to state a cause of action against Respondent, because, as a matter of law, Petitioner's demand for contempt for the failure of Respondent to remove internet sites that are not owned, or under the control of Respondent is therefore barred.

## RES JUDICATA

7. Petitioner Haberman's 2019 Amended Request is nothing more than a mere fantastical monologue of ramblings as to how Petitioner disagrees with Judge Roberts' March 12, 2019 decision on the falsely claimed violation of probation charge brought by Petitioner that he now seeks a "redress". This improperly plead "redress" brings forth the same *Res Judicata* false allegations to have Respondent arrested which were previously decided in 2007, 2008, 2018 and 2019.

   a. Petitioner Haberman's December 10, 2007 Request to Have Specific Content Removed are the same allegations as the current 2019 Amended Request to Have Specific Content Removed. See Exhibit "1".

   b. An Order from Judge Bennett dated November 18, 2008, states "No further action will be taken by this Court." See Appellate docket #63. See Exhibit "2".

   c. Even the State Attorney November 18, 2008, stated "no criminal action will be filed". See Exhibit "3".

   d. Violation of Probation decision of "no violation" by Judge Roberts on March 12, 2019. See Exhibit "4".

8.  Petitioner Haberman's 2019 Amended Request further demonstrates the *faux paux* actual date of creation of the pleading depicting "*April 24, 2018*" which are the same charges as 2006, and 2008.

9.  Petitioner Haberman's 2019 Amended Request's sole purpose is to harass, intimidate and to re-incarcerate Respondent at any cost. Petitioner has attempted and somehow has been successfully circumventing the law to have this matter relitigated numerous times by repeated *ex parte* filings since 2008.

10. Petitioner Haberman has filed false *ex parte* allegations for the past 14 years that have been previously adjudicated, yet, Petitioner keeps bringing *res judicata* litigation before the court because he is not happy with any decision that does not comport with his position:

    (1) to remove everything off the internet written about him;

    (2) hold Respondent responsible for the internet content; and

    (3) to incarcerate Respondent.

11. In the litigation that follows within the *same* case, the law of the case will require that those "questions of law *actually decided* on appeal must govern the case in the same [appellate] court and the trial court, through all subsequent stages of the proceedings."[2] Under this doctrine, the trial court, on remand, will be "bound to follow prior rulings of the appellate court *as long as the facts on which such decision is based continue to be the facts of the case.*"[3] In fact, the appellate court, too, upon a subsequent appeal, will be bound by its prior rulings on those issues actually raised and on which the facts have remained the same,

---

[2] Fla. Dep't of Transp. v. Juliano, 801 So. 2d 101, 105 (Fla. 2001) (emphasis added).
[3] Id. at 106 (emphasis added).

except that the appellate court need not adhere to a prior, incorrect ruling where to do so would constitute a "manifest injustice."[4]

12.   Petitioner Haberman's narcistic assertiveness is a gross misuse of the judicial system to stalk Respondent and it must stop. Petitioner's repeated attempts to incarcerate Respondent must stop. Petitioner's false allegations must stop. Petitioner's numerous and unrelenting false police reports must stop. Petitioner's frivolous litigation must stop. Petitioner's harassment and intimidation must stop. Petitioner's lies, perjury and contempt of court must stop.

13.   To honor and achieve this goal, the courts have fashioned several related doctrines that, taken together, hold "that at some point arguable questions of right and wrong for practical purposes simply cannot be argued any more."[5] These doctrines reflect a balancing of our legal system's fallibility with the benefit of finality it offers litigants.[6]

## CONCLUSION

In conclusion, it is worth observing that Fla. R. Civ. P. 1.110(d) lists *res judicata* and estoppel as affirmative defenses.

Respondent ascertains the applicable doctrine has been sufficiently identified to the court and Petitioner's 2019 Amended Request for have Specific Content Be Removed to Comply with [2006] Court Order and Issuance of Order for Contempt Charges is barred.

---

[4] Strazzulla v. Hendrick, 177 So. 2d 1, 3-4 (Fla. 1965).
[5] Restatement (Second) of Judgments, Introduction at 1 (1982).
[6] See Kippy Corp. v. Colburn, 177 So. 2d 193, 196 (Fla. 1965).

Allowing Petitioner Haberman to respond to the jurisdiction of the 2018 Motion to Dissolve after ruling by Bonner on May 13, 2018, is prejudicial to Respondent and contrary to law.

Petitioner Haberman's frivolous litigation has caused severe emotional distress to Respondent; has caused damages to defend this case; Respondent seeks monetary compensation for the economic loss in the amount of $4,000 per month for four (4) months from April 24, 2019 for a total economic loss of $16,000; and sanctions against Petitioner for repeatedly filing frivolous litigation and false charges.

WHEREFORE, Respondent is entitled to judgment as a matter of law and the Court should enter Judgment on the Pleadings in Respondent's favor dismissing all of the claims against her set forth in the Petitioner Haberman's 2019 Amended Request with prejudice and granting such other and additional relief as the Court deems just and proper.

Dated this 24th day of August, 2019.       */s/ Kristen Rhoad*
                                            Kristen Rhoad, Respondent *Pro Se*

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing Respondent's Motion for

Judgment on Pleadings has been sent to all parties of record in accordance with the Florida Rules

of Civil Procedure by and through the Florida e-file system on this 24th day of August, 2019.

Phil Haberman
Self - Represented Litigant
Email Addresses:
FUNNYMAN2LAUGH@AOL.COM
North Port, FL, 34286
Phone #: 818-720-8762

*/s/ Kristen Dougherty*

PHIL HABERMAN
PLAINTIFF

IN THE COUNTY CLERK IN AND FOR
SARASOTA COUNTY FLORIDA

VS

CASE NO: 2006DR7754SC

KRISTEN RHOAD
DEFENDANT

## PLAINTIFFS REQUEST TO HAVE SPECIFIC CONTENT
## REMOVED TO COMPLY WITH COURT ORDER

On 7 September 2006, a permanent injunction was issued against Defendant for stalking and harassing Plaintiff by internet. Defendant failed to comply with the directives ordered by the court, and a warrant was issued for her arrest on 25 Jan 2007. In attempting to have the Defendant's slanderous statements removed, Plaintiff was told that unless the court order instructed specific web based slander sites to remove said content, the content would remain intact. Plaintiff is requesting that the order be modified, or a separate order issued, to specifically include the following web based slander sites to remove content that is in violation of the order.

1. LiveJournal.com, which is where Defendant's current slander blog is located
2. Lovefraud.com
3. POW Network.org
4. FightBigamy.com
5. ProfessionalSoldiers.com
6. Greensickle.com
7. DallasObserver.com, which is the first contact Defendant made
8. ReviewJoural.com

Defendant is now using Plaintiffs professional DJ name in slander blogs in an attempt to ruin Plaintiff's reputation as a well known DJ. Defendant has ceased to call Plaintiff by his formal name, thus bypassing the Court order to not mention Plaintiff by name. Defendant is now using Plaintiffs professional name in an effort to bypass the order, and linking all blogs to Plaitiffs professional webpage.

34 Violations were filed with the State Attorney's office on Defendant for violations. Each was referred back to Civil Division. There have been hundreds of violations to date, and Defendant is still openly able to stalk and harass Plaintiff and Plaintiffs friends. Plaintiff is also asking The Court to allow the warrant issued against Defendant to be listed as Extraditable. Defendant has openly stated to law enforcement, and on blog, that she will never stop stalking and harassing Plaintiff, and has openly solicited for others to

EXHIBIT "1"



assist her in her stalking. Defendant has also openly bragged in blogs that she has people spying on Plaintiff for her, and that she knows everything Plaintiff is doing. Defendant contacted Plaintiffs Commanding Officer, thus violating said order directly by contacting Plaintiffs employer. Defendant is also contacting animal rescue organizations with which Plaintiff works with. (See Enclosures)  Defendant additionally has posted Plaintiffs private cellular number on her blog, which puts Plaintiff's safety at serious risk.

If a hearing is required, Plaintiff requests that Defendant be compelled to return to Florida even if escort is required from Defendant's home state of Arizona.

Phil Haberman
Pro Se

**IN THE CIRCUIT COURT OF THE TWELFTH JUDICIAL CIRCUIT**
**IN AND FOR SARASOTA, COUNTY, FLORIDA**
**(Family Division)**

**PHIL HABERMAN,**
       **Petitioner,**

**and**                           **Case No.  2006 DR 7754 SC**

**KRISTEN RHOAD,**
       **Respondent.**

_____/

## ORDER ON AFFIDAVIT OF VIOLATION OF INJUNCTION

THIS CAUSE came before the court upon the State Attorney Intake

Determination Report for Violation of Injunction and the court finds:

_____ .  A hearing will set on the Violation of Injunction.

_____   No further action will be taken by the court.

**DONE AND ORDERED THIS 17ᵗʰ day of November, 2008.**

                             **ROBERT B. BENNETT, CIRCUIT JUDGE**

cc:  file

FILED FOR RECORD
VENICE BRANCH

2008 NOV 18  AM 9: 07

KAREN E. RUSHING
CLERK OF CIRCUIT COURT
SARASOTA COUNTY, FL

EXHIBIT "2"



Case: 2006 DR 087754 SC

## STATE ATTORNEY INTAKE DETERMINATION REPORT FOR
## VIOLATION OF INJUNCTION

Defendant/Respondent: _Kristen Rhoad_

Victim/PetitionerL: _Phil Haberman_

Clerk Case No. _2006 DR 775480_   SAO Case No.: _._

Law Enforcement Agency: _____   Agency Case No.: _____

Date of Incident: _____   Date of Affidavit: _____

Assistant State Attorney: _____   Date of P.F.I.: _____

Arrest Date: _____   Capias Referral Date: _____

Date Rec'd from Clerk: _____   20 day Law Enforcement Deadline: _____

30 day SAO deadline: _____   Date IDR Sent to Clerk: _____

48 hr. Initial Report: ____ Follow-Up Report: ____ Final Report: ___ w/in 30 days ___ yes ___ no

### ACTION TAKEN BY STATE ATTORNEY

1. _____ The facts alleged in the affidavit may constitute a criminal violation of F.S. 741.31 (Criminal Violation of Domestic Violence Injunction); or the substantive criminal offense(s) of _____. Therefore, the State Attorney's Office requests the circuit not to utilize the contempt powers of the court based upon the elements of this crime at this time due to double jeopardy concerns because:

   _____ An information has been filed (copy attached)

   _____ The case remains under investigation by ___ State Attorney; ___ Law Enforcement

   _____ Other action pending, to wit: _____

2. _X_ No criminal information will be filed by the State Attorney's Office. Therefore, the circuit court should determine whether or not it should issue an Order to Show Cause for either civil or indirect criminal contempt of court based upon this affidavit of violation of the court's order for protection.

### COMMENTS

See attached memorandum of decline, if applicable. _The State cannot prove this charge beyond a reasonable doubt due to the facts_

Submitted by Assistant State Attorney: _____

Date: _11/6/08_

EXHIBIT "3"

IN THE COUNTY/CIRCUIT COURT IN AND FOR SARASOTA COUNTY, FLORIDA
☑ COURT APPEARANCE RECORD
☐ JUDGMENT AND SENTENCE

**STATE OF FLORIDA**                    CASE #:              OBTS #:

vs   *Rhoad, Kristen*                  *2015CF6022*

JUDGE: *Roberts, Charles*             TYPE OF PROCEEDING: *3/13/19 - VOP*
                                      DATE:

APPEARANCE: ☐ PRESENT  ☑ PRESENT WITH ATTORNEY  ☐ NOT PRESENT-WRITTEN NOT GUILTY PLEA  ☐ FAILED TO APPEAR

COURT ORDERED: ☐ BW  ☐ CAPIAS  ☐ BOND SET _____  ☐ NO MOD  ☐ BOND FORFEITED  ☐ SUMMONS  ☐ D-6

COURT APPOINTED:  ☐ P.D. ☐ SPECIAL P.D. ☐ INTERPRETER ☐ DEFENDANT WAIVED RIGHT TO COUNSEL ☐ JURY SWORN _____

| CHARGES OF: | | BOND | TYPE | PLEA | | | | | ADJUDICATION | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| CT | SQ | | | G | NG | NOLO | AB | | G | NG | W/H | N.P. | D | DSM | |
| *Aggra Stalking - VOP - Jail* | | | | | | | | | | | | | | | |

**SENTENCE**   STATE ATTORNEY: *A. Attia*        DEFENSE ATTORNEY: *G. Proffit*

| CT | SQ | FINE | C.J. | DOC | YEARS | MONTHS | DAYS | C.T.S. | SUSP. JAIL | ☐ CONC W/ | ☐ CONSEC TO | ☐ COTERM W/ |
|---|---|---|---|---|---|---|---|---|---|---|---|---|

☑ JAIL SENTENCE CONDITIONS: *Release on 3/14/19 at 8am*
☐ OFFENDER WORK PROGRAM

**PROBATION / COMMUNITY CONTROL**

| CT | SQ | CO | DOC | YEARS | MONTHS | DAYS | CONCURRENT W | CONSECUTIVE TO | RESTITUTION |
|---|---|---|---|---|---|---|---|---|---|

☐ COURT COSTS ATTACHED  ☐ PAYMENT PLAN  ☐ JUDGMENT        ☐ DUE OVER PROBATION  ☐ WAIVED
☐ EARLY TERMINATION                    ☐ REVOKE ☐ TERMINATE ☐ ALL ORIGINAL CONDITIONS REMAIN

**COURT COMMENTS:** *VOP hearing - no willful violation found*

*Report to probation Immediately upon release*
*on 3/14/19 by 12pm*

**CASE PLACED ON:** ☐ NON-FILED STATUS        MOTION(S) ☐ HEARD ☐ CANCELLED ☐ UNDER ADVISEMENT
**SPECIAL CONDITIONS:  BEGIN TERMS W/N _____        COMPLETE TERMS W/N _____**

☐ ATTEND & COMPLETE DUI SCHOOL ☐ RECOMMENDED TREATMENT (DUI) ☐ RANDOM URINALYSIS ☐ NO CONSUMPTION OF ILLEGAL DRUGS OR ALCOHOL
☐ ATTEND & COMPLETE VICTIM IMPACT PANEL            ☐ B.P.O. LICENSE -MAY APPLY ☐ DRIVER'S LICENSE REC. BY CLERK
☐ IMPOUND VEHICLE ☐ 10 ☐ 30 ☐ 90 DAYS ☐ WAIVED _____  ☐ DRIVER'S LICENSE SUSP / REV _____
☐ IGNITION INTERLOCK DEVICE                          ☐ FINGERPRINTS TAKEN ☐ DNA
☐ PUBLIC SERVICE _____ HOURS ☐ MAY BUY HOURS AT _____ ☐ MAY CONVERT COURT COSTS/TO PUBLIC SERVICE AT _____
☑ NO CONTACT W/VICTIM(S) INDIRECT/DIRECT ☐ NO HARMFUL CONTACT *condition remains in place*
☐ NO RETURN TO PROPERTY
☐ DRUG ☐ ALCOHOL ☐ MENTAL HEALTH EVALUATION ☐ RECOMMENDED TREATMENT AS ORDERED
☐ SUCCESSFULLY COMPLETE TREATMENT / AFTERCARE AS ORDERED ON FIRST ATTEMPT      ☐ DEFER TO ☐ PTI ☐ TPTI ☐ CBIP ☐ DVIP
**DONE AND ORDERED IN OPEN COURT SARASOTA COUNTY, FLORIDA**
THIS _____ DAY OF _____ , 20 ___        JUDGE _____

**NEXT COURT APPEARANCE** ☐ SARASOTA ☐ VENICE ☐ STATE'S CONTINUANCE ☐ DEFENSE CONTINUANCE ☐ COURT CONTINUANCE

| ☐ ARRG _____ AT ___ /M | ☐ PTC _____ AT ___ /M | ☐ C.I.P. _____ AT ___ /M |
|---|---|---|
| ☐ VOP _____ AT ___ /M | ☐ CM ☐ DS _____ AT ___ /M | ☐ PLEA ON _____ AT ___ /M |
| ☐ HEARING / D.U.I. _____ AT ___ /M | ☐ NJT ☐ JT _____ AT ___ /M | ☐ H.C.C. _____ AT ___ /M |

CERTIFICATE OF SERVICE
I HEREBY CERTIFY THAT THE FOREGOING HAS BEEN ☐ HAND-DELIVERED / ☐ MAILED TO THE DEFENDANT _____ THIS
_____ DAY OF _____, 20 ___  CLERK OF THE CIRCUIT COURT, SARASOTA COUNTY, FLORIDA
BY: *Jennifer Yackley*                              DEPUTY CLERK

REV JAN 2018

*EXHIBIT "4"*

Filing # 94722364 E-Filed 08/24/2019 03:48:54 PM

PHIL HABERMAN                    IN THE COUNTY CLERK IN AND FOR
PETITIONER                          SARASOTA COUNTY FLORIDA

VS                          CASE NO:  2006DR7754SC

KRISTEN RHOAD
RESPONDENT

### PETITIONER'S REQUEST FOR EXTENSION OF TIME
### TO FILE MEMO BRIEF

Petitioner comes forward to request additional time to file the memo brief that was requested at the previous hearing. The reason for the request is as follows:

1. Petitioner cannot meet with legal until 28 August 2019 for assistance in the Court's request to provide a memo draft. This is beyond the ten days the Court asked for Plaintiff to submit the brief for review.
2. Due to the specific request of the court, Petitioner has been referred to a family law attorney with appellate experience to aid in the drafting of the brief.
3. Despite numerous attempts it has been impossible for Plaintiff to get an earlier appointment since there have not been any cancellations that would allow Plaintiff to be seen sooner.
4. Based on the Court's request to have a brief on the respective jurisdiction of both the continued violations and enforcement of the existing order, Plaintiff requested legal assistance to ensure a proper filing of said brief.

With the above stated reasons as grounds for Plaintiff's request, Plaintiff does request an extension for a reasonable amount of time to allow proper filing of the memo brief in this matter.

Submitted
Phil Haberman
Pro Se

Filing # 94795860 E-Filed 08/26/2019 05:52:12 PM

**IN THE CIRCUIT COURT OF THE TWELFTH JUDICIAL CIRCUIT
IN AND FOR SARASOTA COUNTY, FLORIDA**

PHIL HABERMAN,                                    CASE NO. 06 DR-7754 (SC)

        Petitioner,                              2DCA-0407

v.

KRISTEN RHOAD,

        Respondent.
_____/

**RESPONDENT'S OPPOSITION TO PETITIONER'S REQUEST FOR
EXTENSION OF TIME TO FILE MEMO BRIEF**

      COMES NOW, Respondent, Kristen Dougherty, in Proper Person and hereby files her Opposition to Petitioner's Request for Extension to File Memo Brief as follows:

      1.     On April 30, 2019, Petitioner brought false allegations against Respondent in his 2019 Request to Have Specific Content Removed to Comply with Court Order and Request for Issuance of Order of Contempt of Court. Petitioner failed to provide any evidence.

      2.     On July 24, 2019, Petitioner filed his Request for an Expedited Hearing, requesting the earliest possible date.

      3.     On August 15, 2019, this Court ordered Petitioner to file legal authority on the matter and the brief was due on August 25, 2019.

      4.     On August 24, 2019, Petitioner Haberman filed a Request for Extension of Time to comply with the August 24, 2019 order. The Request suggests a date after August 28, 2019 which will then turn into a further extension due to the holiday and additional time for the unknown legal counsel to prepare.

5.    Petitioner's excuse for not being able to meet with legal counsel to comply with the deadline fails to state a good cause, lacks due diligence, and is untimely. Petitioner had five (5) months to prepare since filing. A party desiring an extension of time, a continuance, or a stay, must file a motion, in proper format, that:

        a.   states good cause,

        b.   indicates that the movant has contacted opposing counsel, or the unrepresented party, and

        c.   states whether the opposing party consents, does not oppose, or objects to the motion.

6.    If no order is issued granting an extension, continuance, or stay prior to a deadline or scheduled date, the party must comply with the established deadline.

After a first extension, any additional requests for time should be addressed by balancing the need for expedition against the deference one ordinarily should give to an opponent's schedule of professional and personal engagements, the reasonableness of the length of extension requested, the opponent's willingness to grant reciprocal extensions, the time actually needed for the task, and whether it is likely that a court would grant the extension if asked to do so.

7.    Petitioner's request for an additional extension to file his legal authority is prejudicial to Respondent as Petitioner has already claimed false allegations of this case into other cases (which he has requested multiple extensions to respond) and appears to be waiting to build this case based upon other continuances with subsequent litigation.

8.    Petitioner's Request seeks to preclude Respondent's substantive rights, and is merely to prolong this litigation while [Petitioner waits to create this case] the false allegations are damaging to Respondent's reputation as they seek contempt

Respondent's Objection to Extension      2

charges and the arrest of Respondent. Further, Petitioner's Request for Extension misrepresents a conflict to obtain an advantage and to delay.

WHEREFORE, based upon the foregoing, Respondent respectfully requests Petitioner's 2019 Request to Have Specific Content Removed to Comply with Court Order and Request for Issuance of Order of Contempt of Court must be denied with prejudice.

Dated this 26th day of August, 2019.        */s/ Kristen Rhoad*
                                            Respondent Pro Se

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing Respondent's Opposition to Extension of Time to File Memo Brief has been sent to all parties of record in accordance with the Florida Rules of Civil Procedure by and through the Florida e-file system on this 26th day of August, 2019.

Phil Haberman
Self - Represented Litigant
Email Addresses:
FUNNYMAN2LAUGH@AOL.COM
North Port, FL, 34286
Phone #: 818-720-8762

                    */s/ Kristen Dougherty*

Respondent's Objection to Extension        3

IN THE CIRCUIT COURT OF THE TWELFTH JUDICIAL CIRCUIT IN AND FOR SARASOTA COUNTY, FLORIDA

PHIL HABERMAN,                     CASE NO. 06 DR-7754 (SC)

        Petitioner,

v.

KRISTEN RHOAD,

        Respondent.

_____/

## RESPONDENT'S PRE-HEARING EVIDENTIARY DISCLOSURE AND OBJECTIONS

COMES NOW, Respondent, KRISTEN RHOAD, in Proper Person and hereby files her Pre-Hearing Evidentiary Disclosure and Objections and incorporates the documents attached herein.

## PROCEDURAL HISTORY

1.    An Amended Annulment Decree was entered March 6, 2006 in Respondent's favor against Petitioner for fraud and falsifying information to the Eighth Judicial District Court in Las Vegas, Nevada. **Exhibit 20.**

2.    On August 23, 2006, Petitioner filed a Temporary Injunction for domestic violence after being denied eleven (11) times.

3.    On September 2, 2006, after a non-evidentiary hearing, Judge Robert Bennett entered a permanent and final injunction against Respondent under domestic violence requiring the removal of Respondent's blog. The injunction is only enforceable in the State of Florida, and Respondent has never resided, nor visited Florida and did not waive her rights to jurisdiction at the hearing giving rise to jurisdictional issues.

RESPONDENT'S PRE-HEARING
EVIDENTIARY DISCLOSURE
AND OBJECTIONS        1

4.      On or about January 24, 2008, Petitioner filed an *ex parte* motion to amend the injunction to expand the domestic violence injunction to include eight (8) internet sites he wished to have removed. Petitioner failed to properly serve Respondent and her attorney. See **Exhibit 35.**

5.      Petitioner failed to properly notice Respondent or her counsel regarding the 2008 amended injunction hearing and falsely testified before the Court to ensure the contents of the amended injunction were ordered without proper evidentiary hearings. All allegations by Petitioner were unfounded, not verified and not within the court's jurisdiction to enforce.

6.      On January 29, 2008, Judge Bennett filed a vague, ambiguous and non-existent order granting *something* in Petitioner's Amended Injunction. This order is the subject of Petitioner's current and ongoing pursuit to have Respondent arrested and incarcerated. **Exhibit 29.**

7.      On November 18, 2008, Judge Bennett issued an order denying any further action to be taken on Petitioner's *ex parte* alleged violation of the injunction order. **Exhibit 32.**

8.      The docket reflects Respondent filed numerous motions to dismiss, modify or dissolve the injunction which went unheard violating Respondent's due process rights.

9.      On or about October 26, 2013, Petitioner filed false police reports, *ex parte* filings with the court. After a year-long investigation wherein the North Port Police Department found evidence "nebulace at best" and "could not find evidence to link

Respondent" (**Exhibit 33**). Despite no evidence, a Capias warrant was issued without any hearings or notice to Respondent because of Petitioner's constant daily barrage to NPPD.

10.    On June 6, 2018, Respondent was arrested by the US Marshal's office and extradited without an extradition warrant using the Florida State Capias warrant dated April 14, 2015, for a violation of Fla. Stat 784.048(4).

11.    Subsequent to the Respondent's arrest, the Office of the State Attorney filed one count Information charging the Respondent with violation of Fla. Stat. 784.048(4) alleging cyberstalking.

12.    On or about June 12, 2018, Petitioner and his wife, Kelly Scovill flew from Sarasota Florida and appeared at Respondent's extradition hearing in Las Vegas Nevada to "ensure Respondent was extradited to be prosecuted in Florida". Both Scovill and Petitioner's own online conduct violates the injunctions with their online slander, defamation and harassment of Respondent. **Exhibits 22 & 23.**

13.    Court records show the SAO failed to prosecute within the statute of limitations and the matter was going to be dismissed, however, on the 175th day of Respondent's incarceration, the SAO decided to file a second charge for Respondent sharing the This Ain't Hell story ("TAH") story (**Exhibit 15**) requiring her to remain incarcerated another 175 days, constituting double jeopardy and due process violations. Due to severe spinal and nerve damage sustained during the extradition, Respondent plead *nolo contender* to a bundle deal on November 28, 2018 to enable her to be released, to investigate and file an appeal.

14.    Respondent claims a *Brady* violation against the SAO and anticipates further litigation.

15.     On or about November 27, 2018, Petitioner secretly took courtroom photos of Respondent during the criminal procedure constituting a violation of Judicial Procedures for failure to obtain permission from the Court and posted it to his Facebook page with slanderous comments inciting hatred against Respondent. **Exhibit 22.**

16.     On December 20, 2018, Petitioner personally went to the FLDOC to file false VOP charges against Respondent which resulted in a warrant for Respondent's arrest issued on January 25, 2019, based solely upon Petitioner's false statements.

17.     On February 2, 2019, Respondent purchased plane fare and submitted herself to the Sarasota Sheriff's Department and was incarcerated for thirty-three (33) days before being found *__innocent__* by Judge Roberts on March 13, 2019.

18.     On April 24, 2019, Petitioner filed this current Request for Specific Content to be Removed and Contempt alleging new violations, seeking a "review" reversal of Judge Roberts' decision.

19.     On May 16, 2019, Respondent filed claims against Petitioner and Kelly Scovill for malicious prosecution and false arrest in Case 2019 CA 002674 NC.

20.     In August 2019, Petitioner contacted the State of Nevada's Confidential Address program with intent to obtain Respondent's protected address. Petitioner sent documents relating to the Florida criminal case in a malicious effort to slander and to urge CAP to eject Respondent from the program.

21.     On or about October 24, 2019, Petitioner filed false violation of probation charges against Respondent which have been investigated and decided false. This repeated action of filing false police and false probation reports clearly depict Petitioner's state of mind – to have Respondent arrested at any cost.

## ARGUMENT

I. <u>Petitioner's 2006 Domestic Violence Injunction May Not Be Directed to Prevent Defamatory Speech.</u>

22.     Petitioner's 2006 domestic violence injunction may not be directed to prevent defamatory speech.[1] Florida's Section 784.048 itself recognizes the First Amendment rights of individuals by concluding that a "course of conduct" for purposes of the statute does not include protected speech[2]. This includes speech that may be offensive or vituperative. See *Watts v. U.S.,* 394 U.S. 705, 708, 89 S.Ct. 1399, 22 L.Ed.2d 664 (1969).

23.     A temporary or final injunction directed to speech is a classic example of prior restraint on speech triggering First Amendment concerns.[3] [4]

24.     Even if Respondent commented on various websites about Petitioner's own posted online actions, Respondent's Constitutional Rights were violated and gagged.[5] The 2006 Injunction against Petitioner is invalid because Respondent's words were not found to be defamatory, or covered by any of the other First Amendment categories of restrictable speech.

25.     University of Florida law professor Lyrissa Lidsky, former associate dean of UF's law school and a First Amendment expert commented on this issue in 2006 https://www.cltampa.com/news-views/article/20719750/shutdown:

> *The problem, she explains, is that in this case, an "injunction" — or court-ordered halt of an activity or behavior — serves as a form of "prior*

---

[1] An injunction may not be directed to prevent defamatory speech. *Id.* at 487; *Chevaldina*, 133 So.3d at 1090. [P]rior restraints on speech and publication are the most serious and the least tolerable infringement on First Amendment rights. *Concerned Citizens for Judicial Fairness, Inc. v. Yacucci*, 162 So.3d 68, 73 (Fla. 4th DCA 2014) (quoting *Neb. Press Ass'n v. Stuart*, 427 U.S. 539, 559, 96 S.Ct. 2791, 49 L.Ed.2d 683 (1976)).
[2] § 784.048(1)(b), Fla. Stat. (2014)
[3] U.S.C.A. Const. Amend. 1
[4] Scott v. Blum, 191 So.3d 502 (2016)
[5] Neptune v. Lanoue, 178 So.3d 520 (2015) )

RESPONDENT'S PRE-HEARING
EVIDENTIARY DISCLOSURE
AND OBJECTIONS                              5

*restraint," in effect stopping Rhoad from continuing her writing in the future.*

*While protective orders are routine in stalking cases to prevent victims from being confronted by their harassers, those restrictions do not typically limit speech.*

*In this case, the court was not addressing whether Rhoad's statements were true or false, but that cyberstalking had occurred under the Florida statute. Normally, says Lidsky, a request that a blog "be removed from the Internet" wouldn't be granted.*

*"We don't allow an injunction against speech unless it's determined that the speech has been false or defamatory," Lidsky says.*

*"If the speech is legal, if it's truthful," says Morris of the Center for Democracy and Technology, "then I'm skeptical that it ought to be taken down."*

*The best chance Haberman would have for getting Rhoad's blog removed, Lidsky says, would be to prove it full of lies or threats of violence.*

*"If Rhoad's stories are false," she says, "Haberman has a right to sue her for defamation."*

*But, she says, taking a blog off the Web in this situation, based on anything but its accuracy or its threatening nature, would likely be a violation of the First Amendment.*

*Lidsky says blogging should not count as cyberstalking at all.*

*"It seems farfetched that blogging could be a form of domestic violence," says Lidsky. "From what I understand, the cyberstalking statute is designed for, well, stalking-like activities: 500 phone calls a day, that kind of constant harassment. But telling your story on a blog? That doesn't seem like domestic violence to me, but then again," she says with a laugh, "I'm only a First Amendment specialist."*

*While Lidsky says that blogging does count as communication, as it has a definite audience, "I don't think that's what the statute was designed to address," she says.*

*"If a blog could now be enjoined under cyberstalking, during any heated divorce, that could have a lot of implications for free speech. What's the difference between this and a memoir?"*

*Finally, the injunction is only valid throughout the state. But "[Rhoad] doesn't have the technical means to keep her blog out of Florida," says Lidsky. "In foreign countries, some bigger organizations have managed to block content from going to certain places. For her to keep her blog out of Florida, she'd have to shut down her blog everywhere."*

26.    UCLA School of Law Professor Eugene Volokh is one of the nation's most prolific writers and commentators on the First Amendment law. His areas of commentary include, but are not limited to, free speech in cyberspace, First Amendment

and harassment laws, expressive association, crime-facilitating speech, and the First Amendment records of U.S. Supreme Court justices. Volokh has published more than 75 law review articles, many of which examine First Amendment issues, and author of the First Amendment textbook *The First Amendment and Related Statutes: Problems, Cases, and Policy Arguments* (6th ed. 2016). Volokh's publishings further support Respondent's position.

27.     In 2006, Petitioner alleged Respondent's *Rhoadwarrior* blog was domestic violence. The blog made statements about Petitioner's false military endeavors as well as Petitioner's fraudulent marriage to Respondent; Petitioner's physical abuse upon Respondent; Petitioner's rape, drugging and attempt to murder Respondent by using an IV solution administered by Petitioner without a medical license. Respondent's blog further served a legitimate purpose as it exposed Petitioner's false attempts to re-enter the military though eight (8) States, his false military documents, and his various other frauds including proposing marriage to five (5) women during his marriage to Respondent.

28.     Petitioner's 2006 petition for injunction alleged fear of violence from unknown other people who posted online - not by Respondent, and requested an injunction prohibiting Respondent from communicating with him or posting anything about him on any websites, as well as ordering Respondent to remove any material posted regarding Petitioner from her blog and any other website.

29.     Respondent's *Rhoadwarrior* Blog was forcefully removed by this Court's Order. Judge Bennett granted the injunction based on the blog posting, not domestic violence. But even if the blog posting served no legitimate purpose (as alleged by Petitioner) and would cause substantial emotional distress to a reasonable person, this

would only be considered slander, not stalking. In *Leach v. Kersey*,[6] the Court reversed

the final judgment of injunction for protection against stalking.

      30.     Petitioner's ongoing and repeated Complaint seeks entire removal of the

following websites, not just the stories written about him.

    a.   **This Ain't Hell**
        https://valorguardians.com/blog/?p=74625

    b.   **Lovefraud**
        https://lovefraud.com/true-lovefraud-stories/phil-haberman/

    c.   **POW Network**
        https://www.fakewarriors.org/index.htm

    d.   **FightBigamy**
        https://fightbigamy.typepad.com/my_weblog/2005/11/_phil_haberman_.html?cid=6a00d8345
        3f24169e200d83534697869e2#comment-6a00d83453f24169e200d83534697869e2

    e.   **Professional Soldiers**
        http://www.professionalsoldiers.com/forums/showthread.php?t=15168&page=7

    f.   **Greensickle**

    g.   **Dallas Observer**
        https://www.dallasobserver.com/news/gi-jerk-6406772

    h.   **Review Journal**
        https://www.google.com/search?q=las+vegas+review+journal+phil+haberman&sxsrf=ACYB
        GNTmAt9TjPSVTcSduuY8XI7vWcXmaw:1572812920288&source=lnms&tbm=isch&sa=X
        &ved=0ahUKEwjPsqXb8M7lAhURsJ4KHQZyA6MQ_AUIEygC&biw=1536&bih=722#img
        rc=hot9Q6if1WyHOM:

    i.   **VeriSeal**
        http://ww1.veriseal.org/

    j.   **Military Phonies**
        https://militaryphony.com/2013/10/11/phil-jason-haberman-aka-dj-drager-usmc-recon-us-
        army-special-forces-scam-artist-poser-blog-of-shame/

    k.   **One Drive**

    l.   **Reuters**
        https://www.reuters.com/article/us-storm-harvey-rescuer/taking-charge-in-u-s-flood-zone-a-
        rescuer-inflates-his-record-idUSKCN1BL0TV

---

[6] 162 So.3d 1104 (2015)

m. Rip Off Report
https://www.ripoffreport.com/reports/phil-haberman-aka-phil-drager-aka-dj-drager-etc/sarasota-florida/phil-haberman-aka-phil-drager-aka-dj-drager-etc-phil-jason-haberman-phil-drager-dj-d-1435921

Currently, there are approximately 270 websites that carry the Haberman saga. Respondent is not the author of any of these stories, and Petitioner cannot remove or control the internet just because he doesn't approve of the way he is portrayed in stories he participated in. Petitioner's claims that his reputation has been ruined due to "slander" sites is unfounded and Petitioner's own actions have caused his own reputation demise. Petitioner should attempt litigation against these website owners for slander, which he cannot prove, instead, Petitioner sought revenge upon Respondent and filed his 2006 and 2008 domestic violence injunctions.

II.    The Injunctions Fail to Meet the Standards of Domestic Violence Pursuant to Florida Statute § 741.30 or §741.28

31.    Court records show Petitioner filed his Annulment on July 28, 2004 after Respondent filed her Complaint for Divorce on February 20, 2004 (which was never properly adjudicated). Petitioner fraudulently entered an Annulment order on December 2, 2005 which did not accurately reflect the Court's decision. The Amended Annulment Decree entered March 2006 was granted to Respondent for Petitioner's fraud (**Exhibit 21**) which voids any relationship in *ab vito* of the parties.

32.    The August 23, 2006 allegations contained in the Petition for Injunction do not comply with Fla. Stat. §741.30.

33.    No domestic violence incidents occurred pursuant to Fla. Stat. §741.28 within six (6) months of petition for injunction, as the parties ceased residing together on or about January 10, 2004.

34.     Respondent was never a resident of Florida and therefore the Court lacked jurisdiction to allow the 2006 petition for injunction to be granted.

35.     The 2006 order requiring Respondent to submit to mental health exam violated Respondent's constitutional rights. Respondent contends the trial court was without authority in granting petition for injunction for protection against domestic to order Respondent to undergo a psychological evaluation. [7]

III.    The Injunction Should Be Reversed as A Matter of Law Because Petitioner Obtained the Injunction Under Perjury and Denied 11 Times.

36.     Prior to August 23, 2006 Petition for Domestic Violence Injunction, Petitioner filed numerous petitions which were ***denied 11 times*** by this Court and was refiled in the Venice Courthouse. Petitioner failed to follow procedures to obtain a domestic violence injunction once the injunction was denied.

37.     Contained within the Petition are false statements that Respondent has committed other acts or threats of domestic abuse; owns, has, or is known to have weapons; has a drug problem; has a history of mental health problems. Respondent contends it is actually the Petitioner who has mental issues (which the Army will support **Exhibit 26A**) and has committed prior acts of violence and stalking **Exhibit 18**, as written in her blog in 2005 exposing Petitioner's dirty little secrets.

38.     The 2006 Petition failed to allege any incidents of repeat violence, sexual violence, or dating violence and failed include the specific facts and circumstances that form the basis upon which relief was sought. Petitioner committed perjury directly before the court to have his 12th petition application granted and has never stopped lying.

---

[7] West's F.S.A. § 741.30(6)(a)

RESPONDENT'S PRE-HEARING
EVIDENTIARY DISCLOSURE
AND OBJECTIONS                          10

IV.     <u>Respondent's Behavior Does Not Amount to Domestic Violence or Cyberstalking
Pursuant to Florida Statute §784.048(D)(1).</u>

39.     The Court cannot award an indefinite injunction against Respondent where Respondent's behavior does not amount to the behavior necessary to issue an injunction against domestic violence or stalking as required by Florida Statute §784.048. The online news stories spoken to a journalist for publication, hardly amount to an actual and credible threat of violence to Petitioner.

40.     The 2006 order in this case is vague and unyielding stating:

> "Respondent shall remove or cause to be removed all blogs, e-mail
> or other web-based communications to Petitioner or third-parties
> that refer to Petitioner, and which are posted, or caused to be
> posted by Respondent."

Judge Bennett offered no guidance, saying "I don't know how you're going to do it", and "don't think I won't sentence you to 6 months in jail".

41.     Petitioner alleged domestic violence disguised as a means to remove online published stories. Petitioner did not allege cyberstalking in his 2006 injunction. Petitioner's domestic violence injunction has morphed into a cyberstalking injunction against protected speech – just because Petitioner lied and said he has an order which he does not.

V.     <u>Legitimate Purpose</u>

42.     The incidents between Petitioner and Respondent written in the blog and other online content serve a legitimate purpose. *Touhey v. Seda,* 113 So. 3d 1203 (Fla. 2d DCA 2014); see also, *Ravitch v. Whelan*, 851 So.2d 271, 272-273 (Fla. 5th DCA 2003); *Alter v. Paquette*, 98 So.3d 218 (Fla. 2d DCA 2012); *Goudy v. Duquette,* 112 So.3d 716 (Fla. 2d DCA 2013).

43.    The blog made statements about Petitioner's false military endeavors as well as Petitioner's fraudulent marriage to Respondent; Petitioner's physical abuse upon Respondent; Petitioner's rape, drugging and attempt to murder Respondent by using an IV solution administered without a medical license by Petitioner. Respondent's blog further served a legitimate purpose as it exposed Petitioner's false attempts to re-enter the military though eight (8) States, his false documents created, and his various other nefarious frauds including proposing marriage to five (5) women during his marriage to Petitioner.

44.    At the 2006 Injunction hearing, the trial court refused Respondent's exhibits, refused to allow a continuance so Respondent could retain counsel, refused Respondent's jurisdiction of Nevada, and failed to recognize the lack of credibility of Petitioner's accusations. With objections by Respondent of all the exhibits as hearsay and unauthenticated exhibits, the court proceeded and entered the exhibits, further violating due process rights of Respondent.

45.    There is no clear statement or ruling on any one specific communication meeting all the elements of domestic violence or cyberstalking throughout the entire case.

46.    The 2006 and 2008 Injunctions should be reversed because Petitioner cannot establish that domestic violence or stalking occurred by competent, substantial evidence that the speech in any of the proffered blog exhibits was directed *to* Petitioner AND was void of a legitimate purpose AND under a reasonable person standard substantial emotional distress resulted.

47.    The remedy does not fit the allegations. Since none of this enjoined activity occurred, the vagueness of the courts order reaches heights beyond the courts authority to enjoin all speech. *Scott v. Blum*, Fl No. 2D15–3412.

> "[W]here comments are made on an electronic medium to be read by others, they cannot be said to be directed to a particular person."[8].

In *Horowitz v. Horowitz*, 160 So.3d 530, 531 (Fla. 2d DCA 2015) the court stated:

> Mr. Horowitz's Facebook posts do not meet the statutory definition of cyberstalking for two reasons. First, the posts were not "directed at a specific person." § 784.048(1)(d). The testimony showed that Mr. Horowitz posted the information to his own Facebook page. Screenshots of the posts admitted into evidence confirm that they were posted to Mr. Horowitz's page and that Mrs. Horowitz was not "tagged" or mentioned, nor were the posts directed to her in any obvious way.

Likewise, emails or posts do not meet the statutory definition of cyberstalking. The emails were not "addressed" to Mr. Blum, and nothing indicates that Mr. Blum was an intended recipient. Cf. *Branson v. Rodriguez–Linares*, 143 So.3d 1070, 1071 (Fla. 2d DCA 2014); *Bacchus v. Bacchus*, 108 So.3d 712, 715 (Fla. 5th DCA 2013) ("Even harassment of the wife through third parties would be insufficient to warrant the imposition or extension of an injunction.").

VI.    The 2006 and 2008 Injunction Orders Are Constitutionally Infirm As The Orders Are Vague and Ambiguous and Are Thus Subject To Void For Vagueness Challenge

48.    Under Florida law, when reasonably possible and consistent with constitutional rights, all doubts regarding an order should be resolved in favor of its

---

[8] David, 41 Fla. L. Weekly at D132 (citing Chevaldina v. R.K./FL Mgmt., Inc., 133 So.3d 1086, 1091–92 (Fla. 3d DCA 2014, Thoma v. O'Neal, 180 So.3d 1157, 1160 (Fla. 4th DCA 2015))

validity. *State v. Wershow*, 343 So.2d 605, 607 (Fla. 1977). The Florida Supreme Court has also held, however, that when there is doubt about an order in the context of a vagueness challenge, the result should be resolved in "favor of the citizen and against the State." *State v. Wershow*, at 608; *Brown v. State*, 629 So.2d 841 (Fla. 1994), (Where sufficient doubt about a statute exists, such doubt must be resolved in favor of the citizen and against the State).

49.      Petitioner's own witness Detective James Keller of North Port Police Department stated under oath on October 31, 2019's hearing that "there have not been any violations since Judge Roberts' March 13, 2019 order". However, Petitioner still maliciously pursues contempt charges against Respondent.

## OBJECTIONS

1.      Pursuant to U.S.C.A. V and XIV, Article I, Section 9 of the Florida Constitution, due process concerns are implicated where the 2006 and 2008 orders failed to provide adequate notice of the conduct it prohibits and under those circumstances is void for vagueness.

2.      Respondent objects the entry of the 2006 Domestic Violence Injunction and 2008 Amended Injunction and, alternatively, the scope of the injunctions under the First Amendment to the United States Constitution. This Court's evidentiary review of the injunction is to determine whether there was competent, substantial evidence to support each incident of domestic violence and stalking underlying the injunction. See *Touhey v. Seda*, 133 So. 3d 1203, 1204 (Fla. 2d DCA 2014). The legal question remains regarding the constitutionality of the injunctions' scope under the First Amendment. See *Operation*

*Rescue v. Women's Health Ctr., Inc.*, 626 So. 2d 664, 670 (Fla. 1993), aff'd in part, rev'd in part, *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753 (1994).

3.      Respondent respectfully moves this Honorable Court pursuant to Fla. R. Crim. Proc. 3.190, U.S.C.A. V and XIV, and Florida Constitution Article 1, Section 9, to dismiss the 2006 and 2008 injunction orders as void for vagueness because they fail to provide adequate notice of the conduct it prohibits and are unconstitutional.

4.      Further, Respondent avers that the 2006 and 2008 Orders are constitutionally infirm as overbroad as they criminalizes conduct that is otherwise innocent in nature.

5.      Respondent also asserts that the orders as written, encourages arbitrary discriminatory and erratic enforcement and is thus also constitutionally infirm in this basis.

6.       Respondent avers that the 2006 and 2008 injunction orders are constitutionally infirm in that they are impermissibly vague and do not provide a person of normal intelligence notice of what the order itself prohibits.

7.      Further, the Respondent represents that any order on this subject, are unconstitutionally overbroad as they potentially criminalize lawful conduct.

8.      Respondent asserts that the orders themselves are unconstitutional as they encourage arbitrary, discriminatory, and erratic enforcement of the orders by law enforcement.

9.      Respondent asserts Petitioner's own online conduct violates the injunctions. **Exhibits 22 & 23.**

10. All other grounds shall be argued *ore tenus*.

RESPONDENT'S PRE-HEARING
EVIDENTIARY DISCLOSURE
AND OBJECTIONS                                         15

## CONCLUSION

Respondent contends the 2006 Injunction, the 2008 Amended Injunction and any and all allegations contained therein are a violation of Respondents' 1st, 5th & 14th Constitutional and Due Process Rights.

This matter is currently on appeal in Case 219-0407 with the Second Appellate Court regarding the jurisdiction over Respondent who has never resided or visited Florida.

Respondent filed her 3850 Motion and withdrew her *Nolo Contendre* plea in the criminal case 18-cv-02742 and alleges a *Brady* violation by the SAO for hiding evidence that exonerates Respondent. Respondent is innocent of any criminal charges brought by Petitioner and has filed a claim against Petitioner for malicious prosecution in case 19-CA002674 NC.

This Court *must* dismiss the 2006 and 2008 Injunctions in their entirety based on: lack of jurisdiction over Respondent and the subject matter which, at the minimum this case should be brought as an independent Federal case; Petitioner's unclean hands; Petitioner's false allegations; Petitioner's *ex parte* filings; fraud and deceit and malicious intent committed by Petitioner against Respondent.

This Court *must* dismiss the 2008 Injunction order because it was blank and vague governing a VOID order. Any and all charges subsequent to that 2008 order *must* be dismissed, including any and all criminal and contempt violations which resulted in Respondent being incarcerated for a total of 208 days.

The 2006 Injunction *must* be voided as it was denied previously 11 times. The Court does not have jurisdiction to remove Respondent's 2005 blog, enforce an

involuntary mental evaluation or enforce any alleged criminal activity associated with the blog.

Under the Vagueness doctrine[9], the 2006 and 2008 Injunctions are **void for vagueness and unenforceable**. Florida courts have held that when there is doubt about an order in a vagueness challenge, the doubt should be resolved "in favor of the citizen and against the state"[10]. In the instant case, there is sufficient doubt about the orders, requiring the doubt to be resolved in favor of the Respondent and against the State. Thus, this Court *must* find both orders facially invalid under the void-for-vagueness doctrine.

Petitioner's request for contempt violates Respondent's Constitutional rights and the alleged recent online posts by Respondent which are now being alleged as a violation are outside the parameters of the complaint filed by Petitioner on April 24, 2019.

It's quite clear what is happening here. Petitioner who has a history of mental instability consisting of sociopathic, narcistic, delusional tendencies will lie, perjure himself under oath, file *ex parte* documents, blame and bring vexatious litigation against Respondent and do anything possible to incarcerate Respondent because he cannot remove websites that he doesn't agree with their portrayal of him.

WHERFORE, for the above stated reasons, Respondent has demonstrated legal and valid reasons why this Court *must* dismiss the 2006 and 2008 Injunctions.

Dated this 9th day of November, 2019.                    */s/ Kristen Rhoad*

---

[9] 1) A constitutional rule that requires criminal laws to state explicitly and definitely what conduct is punishable. Criminal laws that violate this requirement are said to be void for vagueness. Vagueness doctrine rests on the due process clauses of the Fifth and Fourteenth Amendments of the U.S. Constitution. By requiring fair notice of what is punishable and what is not, vagueness doctrine also helps prevent arbitrary enforcement of the laws.
2) Under vagueness doctrine, a statute is also void for vagueness if a legislature's delegation of authority to judges and/or administrators is so extensive that it would lead to arbitrary prosecutions.
[10] State v. Wershow, 343 So. 2d 605, 607 (Fla. 1977)

RESPONDENT'S PRE-HEARING
EVIDENTIARY DISCLOSURE
AND OBJECTIONS                               17

## RESPONDENT'S REBUTTAL AND IMPEACHMENT DOCUMENTS

| EXHIBIT | DESCRIPTION | PAGE |
|---------|-------------|------|
| 1 | Tampa Bay Creative Loafing Article | RHOAD 00001-RHOAD 00009 |
| 2 | Press of Atlantic City Article | RHOAD 00010-RHOAD 00012 |
| 3 | Reuters Article | RHOAD 00013-RHOAD 00017 |
| 4 | Email from Bob Smith with Vandenberg | RHOAD 00018-RHOAD00019 |
| 5 | Email to Jon Barocas from Kristen Dougherty | RHOAD 00020-RHOAD 00026 |
| 6 | Dallas Observer GI Jerk Article | RHOAD 00027-RHOAD 00046 |
| 7 | AR15.com Article | RHOAD 00047-RHOAD 00053 |
| 8 | The IRE Resource Center Internet search | RHOAD 00054-RHOAD 00055 |
| 9 | NARWAI Facebook Article | RHOAD 00056 -RHOAD 00059 |
| 10 | Lovefraud Articles | RHOAD 00060-RHOAD 00066 |
| 11 | Military Phonies article | RHOAD 00067-RHOAD 00089 |
| 12 | The Denver Post article | RHOAD 00090-RHOAD 00094 |
| 13 | The Quiet Professionals article | RHOAD 00095-RHOAD 00106 |
| 14 | Department of the Army letter to Phillip Drager dated May 25, 2018 | RHOAD 00107-RHOAD 00108 |
| 15 | This Ain't Hell article | RHOAD 00109-RHOAD 00123 |
| 16 | Rip Off Report | RHOAD 00124-RHOAD 00130 |
| 17 | State of Nevada Confidential Address Program | RHOAD 00131-RHOAD 00132 |
| 18 | Domestic Violence Petitioner Patricia Dore 2010 | RHOAD 0133-RHOAD 00145 |
| 19 | Internet post of Respondent's Social Security Number | RHOAD 00146-RHOAD 00148 |
| 20 | 2008 Amended Decree of Annulment and Docket | RHOAD 00149-RHOAD 00152 |
| 21 | Petitioner's post and photo of Respondent in criminal | RHOAD 00153- |

|  | court | RHOAD 00156 |
|---|---|---|
| 22 | Petitioner's online posts about Respondent | RHOAD 00157-RHOAD 00220 |
| 23 | FOIA Jon Barocas | RHOAD 00221-RHOAD 00222 |
| 24 | FOIA Phil Haberman | RHOAD 00223-RHOAD 00252 |
| 25 | Email from Jim Becker regarding mental evaluation of Petitioner | RHOAD 00253-RHOAD 00256 |
| 26 | Email from SF regarding Ft. Hood 2008 | RHOAD 00257-RHOAD 00259 |
| 27 | Phil Haberman criminal judgment, mug shot and Florida incarceration information | RHOAD 00260-RHOAD 00263 |
| 28 | SOS Colorado K9 Global Rescue history of documents | RHOAD 00264-RHOAD 00266 |
| 29 | Deposition transcripts of Phil Haberman 2018 | RHOAD 00267-RHOAD 00281 |
| 30 | 02/14/07 SAO Determination report on Violation of Injunction | RHOAD 00282-RHOAD 00283 |
| 31 | 07/07/07 Respondent's Relief from Judgment | RHOAD 00284-RHOAD 00286 |
| 32 | 01/29/08 Respondent's Reply to Request to Have Specific content removed | RHOAD 00287-RHOAD 00289 |
| 33 | 01/29/08 Order Amending Injunction (Void) 01/29/08 | RHOAD 00290-RHOAD 00291 |
| 34 | 11/6/08 SAO Determination report on Violation of Injunction | RHOAD 00292-RHOAD 00293 |
| 35 | 11/18/08 Order Denying Affidavit of Violation of Injunction | RHOAD 00294-RHOAD 00295 |
| 36 | NPPD Supplement Reports 2018 | RHOAD 00296 -RHOAD 00298 |
| 37 | 2018 Respondent's Motion to Dissolve Injunction | RHOAD 00299-RHOAD 00311 |
| 38 | Appeal Brief | RHOAD 00312-RHOAD 00326 |
| 39 | 6/11/17 Email from Jennifer Mehner re Petitioner contact | RHOAD 00327-RHOAD 00328 |
| 40 | Appellate Court Order regarding mail to Appellee | RHOAD 00329-RHOAD 00331 |
|  |  |  |
|  |  |  |
|  |  |  |

Filing # 98997788 E-Filed 11/17/2019 05:38:15 PM

**IN THE CIRCUIT COURT OF THE TWELFTH JUDICIAL CIRCUIT IN AND FOR SARASOTA COUNTY, FLORIDA**

PHIL HABERMAN,                    CASE NO. 06 DR-7754 (SC)

       Petitioner,

v.

KRISTEN RHOAD,

       Respondent.

_____/

## RESPONDENT'S EMERGENCY MOTION FOR STAY AND LACK OF JURISDICTION PENDING CURRENT APPEAL

      Kristen Rhoad, Respondent in Proper Person, files her Emergency Motion to Stay

for Lack of Jurisdiction Pending Current Appeal.

### POINTS AND AUTHORITIES LEGAL ARGUMENT

      Since this case is currently on direct appeal 2DCA19-0407 and 2DCA18-4917,

this Court is without jurisdiction to hear this matter.[1] [2]

      Respondent will likely prevail on appeal, and Respondent will suffer serious

substantial injury including the loss of her freedom, if this case is not immediately stayed.

      Petitioner's constant efforts to file false charges against Respondent to have her in

contempt and incarcerate her on a void order is paramount to the jurisdiction over a non-

resident, jurisdiction over the internet subject matter, due process violations and

Constitutional Right violations.

---

[1] The requirement that jurisdiction be established as a threshold matter 'spring[s] from the nature and limits of the judicial power of the United States' and is 'inflexible and without exception.'" *Mansfield, C. & L.M.R. Co. v. Swan*, 111 U.S. 379, 382(1884); *see also Ex parte McCardle*, 7 Wall. 506, 514 (1868) ("Without jurisdiction the court cannot proceed at all in any cause.").

[2] *Daniels v. State*, 712 So. 2d 765 (Fla. 1998); *Ortiz v. State*, 736 So. 2d 24 (Fla. 2d DCA 1999).

Motion to Stay                    1

This emergency motion to stay is imperative as Respondent's Constitutional Rights are adversely affected and the new contempt allegations on a void order will most likely cause Respondent to be incarcerated.

For this Court to continue to hear this matter without first having the Appellate court make a on ruling on the jurisdiction is an abuse of process and violation of due process of Respondent's rights.

**STATEMENT OF THE CASE**

On August 23, 2006, Petitioner applied for a domestic violence injunction claiming Respondent's blog was domestic violence.

Prior to that, Petitioner previously filed eleven petitions in Venice which were denied. The Sarasota Florida trial court entered a Temporary Injunction for Protection Against Domestic Violence the same day the twelfth Petition was filed.

On August 25, 2006, Respondent was served a Notice to Appear three (3) days before the August 28, 2006 hearing. The Court refused a continuation to allow Respondent to prepare and retain counsel. At the hearing, Respondent provided sworn testimony before the court of fact that challenged the Florida trial court's personal jurisdiction over her, expressly stated that she did not submit to the jurisdiction of the court and requested a continuance to allow Petitioner to obtain counsel. The court denied all Petitioner's evidence and interrupted her testimony.

Petitioner presented testimony of emails to various third parties and a tape recording from 2004 during the parties' marriage wherein Respondent was trying to locate Petitioner to serve him with divorce documents. The recording did not contain threats to constitute emotional harm. Petitioner presented Respondent's 2005 blog *The*

*Rhoadwarrior* which exposed Petitioner's military fraud, physical and sexual abuse upon Respondent. Petitioner falsely claimed the blog was domestic violence to obtain the injunction.

The trial court further committed due process violations by interrupting and denying Respondent's cross examination of the evidence and entered an Order to remove the blog and all internet posts about Petitioner, whether they were hers or not. The Order based its assumption of personal jurisdiction over Respondent without verifying her residency, unconstitutionally forced removal of the blog and ordered a California mental health evaluation.

Several other Motions to Dismiss were filed and subsequently denied. Petitioner did not file a response to any of the motions, and despite Respondent's request, no hearings were held constituting due process violations.

Petitioner relitigated this matter *ex parte* in 2015. In April 2018 after the expiration of the statute of limitations, Petitioner obtained a Florida capias warrant for Respondent's arrest, without an extradition warrant. On June 4, 2018, Respondent was arrested by the US Marshal's in her home-state of Nevada. This matter is under investigation as to the validity of the arrest.

On November 28, 2018, Respondent plead *nolo* to aggravated stalking due to untreated spinal injuries incurred during the extradition, after 175 days incarceration rendering a forced plea, and due process violations which are also on appeal in Case 2D18-4917.

On December 13, 2018, Respondent filed a Motion to Dissolve/Modification of the Injunction which was denied January 24, 2019 without a hearing.

In December 2018, Petitioner continued his relentless pursuit of incarcerating Respondent and filed false charges which resulted in a subsequent warrant issued on January 28, 2019, for Respondent's arrest based upon the same allegations in Petitioner's current and repeated litigation.

On March 13, 2019, Petitioner was found innocent of the allegations and Respondent filed litigation against Petitioner for malicious prosecution, fraud, false arrest and false incarceration.

On April 24, 2019, Petitioner filed his *ex parte* Request to Have Specific Content Removed and Request for Issuance for Contempt failed to serve Respondent.

This court was noticed that this case was on appeal in the Second District Court of Appeals. However, this Court stated it had the authority to hear the matter and set for hearing on August 15, 2019.  No evidentiary hearing was held and Respondent and was never served an Order to Show Cause.

On August 15, 2019, this Court attempted to hear testimony, however, this court continued the hearing to October 31, 2019 to allow Petitioner to submit his evidence.

On October 31, 2019, the hearing was held wherein Petitioner had two (2) hours to present his witnesses and testimony without any evidence. Pursuant to FL.R. 90.104, Petitioner failed to disclose evidence prior to the evidentiary hearing.

During the October 31, 2019 hearing, Respondent began her cross-examination, and demonstrated to this court there was no order for removal of the fourteen (14) websites Petitioner alleged.  This Court ceased Respondent's cross examination and stated the hearing needed to be continued.

Also noted, the 2006 Order for removal of all internet stories is vague, ambiguous and void as it orders Respondent to do something that is impossible to comply with.

Petitioner never served Respondent his proposed 160 page of exhibits, which he filed on October 31, 2019. Respondent contacted the Court and received unreadable copies.

Petitioner's proposed exhibits are not dated, unreadable, and Respondent has produced impeachable documents in her Supplement demonstrating Petitioner's evidence occurred prior to the October 31, 2019 hearing, and have already been litigated, barring Petitioner's exhibits to be relitigated constituting double jeopardy. Petitioner's repeated failure to timely present evidence violates numerous Florida evidentiary rules. Petitioner failed to disclose his witnesses and evidence prior to the hearing, denying Respondent's preparation by surprise.

The court rescheduled the second part of the hearing for December 16, 2019. By the continuation of the hearing, Respondent was denied the fundamental due process right to an evidentiary hearing and cross examination to defend herself against false and/or misleading allegations made by Petitioner and allowed Petitioner to file new charges.

On or about November 12, 2019, Petitioner filed a new motion for order to show cause regarding contempt. Petitioner failed to serve Respondent constituting further and continued *ex parte* communications with this Court.

Petitioner failed to attach any evidence of the alleged contempt to the Petition for Contempt and Order to Show Cause, denying Respondent's due process to defend.

Petitioner's new contempt petition falsely claims he has an injunction prohibiting stalking and it is unknown what the new allegations are.

This Court continues to hear this matter despite knowledge of being on Appeal with the Second District of Appeals Case 19-0407 constituting abuse of process and a slew of due process violations.

The matter is now further convoluted as to Petitioner's new undisclosed allegations of contempt that are under review of the State Attorney's Office.

This Court and the State Attorney's Office *must* stay the proceedings until the Appellate Court renders their decision on the jurisdiction, jurisdiction over the subject matter and personal jurisdiction over a non-resident.

Pursuant to Rule 9.130(f), no final order may be entered until the appellate proceedings are concluded.[3]

This court has the inherent power to stay the proceedings to ensure Respondent's Constitutional and due process rights are not violated.

Dated this 17th day of November, 2019.           */s/ Kristen Dougherty*
                                                  Kristen Dougherty

---

[3] Because it is undisputed that the acts relating to abuse of process complained of here occurred after the complaint was pled and are related to the judicial proceedings, the litigation privilege applies to Respondent's cause of action for abuse of process. See *LatAm Invs., LLC v. Holland & Knight, LLP.*, 88 So.3d 240 (Fla. 3d DCA 2011) (holding that the litigation privilege applies to abuse of process claims where the conduct occurred during and was related to the judicial proceedings).

**CERTIFICATE OF SERVICE**

This is to certify that a true and correct copy of the foregoing has been sent to all parties of record in accordance with the Florida Rules of Civil Procedure by and through the Florida e-file system on this the 17th day of November, 2019.

Phil Jason Haberman
3736 SW 57th Ct.
Ocala, Florida 34474

/s/ Kristen Dougherty

Filing # 99723034 E-Filed 12/03/2019 03:15:18 PM

**IN THE CIRCUIT COURT OF THE TWELFTH JUDICIAL CIRCUIT IN AND FOR
SARASOTA COUNTY, FLORIDA**

PHIL HABERMAN,                                    CASE NO. 06 DR-7754 (SC)

        Petitioner,

v.

KRISTEN RHOAD,

        Respondent.

_____/

**MOTION FOR DISCLOSURE OF EVIDENCE SUPPORTING PETITIONER'S
AFFIDAVITS, MOTION FOR ORDER TO ENFORCE E-SERVICE RULES AND
MOTION FOR AN ORDER FOR COMPULSORY MENTAL EXAMINATION OF
PETITIONER
REQUEST FOR HEARING**

      COMES NOW, Respondent, Kristen Rhoad, in Proper Person and hereby files

this Emergency Motion for an Order from the Court for Petitioner to produce evidence to

support his Affidavits filed November 12, 2019 and December 2, 2019; for an Order to

enforce E-service Rules, and for an Order for a compulsory psychological evaluation of

Petitioner.

      Petitioner brings forth allegations of violations and has filed two (2) recent

affidavits. Petitioner filed affidavits on November 12, 2019 and December 2, 2019, with

vague and unfounded allegations, without evidence attached to support the allegations

preventing Respondent to properly respond and defend.

      Petitioner continues to refuse to e-serve Respondent and is continuing his *ex parte*

communications with this Court, further evidencing his malicious intent to prevent

Respondent's defense.

*/ / /*

Respondent's Motion to Produce,
Enforce E-service & Compulsory
Psychological Evaluation of Petitioner                    1

## A. <u>MENTAL EVALUATION OF PETITIONER IS WARRANTED</u>

Due to the ongoing litigation and the numerous false affidavits and filings by Petitioner, Respondent requests an Order for a compulsory psychological evaluation of Petitioner. Good cause exists for this request as Petitioner has a previous history of mental illness. See Exhibits "A" and "B" attached hereto.

Without a proper psychiatric evaluation of Petitioner, this Court is allowing frivolous and vexious litigation to continue orchestrated by Petitioner who may not properly understand the legal ramifications of his numerous false affidavits and false police reports he has filed against Respondent.

Rule 12.360 of the Florida Family Law Rules of Procedure provides:

> "Florida Rule of Civil Procedure 1.360 shall govern general provisions concerning the examination of persons in family law matters, except that examinations permitted under rule 1.360(a)(1) may include . . . examinations involving . . . mental condition . . . ." Rule 1.360(a)(1) provides that "[a] party may request any other party to submit to . . . examination by a qualified expert when the condition that is the subject of the requested examination is in controversy." Further, an examination under rule 1.360(a) "is authorized only when the party submitting the request has good cause for the examination." Fla. R. Civ. P. 1.360(a)(2). At any hearing on the request for a compulsory examination, the party submitting the request has the burden of showing that both the "in controversy" and "good cause" prongs have been satisfied. In re G.D., 870 So. 2d at 237. The burden of proof is heightened when the party subject to the request for an examination has not voluntarily placed that issue in controversy. *Wade v. Wade*, 124 So. 3d 369, 373 n.3 (Fla. 3d DCA 2013).

Petitioner repeatedly brings litigation against Respondent to remove any and all internet content written about him, commented about him, wholeheartedly believes he

Respondent's Motion to Produce,
Enforce E-service & Compulsory
Psychological Evaluation of Petitioner          2

had the inherent power to control any and all statements made about him on the internet and hold Respondent responsible for those statements.

Petitioner's false allegations have been brought before this court for the last fifteen (15) years. Respondent has good cause to request the evaluation, and as a fair measure, Respondent submitted herself to a psychological evaluation in 2018 to comply with Judge Bennett's 2006 order. It is only fair that the Petitioner, who repeatedly brings this matter before the Court, be evaluated.

B. <u>HISTORY</u>

1. August 23, 2006 – Petitioner filed a false domestic violence petition after being denied 11 times, to obtain injunction to remove *Rhoadwarrior* blog;

2. February 27, 2007 - Petitioner files 42 false allegations of violation;

3. November 18, 2008 - Petitioner files for modification of injunction for removal of 8 websites. Court denies any violation;

4. October 26, 2013 - Petitioner filed false police reports to NPPD resulting in 1 year investigation;

5. April 15, 2018 - Petitioner filed false reports to NPPD resulting in a capias warrant of Respondent;

6. December 20, 2018 - Petitioner filed false VOP allegations resulting in a second warrant for Respondent's arrest and incarceration of 33 days which Respondent was found innocent by Judge Roberts on March 13, 2019;

7. April 24, 2019 - Petitioner filed false contempt charges (subject of this litigation);

8. August 29, 2019 – Petitioner contacted Nevada State Attorney to remove Respondent from Confidential Address Program;

9. October 26, 2019 - Petitioner filed false VOP charges for travel violation;

10. October 31, 2019 - Petitioner filed false violation of posts no evidence (subject of this motion);

11. November 2, 2019 - Petitioner filed false violation of posts no evidence (subject of this motion).

It's anyone's guess when Petitioner will file another false allegation. This is Legal System Abuse (LSA)[1], in which Petitioner repeatedly uses the legal system to irrationally pursue false statements against Respondent. Respondent brings elements of a claim for the tort of abuse of process including (1) an illegal, improper, or perverted use of the process, neither warranted nor authorized by the process, (2) an ulterior motive or purpose in exercising such use, and (3) damage as a result of the illegal act.

Petitioner's actions are consistent with violation of the *strategic lawsuit against public participation* (SLAPP), which is a lawsuit intended to censor, *intimidate* and silence critics by fear, intimidation and burdening them with the cost of a legal defense until they abandon their criticism or opposition.

For ten (10) years, from 2008 to 2018, there had been no hearings to determine any violations, however, Petitioner was granted a capias warrant over the NPPD investigation finding no violations. An investigation as to how Petitioner obtained the documents for an arrest are ongoing, and it is believed Petitioner falsified the documents to arrest Respondent.

C.  PERJURY

In Florida, "the offense of perjury in an official proceeding is a third-degree felony and is punishable by up to five years in prison."

> Under § 837.02(1), Fla. Stat., "[e]xcept as provided in subsection (2), whoever makes a false statement, which he or she does not believe to be true, under oath in an official proceeding in regard to any material matter, commits a felony of the third degree."

---

[1] https://www.stamfordadvocate.com/opinion/article/Op-ed-Legal-abuse-is-domestic-abuse-13321898.php

Respondent's Motion to Produce,
Enforce E-service & Compulsory
Psychological Evaluation of Petitioner                4

Petitioner's numerous affidavits state he is aware of the penalties of perjury, however, each time Petitioner files his false allegations against Respondent, he is breaking the law.

Respondent intends to bring perjury charges against Petitioner to hold him civilly and criminally responsible for those perjured statements. Petitioner signed his November 12, 2019 and December 2, 2019 affidavits acknowledging the statements as true.

> "I have read every statement made in this affidavit and each statement is true and correct. I understand that the statements made in this affidavit are being made under penalty of perjury, punishable as provided in Section 837.02, Florida Statutes and that the punishment for knowingly making a false statement includes fines and/or imprisonment.

Pursuant to Florida Statutes:

> **837.05   False reports to law enforcement authorities.—**
> (1)(a)   Except as provided in paragraph (b) or subsection (2), a person who knowingly gives false information to a law enforcement officer concerning the alleged commission of any crime, commits a misdemeanor of the first degree, punishable as provided in s. 775.082 or s. 775.083.
> (b)   A person who commits a violation of paragraph (a) commits a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084, if the person has previously been convicted of a violation of paragraph (a) and subparagraph 1. or subparagraph 2. applies:
> 1.   The information the person gave to the law enforcement officer was communicated orally and the officer's account of that information is corroborated by:
> a.   An audio recording or audio recording in a video of that information;
> b.   A written or recorded statement made by the person who gave that information; or

    c.  Another person who was present when that person gave that information to the officer and heard that information.

    2.  The information the person gave to the law enforcement officer was communicated in writing.

    (2)  A person who knowingly gives false information to a law enforcement officer concerning the alleged commission of a capital felony, commits a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.

**837.06   False official statements.**—Whoever knowingly makes a false statement in writing with the intent to mislead a public servant in the performance of his or her official duty shall be guilty of a misdemeanor of the second degree, punishable as provided in s. 775.082 or s. 775.083.

Respondent formally objects to any affidavit filed by Petitioner based on hearsay, relevance, and lack of authentication, *ex parte* filings and failure to produce any evidence to allow Respondent to defend.

Petitioner has a history of forging military and court documents, and this Court should not entertain any of Petitioner's allegations until competent, authenticated evidence is obtained.

Respondent is informed and believes all of Petitioner's statements and affidavits are perjured. An investigation as to the authenticity of Petitioner's documents presented to the courts and law enforcement is ongoing and it is the believed they have been forged to be used to falsely charge Respondent.

WHEREFORE, Respondent respectfully requests he following:

Respondent's Motion to Produce,
Enforce E-service & Compulsory
Psychological Evaluation of Petitioner        6

1. an Order for Petitioner to produce _unaltered_, _unredacted_ posts as alleged to be violations depicting the source of the post;

2. an Order for Petitioner to comply with the E-service rules of Court;

3. an Order for a compulsory psychological evaluation of Petitioner;

4. and any other relief as deemed appropriate.

Dated this 3rd day of December, 2019.               _/s/ Kristen Dougherty_

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing has been sent to all parties of record in accordance with the Florida Rules of Civil Procedure by and through the Florida e-file system on this the 3rd day of December, 2019.

Phil Jason Haberman
3736 SW 57th Ct.
Ocala, Florida 34474

_/s/ Kristen Dougherty_

**EXHIBIT "A"**

From: **Michael Peeters**
Subject: Re: Phil Haberman
Date: December 1, 2013 at 6:08 PM
To: Donna Andersen donna@lovefraud.com



Sorry about that Donna, I didn't read the story that close. I was his Commander at Fort Hood, TX on our way to Iraq when Phil showed up to join our unit. He was a little off center and some of the Soldiers googled him and we began to uncover some of his past. To make a long story short, with his actions you would have thought I was the one lying about folks but I eventually got the FBI involved, the Army Command team, and we booted him out for good with a less than honorable. As it turns out, his re-enlistment had been fraudulently made, he wasn't really in the army because he had a dishonorable discharge from an earlier process, and the FBI took it from there. He was also the #1 target of the Special Forces trackers who go after folks who fraudulently claim to be former Special Forces and I "had heard" the may have exacted some revenge for his actions. If there is anyone out there who is trying to nail this guy, please share my email and I will be happy to offer any assistance I can muster.

COL Mike Peeters


On Sat, Nov 30, 2013 at 6:37 PM, Donna Andersen <donna@lovefraud.com> wrote:
> Col. Peeters,
>
> Thank you for your inquiry. Haberman actually did not defraud me - it was his ex-wife, Kristen Rhoad. She was never able to get justice. In fact, on Nov. 15, I heard from Mary at POW Network that Haberman is now subpoenaing information about the Rhoadwarrior66 Twitter account.
>
> Donna
> ---
>
> Donna Andersen
> donna@lovefraud.com
> 609-945-1384
> Lovefraud.com - teaching people to recognize and recover from sociopaths
> Join our e-mail list
> http://www.lovefraud.com/index.html
>
> This e-mail contains the opinions of Donna Andersen and is not intended to be professional advice.
>
>
>
> On Nov 30, 2013, at 1:43 PM, Michael Peeters wrote:
>
> > Donna,
> >
> > I was doing a follow-up on Phil Haberman, the con artist, and saw your article on his con of
> > you, my apologies, but the guy is a psycho path. Have you been able to get past this clown
> > and where you ever able to get justice. Phil defrauded his way into my army unit when we
> > were preparing for deployment to Iraq. Fortunately my men were able to discover his past
> > and with assistance from the FBI and CID, we were able to bounce him permanently from the
> > army through a fraudulent enlistment. Hope to hear from you, Mike
> >
> > COL Mike Peeters
> > Commander
> > 1st BDE 91st Training Division

**EXHIBIT "B"**

From : Jim Becker
> Sent : Monday, September 12, 2005 4:29 PM
> To : kristenrhoad@hotmail.com
> Subject : CPT Becker - S1 - 1-120th IN
>
> Kristen,
>
> My name is CPT Jim Becker. I am currently the HHC commander for 1-120th IN
> and was the S1 (Adjutant or Personnel Officer) for 1-120th IN. I did my
> best to try to rehabilitate Phil during our deployment to Iraq.
>
> While at Fort Bragg, Phil introduced himself to CPT Chris Cash, the
> commander of A Company at the time. Phil advertised himself to CPT Cash as
> a Special Forces trained Sniper and Chris was so impressed with his supposed
> credentials that CPT Cash demanded I have him assigned to A company ( Chris'
> company). While observing him during sniper training, it became very clear
> that Phil did not have the credentials that he had so adamantly advertised.
> It didn't take more than 48 hours before Chris ask that I reassign him to
> another unit. Subsequently, he was reassigned to the HHC. I do not recall
> his initial assignment in HHC; however his shenanigans prompted me to become
> concerned for his safety and the safety of those around him. I counseled
> Phil in a formal counseling session that he had one final chance at
> rehabilitation. Phil placed so much self-importance on himself that he did
> not want to realize that every soldier was important and that we all had a
> mission to perform. I recommended to the HHC commander that we place him
> with the cooks, not as punishment, but as a chance to rehabilitate Phil.
> The mess sergeant had advanced degrees in psychology and criminology, and
> taught and trained classes for the Dept of Homeland Security and as a
> university professor. He had a knack for rehabilitating soldiers and this
> was why we assigned him to the mess section.
>
>
>
> Also, while at Fort Bragg, he had became very concerned about your
> miscarriage, although I am not sure if they were for the correct motives as
> he wanted to get to Key West and not Las Vegas as I recall. I was the point
> man in trying to make sure Tri-Care was taking care of you. There were some
> military spouse horror stories and I was extremely concerned for his
> family's well-being. I am sorry for your loss; I hope that you were able to
> receive the necessary care you needed in that hour. I never did receive any
> information after the fact, so I assumed that you did in fact get the
> medical treatment which you were entitled.
>
>
>
> His disdain with the 30th Brigade and being around "normal" troops is

> unfounded. The majority of our soldiers are drawn from prior service
> soldiers of the 82 Airborne, the Marine units at Camp Lejune and Special
> Forces and Marine Recon of both Fort Bragg and Camp Lejune. The unit had
> deployed to NTC and JRTC, to major training events, in under 12 months. Not
> many active duty units can lay claim to this type of preparedness.
> Additionally, our brigade was the only one to operate independently as a
> Brigade Combat Team and I am told we are the buzz around water coolers at
> the Pentagon. It is unfortunate that he didn't open his eyes to the
> obvious- we are a premier unit.
>
>
>
> Additionally, there is no R.S. Smith. I spoke with the actual convoy
> commander this weekend for that particular mission to Balad. I did not
> recall any significant event occurring during that time period. He was
> never injured on that convoy not did he receive any wounds relating to that
> incident. Typicaly, a sworn statement is sworn in by me, the adjutant;
> although in some circumtances it might have been another officer and quite
> often was during the beginning of the deployment. It would be interesting
> to find out who the officer was who took the sworn statement. (I have a
> suspicion that it was forged, leading to a UCMJ offense).
>
>
>
> Since Iraq, I have taken command of HHC. Phil was supposed to be at drill
> this past weekend. He was AWOL.
>
>
>
> As a footnote, Chris Cash was killed in Baqubah, Iraq on 27 July 2004. It
> really irks me that Phil would try to talk about the comrades that were
> killed or severely wounded while he was in Iraq. We lost 4 soldiers during
> the deployment and 2 were severely injured to were they lost a limb. Phil
> was not traumatized due to PTSD. Caldwell received no indirect or direct
> fire during our time at FOB Caldwell.
>
>
>
> I would ask you one favor. I am not looking to sensationalize this event.
> Phil seems to love being in the spotlight, displaying narcissistic
> tendencies to these types of events. I am going to try to ensure that that
> he receives the justice that is due to him. I would like to formulate a
> full and measured response to his VA disability claims and ensure that he
> receives a dishonorable discharge; but I will need your assistance in not
> sharing this information at this time. Additionally, feel free to call me
> to discuss any details so that we both can gain full closure on this

> situation, for both yourself and for my soldiers who deserve to be treated
> as war heroes. I can be reached at ███████████ .
>
>
> Sincerely,
>
> Jim Becker
>
> IN, CPT
>
> Commanding
>

Filing # 101282135 E-Filed 01/07/2020 08:37:09 PM

**IN THE CIRCUIT COURT OF THE TWELFTH JUDICIAL CIRCUIT
IN AND FOR SARASOTA COUNTY, FLORIDA**

PHIL HABERMAN,                                        CASE NO. 06 DR-7754 (SC)

        Petitioner,

v.

KRISTEN RHOAD,

        Respondent.

_____/

### RESPONDENT'S MOTION TO DISQUALIFY

    COMES NOW, Kristen Rhoad, Respondent *Pro Se*, pursuant to Rule 2.330, and hereby pursuant to Florida Rules of Judicial Administration, files her Motion to Disqualify and Incorporated Memorandum of Law, and in support thereof, states as follows:

    1.    Rule 2.330 Fla. R. Jud. Admin, allows a party to seek disqualification of the assigned trial judge where the party feels he will not receive a fair trial or hearing because of a specifically described prejudice or bias of the judge. Rule 2.330(f), Fla. R. Jud. Admin. provides that, upon <u>receipt</u> of a legally sufficient motion to disqualify, "the judge shall immediately enter an order granting the disqualification and proceed no further in the action."

    2.    The principal facts constituting the grounds for this Motion were discovered in October and December 2019. They have been presented and are being represented to the Court for an immediate ruling. Thus, this motion is timely filed.

    3.    This motion is filed with all due respect to the Court. Under the circumstances as outlined below, Respondent has an ethical responsibility to seek remedy of disqualification.

    4.    Respondent fears she will not and has not received a fair hearing, because of the Court's continued and demonstrable prejudice.

    5.    A recitation of the facts forming the basis for this fear will demonstrate this fear is well-founded.

Motion to Disqualify                              1

6.     During the pendency of this case, certain actions were taken and statements were made by the Court, the significance of which was not manifest until the hearing in December 2019.

7.     On April 26, 2019, Petitioner filed *ex parte* a Petition for Reconsideration of Judge Roberts' ruling on March 13, 2019.

8.     Respondent has never been a resident of Florida and the injunction to which this Court is considering a violation is void, and an appeal was filed with the Second District Appellate Court in January 2018.

9.     Respondent asserts Florida lacks personal and subject jurisdiction and that the matter should be and will be moved to the State Nevada Federal Court due to the diversity of the parties and lack of jurisdiction over the Respondent.

10.    This Court does not have the jurisdiction to overrule a criminal court's decision, however, this Court is proceeding on Petitioner's allegations outside the Petition.

11.    This Court repeatedly allows Petitioner to file *ex parte* despite Respondent's motions and the Court's own Order of April 26, 2019, allowing Petitioner to not serve Respondent via e-file, allows for hearing requests to be filed *ex parte,* documents to be submitted, and filed without signatures.

12.    Respondent has had to rely upon the Clerk of the Court to serve the *ex parte* documents otherwise this Court will rule in Petitioner's favor, denying due process to Respondent.

13.    This Court denied Respondent's motion to dismiss for lack of proper service of Petitioner's "Petition for Reconsideration" filed *ex parte* on April 26, 2019.

14.    This Court granted Petitioner's motion to continue to obtain legal counsel. Ultimately, Petitioner's motion to continue was a sham, Petitioner did not obtain counsel and was an unnecessary delay tactic, and due process violation.

15.    This Court denied Respondent's Motion to Dismiss pending the appeal filed September 24, 2019 and November 17, 2019.

16.    On October 31, 2019 and December 16, 2019, this Court stated it can proceed on the matter knowing that the Respondent filed an appeal on the jurisdiction of

the 2006 injunction, jurisdiction over the subject matter and lack of jurisdiction over the Respondent.

17.     Respondent contends until the jurisdiction of the Appeal is determined, this Court cannot rule on the contents, conditions or alleged contempt of the 2006 injunction.

18.     On August 15, 2019, October 31, 2019 and December 16, 2019, this Court stated he "can modify the 2006 injunction...and probably will modify the injunction." This Court suggested the modifications would demand Respondent to remove all internet content, but he was not sure, as he was aware of the Constitutional rights of Respondent's freedom of speech.

19.     On August 15, 2019, this Court stated that he was not going to hear testimony regarding anything prior to the April 26, 2019 Petition, however the Petitioner and his two witnesses testified to all content prior to 2019, and as such prejudiced Respondent.

20.     On October 31, 2019, this Court allowed testimony of Petitioner without evidence being entered *prior* to the hearing or served upon Respondent.

21.     This Court allowed Petitioner's evidence to be admitted *after* the October 31, 2019 hearing, which contained all prior unverified, documents relating to the 2015 and 2018 charges currently on appeal and outside the scope of Petitioner's Request for Reconsideration April 26, 2019 claim, while denying Respondent's witness statements and exhibits.

22.     The content of the October 31, 2019, and December 16, 2019 hearings are prejudicial to Respondent.

23.     On October 31, 2019, this Court read Respondent her Miranda Rights during the civil hearing at the request of Petitioner.

24.     On October 31, 2019, this Court made essential personal and prejudicial statements of the case.

25.     On December 16, 2019, this Court berated Respondent for her examination of the contents of the websites which are the direct reason for the case. This Court negatively stated repeatedly that "Respondent wasted her time".... and "at the

Denied
Discovery

continued hearing he would only allow Respondent one (1) hour to present
including witness testimony" versus the two (2) plus hours Petitioner had.

26.     The Court allowed delay of the proceedings due to subsequ
allegations filed by the Petitioner with the State Attorney's Office wherein H
alleges that Respondent spoke and posted about him, allegedly violating this
orders of October 31, 2019.

27.     Those orders were not in writing, however, this Court ordered Respondent
not to "post or send anything to Petitioner", and that "he had eyes on Respondent".

28.     The order was vague in its content and denied Respondent her First
Amendment Constitutional Right to speak about or write about Petitioner.

29.     This Court allowed Petitioner to file three more false charges because
Respondent posted comments to her friends. Respondent did not send Petitioner anything
and did not violate any order.

30.     Petitioner gained access to Respondent's comments to which he and his
friends and family are blocked, and will not disclose the alleged three violations, denying
Respondent the ability to defend the false allegations, prejudicing Respondent and
denying her to confront her accusers.

31.     This Court allowed Petitioner to testify to false violation allegations,
without evidence and a hearing on the merits of the false allegations.

## MEMORANDUM OF LAW

Rule 2.330, Fla. R. Jud. Admin., allows a party to seek disqualification of the
assigned trial judge where the party feels he will not receive a fair trial or hearing because
of a specifically described prejudice or bias of the judge.  Rule 2.330(f), Fla. R. Jud.
Admin. provides that, upon receipt of a legally sufficient motion to disqualify, "the judge
shall immediately enter an order granting disqualification and proceed no further in the
action."

The Respondent believes the Court is prejudiced against her.  The Court has taken
on the role of advocate for the Petitioner, and is no longer an impartial arbitrator in this
matter. The actions of the court in (1) allowing the case to proceed when the
jurisdictional merits are on appeal; (2) allowing Petitioner to testify to matters outside the
petition, (3) allowing Petitioner to testify prior to any evidence being entered, (4)

continuing the hearing to permit Petitioner to call and prepare witness, (5) allowing *ex parte* filings by Petitioner, (6) reading Respondent her Miranda Rights at the civil hearing, (7) allowing testimony by Petitioner that has already been ruled upon; (8) berating Respondent about "not enough time" and not allowing Respondent sufficient time to examine, cross examine Petitioner and his witnesses, (9) after continuing the hearing, conducting its own research, speaking with other Judges on prior rulings of the case, ordering transcripts from previous pretrial hearings, demonstrate the Court's bias.

Thus, the Respondent's fear that she will not receive a fair hearing is well-founded, objective, and reasonable.

"When a judge enters into the proceedings and becomes a participant or an advocate, a shadow is cast upon judicial neutrality." *R.O. v. State*, 46 So. 3d 124, 126 (Fla. 3d DCA 2010); see also *Williams v. State*, 160 So. 3d 541, 544 (Fla. 4th DCA 2015). Trial judges must studiously avoid the appearance of favoring one party in a lawsuit, and suggesting to counsel or a party how to proceed strategically constitutes a breach of this principle. See *Chastine v. Broome,* 629 So.2d 293 (Fla. 4th DCA 1993) (holding that a trial judge's provision of strategic advice to a party during a trial demonstrated impermissible bias); see also *J.F. v. State*, 718 So.2d 251 (Fla. 4th DCA 1998) (disapproving a trial judge who assisted with a delinquency prosecution by requesting the production of additional State's evidence).

"Prejudice of a judge is a delicate question to raise, but when raised as a bar to the trial of a cause, if predicated on grounds with a modicum of reason, the judge against whom raised should be prompt to recuse himself." *Livingston v. State*, 441 So.2d 1083, 1085 (emphasis added). Where there is any legally sufficient basis, whether factually accurate or not, for a founded fear of possible prejudice to exist in the mind of a Respondent, recusal is mandated. See, e.g., *Management Corporation of America, Inc. v. Grossman*, 396 So.2d 1169 (Fla. 3rd DCA 1981).

A motion to disqualify a judge must establish a fear on the part of the movant that he or she will not receive a fair and impartial hearing. See, *Quince v. State*, 592 So. 2d 669, 670 (Fla. 1992). The instant motion clearly establishes such a fear. The motion "must be well-founded and contain facts germane to the judge's undue bias, prejudice, or sympathy." *Rivera v. State*, 717 So. 2d 477, 480-81 (Fla. 1998). The instant motion is

well founded, based on the record, and respectfully consists of germane facts showing the bias and prejudice of the Court.

In determining the legal sufficiency of a motion to disqualify, a court looks to see whether the facts alleged would place a reasonably prudent person in fear of not receiving fair and impartial treatment from the trial judge. See, e.g., *Johnson v. State*, 769 So. 2d 990 (Fla. 2000). In the instant case, a reasonably prudent person, would be in fear that the Court, because of its prejudice or bias deprived her of fair and impartial treatment.

The fear of judicial bias must be objectively reasonable. *State v. Shaw*, 643 So. 2d 1163, 1164 (Fla. 4th DCA 1994). A subjective fear is insufficient. See, e.g., *Kowalski v. Boyles*, 557 So. 2d 885 (Fla. 5th DCA 1990). While the Respondent clearly possesses a subjective fear (it being her, it is by definition subjective), her fear is also objective, as it is based on demonstrable, extant facts replete in the record, both written and of proceedings. Thus, she has shown an objectively reasonable fear that she will not receive a fair trial or hearing in this cause, based on a specifically described prejudice or bias of this Court.

WHEREFORE, Respondent prays this Honorable Court enter an Order of Recusal.

DATED this 7th day of January, 2020.

> Respectfully Submitted
> /s/*Kristen Dougherty*
> KRISTEN DOUGHERTY

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing Motion to Disqualify has been sent to all parties of record in accordance with the Florida Rules of Civil Procedure by and through the Florida e-file system on this the 7th day of January, 2020.

Phil Jason Haberman
3736 SW 57th Ct.
Ocala, Florida 34474

> /s/ *Kristen Dougherty*

**IN THE CIRCUIT COURT OF THE TWELFTH JUDICIAL CIRCUIT IN AND FOR SARASOTA COUNTY, FLORIDA**

PHIL HABERMAN,                          CASE NO.  06 DR-7754 (SC)

       Plaintiff,                    **NOTICE OF REMOVAL OF**
v.                                      **ACTION UNDER 28 U.S.C § 1441(b)**
                                        **DIVERSITY BY DEFENDANT AND**
KRISTEN RHOAD,                          **CONSOLIDATION OF CASE 2D19-0407**

       Defendant.

_____/

**TO THE CLERK OF THE ABOVE-ENTITLED COURT:**

**PLEASE TAKE NOTICE** that pursuant to 28 U.S.C. §§ 1332, 1441 and 1446, Defendant KRISTEN RHOAD hereby removes this civil action from the Circuit Court of the Twelfth Judicial Circuit, Sarasota Florida, where it is currently as Case No. 06DR-7754-SC to the United States District Court for the District of Nevada.

1.      United States District Court for the District of Nevada has original jurisdiction over this action under 28 U.S.C. §1332(a) on the grounds that complete diversity exists between all parties, subject matter and the amount in controversy exceeds the sum of $75,000, exclusive of interests and costs.

2.      Defendant is and has always been a resident of the State of Nevada, while Plaintiff resides in the State of Florida.

3.      Defendant contends Plaintiff filed in the wrong jurisdiction; Florida State Court does not have jurisdiction over the subject matter involving removal of internet content, lacks jurisdiction over Defendant as a non-resident, and violated Defendant's Constitutional Rights,

Notice of Removal                       1

EXHIBIT 1

giving proper jurisdiction to United States District Court for the District of Nevada.

4. On May 9, 2019, Defendant was noticed of Plaintiff's *Ex-Parte* Amended Request to Have Specific Content Removed to Comply with Court Order and Request for Issuance of order for Contempt of Court. Exhibit "A". Defendant was never properly served.

## BACKGROUND

5. On or about April 30, 2006, an action commenced by Plaintiff in the Circuit Court of the Twelfth Judicial Court, Sarasota Florida, entitled PHIL HABERMAN ("Haberman") vs. KRISTEN RHOAD, Case number 06DR-7754-SC.

6. Defendant was never a resident of Florida and Defendant has always contended that Florida does not have jurisdiction over Defendant either personal or over the subject matter.

7. Evidence will show Plaintiff falsified his police reports to gain jurisdiction stating Defendant was a resident of North Port, Sarasota, Florida. Falsification of a police report is a criminal act and voids any complaint.

8. Defendant filed numerous pleadings, motions and finally filed her Pro Se Appellate Brief on January 30, 2019, in the Second Appellate Court of Florida Case 2D19-0407 for lack of jurisdiction over the subject matter to remove internet content, lack of personal jurisdiction over Defendant as a non-resident, and violation of Defendant's Constitutional Rights. The Appellate Court refuses to rule in a timely manner, denying due process to Defendant.

Case 8:20-cv-00375-WFJ-SPF Document 1-2 Filed 02/19/20 Page 64 of 82 PageID 121

9.     The Florida Appellate Court does not have jurisdiction to rule on the matter since Defendant was and has never resided in Florida.

10.     Further confusing the matter, Haberman repeatedly filed charges in the civil case as criminal contempt, which resulted in the falsification and omission of material facts, and lack of candor of the State of Florida wherein Defendant was arrested in Nevada violating 18 U.S.C. 1001 and 18 U.S.C. 1018.

11.     On or about May 9, 2019, Defendant became aware of Plaintiff's *Ex-Parte* Amended Request to Have Specific Content Removed to Comply with Court Order and Request for Issuance of Order for Contempt of Court (Exhibit "A"). No Summons or Complaint were filed, and no affidavit of service were filed.

12.     Plaintiff erroneously seeks redress and clarification of Florida State criminal Judge Roberts' decision of non-violation of contempt in the March 13, 2019 decision in a Florida civil court. A Florida civil court cannot overrule a Florida criminal court decision, and the "request" is a false attempt to relitigate the original case.

13.     Plaintiff's Amended Request seeks removal of "all blogs, postings, articles, etc. which reference the Petitioner and that were posted, or caused to be posted by the respondent." Plaintiff's request for removal of 14 web-based websites fall under Federal jurisdiction since the diversity of each website Plaintiff seeks to remove are owned by other third-parties and domiciled in numerous states, constituting Constitutional Right violations.

14.     As a direct and proximate cause of Plaintiff's false allegations rendering a Florida criminal actions related to 06DR-7754-SC, 2015CR006022 and 18CF017848NC, Defendant was

falsely charged, falsely arrested and falsely incarcerated due to Plaintiff's false police reports.

15.    On November 5, 2019, Plaintiff repeatedly filed false allegations violating Defendant's Constitutional Rights.

16.    As of December 16, 2019, the Florida civil court has been proceeding with the case while the appeal is pending with the Appellate Court on the jurisdiction of the injunction and lack of jurisdiction over the subject matter and personal jurisdiction of the Defendant. On January 7, 2020, Defendant filed a Motion to Disqualify pursuant to Rule 2.330 Fla. R. Jud. Admin.

17.    Defendant believes she has been repeatedly denied due process, her Constitutional Rights have been violated, she was falsely arrested for a crime that is not a crime, and will be repeatedly denied a proper trial.

18.    Defendant believes the Florida Courts are biased towards Defendant because if she prevails on the merits of the appeal, which she most likely will, then Defendant will have grounds to bring charges against the State of Florida, the Department of Justice, and all parties involved, individually and in their official capacities for the wrongful charges and arrest.

## GROUNDS FOR REMOVAL

As set more fully below, this Court has subject matter jurisdiction under 28 U.S.C. §1332, which confers original jurisdiction of "all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is

between . . . citizens of different States and which citizens or subjects of a foreign state are additional parties[.]"

## I.    The Amount-In-Controversy Requirement is Satisfied.

"In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840 (9th Cir. 2002) (quoting *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 347 (1977)). The Ninth Circuit employs the "either viewpoint" test to determine the value of the object of the litigation. *Corral v. Select Portfolio Servicing, Inc.*, 878 F.3d 770, 775 (9th Cir. 2017). "Under the 'either viewpoint' rule, the test for determining the amount in controversy is the pecuniary result to either party which the judgment would directly produce." *In re Ford Motor Co./Citibank*, 264 F.3d 952, 959 (9th Cir. 2001).

Defendant seeks an amount in excess of $75,000 for damages. Accordingly, the amount in controversy in this action well exceeds $75,000, exclusive of interest and costs.

Because the amount in controversy exceeds $75,000, removal on the basis of diversity should be allowed pursuant to 28 U.S.C. § 1441(b).

## II.    Complete Diversity of Citizenship Exists Between Plaintiff and Defendant.

Plaintiff is a domiciled resident of the State of Florida. *DEFENDANT HAS NEVER RESIDED IN FLORIDA AND HAS AT ALL TIMES BEEN A RESIDENT OF THE STATE OF NEVADA.* In determining whether diversity of citizenship exists, only the named

defendants are considered. See *Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 690-691 (9th Cir. 1998); see also *Oliye v. Gen. Nutrition Ctrs., Inc.*, No. 2:12-cv-04297-ODW, 2012 WL 2006389, at *1 (C.D. Cal. June 5, 2012); *Marsikyan v. Porsche Cars N. Am., Inc.*, No. CV 11-09411-STO, 2012 WL 280585, at *2 (C.D. Cal. Jan. 30, 2012).

Plaintiff has and continues to erroneously sue Defendant in a jurisdiction foreign to the Defendant, and is therefore barred. Pursuant to 14th Amendment Section 1, "All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside." Therefore, the United States District Court for the District of Nevada has jurisdiction over Defendant and the subject matter.

Defendant filed an appeal of the injunction Second Appellate Court, Florida Case No. 2D-19-0407, wherein jurisdiction is questioned. The Appellate Court has not ruled upon this matter.

### III.   Defendant's Constitutional Rights are Violated.

Plaintiff repeatedly files contempt charges for the removal of internet stories that Defendant is not the author of. Plaintiff falsified and believes he has an order granting him the removal, however, evidence shows there is no such order, which Plaintiff caused Defendant to be falsely arrested in June 2018. The stories constitute professional news reporter websites, which exposed Haberman's false military career, fraudulent actions with non-profits, and other acts, which Defendant had nothing to do with.

Defendant also contends United States District Court for the District of Nevada has

jurisdiction as the arresting agencies did not have an extradition warrant to arrest Defendant in Nevada. The United States Marshals and the Nevada Highway Patrol used the Florida State Capias warrant, enforceable in the State of Florida to falsely arrest Defendant in her home state, and therefore the governmental agencies of Nevada provide further jurisdictional and professional administrative violations.

Because Defendant's Constitutional Rights are violated and Defendant has never been a resident of Florida, the Florida courts cannot proceed and the proper venue is United States District Court for the District of Nevada.

**IV.     The Other Prerequisites for Removal Are Satisfied.**

This Notice of Removal is timely filed. The relevant statute provides that "[e]ach defendant shall have 30 days after receipt . . . of the initial pleading . . . to file the notice of removal." 28 U.S.C. § 1446(b)(2)(B). Plaintiff never filed a Complaint with the state court, but rather filed a Request. Defendant has not been served with a Summons or Complaint, as of the date of the filing of this Notice of Removal. This action is properly removed to the United States District Court for the District of Nevada, which is "the district and division embracing the place where [the] action is pending." 28 U.S.C. § 1441(a); see also 28 U.S.C. § 84(c)(2).

Title 28 U.S.C. § 1446(a), requires a copy of all process, pleadings, and orders served upon the removing defendant in the state court action to be included with this Notice of Removal. Defendant was not served with any of the papers, as there were no Summons or Complaint filed.

Equitable tolling of the one-year limitation of 28 U.S.C. §1446(b) is relevant as the original complaint was an attempt in bad faith to evade federal jurisdiction. *Tedford v. Warner-Lambert Co.*, 327 F.3d 423 (5th Cir. 2003). Defendant contends evidence will show Plaintiff filed to evade federal jurisdiction.

Pursuant to 28 U.S.C. § 1446(d), a Notice to Adverse Party of Removal to Federal Court, attached hereto as Exhibit "B", together with this Notice of Removal will be served upon Plaintiff."

By filing this Notice of Removal, Defendant does not waive her right to seek to compel arbitration, or to object to jurisdiction over the person, or venue, and specifically reserves the right to assert any defenses and/or objections to which it may be qualified to assert, if any question arises as to the propriety of the removal of this action. Defendant respectfully requests the opportunity to submit briefing and oral argument and to conduct discovery in support of its position that subject matter jurisdiction exists.

WHEREFORE, Defendant KRISTEN RHOAD, prays that this action be removed and consolidated to the United States District Court for the District of NEVADA.

DATED: January 9, 2020

By: /s/ Kristen Dougherty

Notice of Removal                                    8

## IN THE CIRCUIT COURT OF THE TWELFTH JUDICIAL CIRCUIT IN AND FOR SARASOTA COUNTY, FLORIDA

PHIL HABERMAN,

               Plaintiff,

v.

KRISTEN RHOAD,

               Defendant.

_____/

CASE NO. 06 DR-7754 (SC)

**NOTICE TO ADVERSE PARTY
OF REMOVAL TO FEDERAL COURT**

## NOTICE OF REMOVAL TO FEDERAL COURT

TO:   PLAINTIFF AND ALL PARTIES:

NOTICE IS HEREBY GIVEN THAT a Notice of Removal of this action was filed to remove this case to the United States District Court for the District of Nevada on January 9, 2020. A copy of said Notice of Removal is attached, and is served and filed herewith.

DATED: January 9, 2020

By: */s/ Kristen Dougherty*

**IN THE CIRCUIT COURT OF THE TWELFTH JUDICIAL CIRCUIT
SARASOTA COUNTY, STATE OF FLORIDA**

**PHIL HABERMAN**

      **Petitioner,**

v.                            **CASE NO. 2006 DR 007754 SC**


**KRISTEN RHOAD,**

      **Respondent.**

_____/


**ORDER DENYING MOTION TO DISQUALIFY**

      **THIS** case came before the Court on the Defendant's Motion to Disqualify (the "Motion") filed January 17, 2020.[1] The Court having considered the Motion, having reviewed the Clerk's records, and being otherwise duly advised in the premises, finds as follows:

      The procedures for disqualification are governed by the provisions of Rule 2.330, Florida Rules of Judicial Administration and Section 38.01 through 38.10, Florida Statutes. In summary, the procedural requirements for filing a motion for disqualification are: (1) the motion may be filed only by a party to the lawsuit, (2) the motion must be in writing, (3) the party filing the motion <u>must submit a sworn statement of the supporting facts,</u> (4) the attorney filing the motion must certify that it has been made in good faith, (5) the motion must be made within 10 days of the date the moving party discovered the ground for disqualification, (6) the motion must allege with specificity the facts and reasons as grounds for disqualification, and (7) in addition to filing with the clerk, the movant <u>shall immediately serve a copy of the motion on the subject judge</u> as set forth in Florida Rule of Civil Procedure 1.080.

      A motion for disqualification that does not meet these requirements is legally insufficient and will be denied on that ground even if the moving party could have asserted a substantive right for disqualification.

      The Court finds that the Motion is legally insufficient.

Accordingly, it is hereby

      **ORDERED AND ADJUDGED** that:

---

[1] The Motion was apparently filed, but not served on this Court.

Respondent's Motion is hereby **DENIED**.

      **DONE AND ORDERED** in chambers, in Sarasota County, Sarasota, Florida on this 11th day of February, 2020.

STEPHEN M. WALKER
CIRCUIT JUDGE

Copies:

Kristen Rhoad- via email Floridafiasco@gmail.com

Phil Haberman- 3736 SW57 Ct. Ocala, FL 34474

## IN THE CIRCUIT COURT OF THE TWELFTH JUDICIAL CIRCUIT IN AND FOR SARASOTA COUNTY, FLORIDA

PHIL HABERMAN,                          CASE NO.  06 DR-7754 (SC)

            Plaintiff,          **AMENDED NOTICE OF REMOVAL OF**

v.                                                       **ACTION UNDER 28 U.S.C § 1332, 1441 and 1446,**
                                                            **DIVERSITY BY DEFENDANT AND**
KRISTEN RHOAD,                        **CONSOLIDATION OF CASE 2D19-0407**

            Defendant.

_____/

### TO THE CLERK OF THE ABOVE-ENTITLED COURT:

**PLEASE TAKE NOTICE** that pursuant to 28 U.S.C. §§ 1332, 1441 and 1446, Defendant KRISTEN RHOAD hereby removes this civil action from the Circuit Court of the Twelfth Judicial Circuit, Sarasota Florida, where it is currently as Case No. 06DR-7754-SC to the United States District Court for the Middle District of Florida, and will seek a change of venue to the United States District Court, Southern Nevada as proper jurisdiction and venue.

1.        United States District Court for the District of Southern Nevada has original jurisdiction over this action under 28 U.S.C. §1332(a) on the grounds that complete diversity exists between all parties, subject matter and the amount in controversy exceeds the sum of $75,000, exclusive of interests and costs.

2.        Defendant is and has always been a resident of the State of Nevada, while Plaintiff resides in the State of Florida.

3.        Defendant contends Plaintiff filed in the wrong jurisdiction; Florida State Court

Amended Notice of Removal       1

EXHIBIT 2

does not have jurisdiction over the subject matter involving Constitutional Right violations, removal of internet content, lacks jurisdiction over Defendant as a non-resident, and violated Defendant's Constitutional Rights, giving proper jurisdiction to United States District Court for the District of Nevada.

4.      On May 9, 2019, Defendant was noticed of Plaintiff's *Ex-Parte* Amended Request to Have Specific Content Removed to Comply with Court Order and Request for Issuance of order for Contempt of Court.

## BACKGROUND

5.      On or about April 30, 2006, an action commenced by Plaintiff in the Circuit Court of the Twelfth Judicial Court, Sarasota Florida, entitled PHIL HABERMAN ("Haberman") vs. KRISTEN RHOAD, Case number 06DR-7754-SC.

6.      Defendant was never a resident of Florida and Defendant has always contended that Florida does not have jurisdiction over Defendant either personal or over the subject matter.

7.      Evidence will show Plaintiff falsified his police reports to gain jurisdiction stating Defendant was a resident of North Port, Sarasota, Florida. Falsification of a police report is a criminal act and voids any complaint.

8.      Defendant filed numerous pleadings, motions and finally filed her Pro Se Appellate Brief on January 30, 2019, in the Second Appellate Court of Florida Case 2D19-0407 for lack of jurisdiction over the subject matter to remove internet content, lack of personal jurisdiction over Defendant as a non-resident, and violation of Defendant's Constitutional

Amended Notice of Removal            2

Rights. The Appellate Court refuses to rule in a timely manner, denying due process to Defendant.

9.       The Florida Courts do not have jurisdiction to rule on the matter since Defendant was and has never resided in Florida.

10.      Further confusing the matter, Haberman repeatedly filed charges in the civil case as criminal contempt, which resulted in the falsification and omission of material facts, and lack of candor of the State of Florida wherein Defendant was arrested in Nevada violating 18 U.S.C. 1001 and 18 U.S.C. 1018.

11.      On or about May 9, 2019, Defendant became aware of Plaintiff's *Ex-Parte* Amended Request to Have Specific Content Removed to Comply with Court Order and Request for Issuance of Order for Contempt of Court (Exhibit "A").  No Summons or Complaint were filed, and no affidavit of service were filed.

12.      Plaintiff erroneously seeks redress and clarification of Florida State criminal Judge Roberts' decision of non-violation of contempt in the March 13, 2019 decision in a Florida civil court. A Florida civil court cannot overrule a Florida criminal court decision, and the "request" is a false attempt to relitigate the original case.

13.      Plaintiff's Amended Request seeks removal of "all blogs, postings, articles, etc. which reference the Petitioner and that were posted, or caused to be posted by the respondent." Plaintiff's request for removal of 14 web-based websites fall under Federal jurisdiction since the diversity of each website Plaintiff seeks to remove are owned by other third-parties and domiciled in numerous states, constituting Constitutional Right violations.

Amended Notice of Removal                3

14. As a direct and proximate cause of Plaintiff's false allegations rendering a Florida criminal actions related to 06DR-7754-SC, 2015CR006022 and 18CF017848NC, Defendant was falsely charged, falsely arrested and falsely incarcerated due to Plaintiff's malicious, false police reports.

15. On November 5, 2019, Plaintiff repeatedly filed false allegations violating Defendant's Constitutional Rights.

16. As of December 16, 2019, the Florida civil court has been proceeding with the case while the appeal is pending with the Appellate Court on the jurisdiction of the injunction and lack of jurisdiction over the subject matter and personal jurisdiction of the Defendant. As a direct result, Haberman obtained a misdemeanor warrant for Defendant's arrest on a non-existing order.

17. On January 7, 2020, Defendant filed a Motion to Disqualify pursuant to Rule 2.330 Fla. R. Jud. Admin. Judge Walker denied his own Motion to Disqualify on February 11, 2020.

18. Defendant believes she has been repeatedly denied due process, her Constitutional Rights have been violated, she was falsely arrested for a crime that is not a crime, and will be repeatedly denied a proper trial.

19. Defendant believes the Florida Courts are biased towards Defendant because if she prevails on the merits of the appeal, which she most likely will, then Defendant will have grounds to bring charges against the State of Florida, the Department of Justice, and all parties involved, individually and in their official capacities for the wrongful charges and

Amended Notice of Removal                    4

arrest.

## **GROUNDS FOR REMOVAL**

As set more fully below, this Court has subject matter jurisdiction under 28 U.S.C. §1332, which confers original jurisdiction of "all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between... citizens of different States and which citizens or subjects of a foreign state are additional parties[.]"

## I.  **The Amount-In-Controversy Requirement is Satisfied.**

"In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." *Cohn v. Petsmart, Inc.,* 281 F.3d 837, 840 (9th Cir. 2002) (quoting *Hunt v. Wash. State Apple Advert. Comm'n,* 432 U.S. 333, 347 (1977)). The Ninth Circuit employs the "either viewpoint" test to determine the value of the object of the litigation. *Corral v. Select Portfolio Servicing, Inc.,* 878 F.3d 770, 775 (9th Cir. 2017). "Under the 'either viewpoint' rule, the test for determining the amount in controversy is the pecuniary result to either party which the judgment would directly produce." *In re Ford Motor Co./Citibank,* 264 F.3d 952, 959 (9th Cir. 2001).

Defendant seeks an amount in excess of $75,000 for damages. Accordingly, the amount in controversy in this action well exceeds $75,000, exclusive of interest and costs.

Because the amount in controversy exceeds $75,000, removal on the basis of

Amended Notice of Removal                         5

diversity should be allowed pursuant to 28 U.S.C. § 1441(b).

## II.        Complete Diversity of Citizenship Exists Between Plaintiff and Defendant.

Plaintiff is a domiciled resident of the State of Florida. *DEFENDANT HAS NEVER RESIDED IN FLORIDA AND HAS AT ALL TIMES BEEN A RESIDENT OF THE STATE OF NEVADA.* In determining whether diversity of citizenship exists, only the named defendants are considered. See *Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 690-691 (9th Cir. 1998); see also *Olive v. Gen. Nutrition Ctrs., Inc.,* No. 2:12-cv04297-ODW, 2012 WL 2006389, at *1 (C.D. Cal. June 5, 2012); *Marsikyan v. Porsche Cars N. Am., Inc.*, No. CV 11-09411 SJO, 2012 WL 280585, at *2 (C.D. Cal. Jan. 30, 2012).

**Plaintiff has and continues to erroneously sue Defendant in a jurisdiction foreign to the Defendant, and is therefore barred.** Pursuant to 14th Amendment Section 1, "All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside." Therefore, the United States District Court for the District of Nevada has jurisdiction over Defendant and the subject matter.

Defendant filed an appeal of the injunction Second Appellate Court, Florida Case No. 2D-19-0407, wherein jurisdiction is questioned. The Appellate Court has not ruled upon this matter.

## III.       Defendant's Constitutional Rights are Violated.

Plaintiff repeatedly files contempt charges for the removal of internet stories that

Defendant is not the author of. Plaintiff falsified and believes he has an order granting him the removal, however, evidence shows there is no such order, which Plaintiff caused Defendant to be falsely arrested in June 2018. The stories constitute professional news reporter websites, which exposed Haberman's false military career, fraudulent actions with non-profits, and other acts, which Defendant had nothing to do with.

Defendant also contends United States District Court for the District of Nevada has jurisdiction as the arresting agencies did not have an extradition warrant to arrest Defendant in Nevada. The United States Marshals and the Nevada Highway Patrol used the Florida State Capias warrant, enforceable in the State of Florida to falsely arrest Defendant in her home state, and therefore the governmental agencies of Nevada provide further jurisdictional and professional administrative violations.

Because Defendant's Constitutional Rights are violated and Defendant has never been a resident of Florida, the Florida courts cannot proceed and the proper venue is United States District Court for the District of Nevada.

## IV.    The Other Prerequisites for Removal Are Satisfied.

This Notice of Removal is timely filed. Plaintiff never filed a Complaint with the state court, but rather filed a Request. Defendant has not been served with a Summons or Complaint, as of the date of the filing of this Notice of Removal. This action is properly removed to the United States District Court for the Middle District of Florida and then to change venue to the United States District Dourt of Southern Nevada – where Defendant resides, which is "the district and division embracing the place where [the] action is

pending." 28 U.S.C. § 1441(a); see also 28 U.S.C. § 84(c)(2).

Title 28 U.S.C. § 1446(a), requires a copy of all process, pleadings, and orders served upon the removing defendant in the state court action to be included with this Notice of Removal. Defendant was not served with any of the papers, as there were no Summons or Complaint filed.

Equitable tolling of the one-year limitation of 28 U.S.C. §1446(b) is relevant as the original complaint was an attempt in bad faith to evade federal jurisdiction. *Tedford v. Warner-Lambert Co.*, 327 F.3d 423 (5th Cir. 2003). Defendant contends evidence will show Plaintiff filed to evade federal jurisdiction.

Pursuant to 28 U.S.C. § 1446(d), a Notice to Adverse Party of Removal to Federal Court, attached hereto as Exhibit "B", together with this Notice of Removal will be served upon Plaintiff.

By filing this Notice of Removal, Defendant does not waive her right to seek to compel arbitration, or to object to jurisdiction over the person, or venue, and specifically reserves the right to assert any defenses and/or objections to which it may be qualified to assert. If any question arises as to the propriety of the removal of this action, Defendant respectfully requests the opportunity to submit briefing and oral argument and to conduct discovery in support of its position that subject matter jurisdiction exists.

/ / /

/ / /

Amended Notice of Removal                    8

WHEREFORE, Defendant KRISTEN RHOAD, prays that this action be removed and consolidated to the United States District Court for the Middle District of Florida and will file a change venue to United States District Court for Southern NEVADA.

DATED: February 16, 2020

By: */s/ Kristen Dougherty*

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing has been sent to all parties of record in accordance with the Florida Rules of Civil Procedure by and through the Florida e-file system on this 16th day of February, 2020.

Phil Jason Haberman
3736 SW 57th Ct.
Ocala, Florida 34474

Judge Steven Walker
Twelfth Circuit Court
Sarasota, Florida

*/s/ Kristen Dougherty*

## IN THE CIRCUIT COURT OF THE TWELFTH JUDICIAL CIRCUIT
## IN AND FOR SARASOTA COUNTY FLORIDA

**PHIL HABERMAN**

       **Petitioner,**

**v.**                                **CASE NO. 2006 CA 007754 SC**

**KRISTEN RHOAD,**

       **Respondent.**

_____/

### NOTICE OF HEARING

YOU WILL PLEASE TAKE NOTICE that a hearing has been scheduled as follows:

     **ISSUE:**        **CONTINUATION FROM 12/16/19**

     **JUDGE:**      **STEPHEN M. WALKER**

     **PLACE:**      **COURTROOM 7C**
                           **SARASOTA COUNTY JUDICIAL CENTER**
                           **2002 Ringling Blvd., Sarasota, Florida**

     **DATE:**       **MONDAY MARCH 16, 2020**

     **TIME:**        **2:00 P.M.**

DATED this 11th day of February, 2020 at Sarasota, Sarasota County, Florida.

**STEPHEN M. WALKER, Circuit Judge**

**If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact the Sarasota County Jury Office, P.O. Box 3079, Florida 34230, (941)861.7425, at least seven (7) days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than seven (7) days; if you are hearing or voice impaired, call 711.**

Copies:

Kristen Rhoad via email Floridafiasco@gmail.com
Phil Haberman 3736 SW57 Court, Ocala, FL 34474

1